JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ROXANNE COPE

**(b)** County of Residence of First Listed Plaintiff    State of New Mexico
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
WEINSTEIN LAW FIRM, LLC   Marc E. Weinstein  500
Office Center Dr., Ste 400  Fort Washington, PA 19034

## DEFENDANTS

HUDSON BAY COMPANY SEVERANCE
PAY PLAN et al.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | |
| ☐ 2 | U.S. Government Defendant | |
| ☒ 3 | Federal Question *(U.S. Government Not a Party)* | |
| ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §§ 1001-1461

Brief description of cause:
Violations of ERISA governed severance plan

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE            DOCKET NUMBER

DATE
December 24, 2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Marc E. Weinstein

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ State of New Mexico, USA _____

Address of Defendant: _____ New York City, New York _____

Place of Accident, Incident or Transaction: _____ New York City, New York _____

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/24/2020 _____   /s/ Marc E. Weinstein, Esq.   79474

<span style="color:red">Must sign here</span>

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☐ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☑ 11. All other Federal Question Cases
    *(Please specify):* _____ ERISA _____

**B.**  *Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Marc E. Weinstein _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐  Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑  Relief other than monetary damages is sought.

DATE: 12/24/2020 _____   /s/ Marc E. Weinstein, Esq.   79474

<span style="color:red">Sign here if applicable</span>

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROXANNE COPE,** | : | CIVIL ACTION |
| individually, on behalf of herself and | : | |
| on behalf of all others similarly situated, | : | No. _____ |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| **HUDSON BAY COMPANY SEVERANCE** | : | |
| **PAY PLAN FOR US EMPLOYEES** | : | |
| **AMENDED and RESTATED AS** | : | |
| **HBC US HOLDINGS LLC SEVERANCE** | : | |
| **PAY PLAN FOR US EMPLOYEES** | : | CLASS ACTION |
| | : | |
| and | : | |
| | : | |
| **HUDSON'S BAY COMPANY,** | : | |
| **PLAN SPONSOR** | : | |
| | : | |
| and | : | |
| | : | |
| **HBC US HOLDINGS LLC** | : | |
| **PLAN SPONSOR,** | : | |
| | : | |
| and | : | |
| | : | |
| **JESSICA ARNOLD,** | : | |
| **PLAN ADMINISTRATOR** | : | |
| | : | |
| Defendants | : | |

## CIVIL ACTION COMPLAINT AND CLASS ACTION

Plaintiff Roxanne Cope ("Plaintiff" or "Ms. Cope"), on behalf of herself and on

behalf of all others similarly situated, files this Class Action Complaint against Hudson

Bay Company Severance Pay Plan for US Employees (hereinafter "2017 Plan"), amended and restated as HBC US Holdings LLC Severance Pay Plan for US Employees (hereinafter "Amended and Revised Plan") (collectively "the Plans"), Hudson's Bay Company ("HBC") ("Plan Sponsor"), and HBC US Holdings LLC ("HBC Holdings") ("Plan Sponsor") and Jessica Arnold ("Plan Administrator") under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001-1461, as well as under state based statutory claims not governed or preempted by ERISA, and avers:

## I.    PRELIMINARY STATEMENT

Pursuant to the Defendant Hudson's Bay Company Severance Pay Plan for U.S. Employees and any successor or predecessor Plan effective May 25, 2017 ("2017 Plan") (attached hereto as Exhibit A), as amended and restated effective March 26, 2020 ("Amended and Restated Plan") (attached hereto as Exhibit B), as well as the Claim denial email letter of September 29, 2020, from Plan Administrator Jessica Arnold, Esquire (attached hereto as Exhibit C), Plaintiff files this Complaint contesting the denial of Ms. Cope's claim for severance pay benefits under the Plans and seeking on behalf of herself and those similarly situated the payment by Defendants of all unpaid severance pay benefits provided under the Plans.

By email of June 4, 2020, Plan Administrator Arnold notified Ms. Cope's Counsel

2

that her Claim for severance pay benefits submitted to the 2017 Plan Administrators by letter dated April 16, 2020, was denied for the following reasons:   (I) Ms. Cope's claim was untimely under Section 8.2 of the 2017 Plan since "an initial claim for benefits must be made within 60 days of termination of employment" which Defendants maintain was November 1, 2019;   (ii) since Ms. Cope was "offered a comparable position with the acquirer [from Hudson Bay Company]" of Lord & Taylor, namely, Le Tote, she was not eligible for severance pay per Section 3.2(g) of the 2017 Plan;   (iii) since the 2017 Plan is said to have been superseded by the March 26, 2020 Amended and Restated Plan in its elimination of "Lord & Taylor LLC" from the definition of "Employer" per Section 2.11 of Amended and Restated Plan, Lord & Taylor was no longer subject to the 2017 Plan because Lord & Taylor ceased being an Affiliate of HBC.

Ms. Cope appealed from that denial of severance benefits in that the denial of Ms. Cope's claim was erroneous, was a violation of Plan provisions, was a breach of fiduciary duties, and constituted an arbitrary and capricious determination.   Additionally, Ms. Cope maintained that the Defendants' refusal to pay Ms. Cope (and others similarly situated) her entitlement to severance pay benefits from Lord & Taylor was the consequence of a conscious, purposeful, pretextual and bad faith artifice in order to separate from employment numerous employees without having to pay them their severance benefits under the 2017 Plan.   The Plans sought to accomplish this payment evasion by amending the 2017 Plan to change the definition of "Employer" and dating it

3

March 26, 2020, the day prior to the HBC's decision to have a mass layoff effective March 31, 2020, as well as cutting off the means of communication through the elimination of social medium devices.   Further, and contrary to Plan provisions, the Defendants failed and refused to provide Ms. Cope with requested documents relating to the Lord & Taylor sale transaction, relating to the assignment of the Plans to Lord & Taylor/Le Tote, and relating to the intertwining and common ownership of HBC and Lord & Taylor/Le Tote.

Ms. Cope was notified on March 31, 2020, by the President of "Lord & Taylor", her employer, that her separation date from the Company was March 31, 2020, and that all regular compensation and employment will cease at that time.   As shown herein, Ms. Cope's separation from employment was an involuntary termination within the contemplation of the Plans and that said termination was a "Covered Termination" within the meaning of the Plan and that she is an "Eligible Employee" as defined in the Plans.

## II.      <u>NATURE OF THE ACTION</u>

1.      This is a class action for the recovery by Plaintiff, on her own behalf and on behalf of approximately 50 plus other similarly situated former employees of Lord & Taylor (previously owned by HBC) located at its Wilkes-Barre Distribution Center, Clearance Center and Outlet Store, 250 Highland Park Boulevard, Wilkes-Barre PA 18702, and locations contiguous thereto ("Wilkes-Barre Location") (collectively the "Class" as

4

defined below), of severance pay benefits in the amounts provided in the Plans by reason of Defendants' violation of Plaintiff's and the putative class' rights under ERISA and the provisions of the Plans.  In failing to pay such compensation and benefits, Defendants also violated the Pennsylvania Wage Payment and Collection Law ("WPCL") 43 P.S. § 260.1 et seq.

2.      The Plaintiff and the other class members were employees of the HBC owned Lord & Taylor Wilkes-Barre Location who were terminated without cause during the  trigger period of the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 et seq., as part of or as the reasonably expected consequence of a mass layoff at or plant closing of the Wilkes-Barre Location which was effectuated by Lord & Taylor over the WARN trigger period, namely the period of time of 90 days ahead and 90 days after March 31, 2020.

3.      The Plaintiff and the other class members were not given at least 60 days advance notice of their termination as required by the WARN Act.

4.      The Plans, HBC, HBC Holdings and/or Lord & Taylor gave no advance notice to Plaintiff or the putative class members of a mass layoff at or plant closing of the Wilkes-Barre Location which was effectuated by Lord & Taylor during the WARN trigger period.  Instead, the first such notice to the named Plaintiff was given on March 31, 2020.

5.      In violation of the WARN Act, said Defendants also failed to provide a statement

of the basis for reducing the notification period to zero days advance notice.

6.     Defendants' failure to provide its employees with any advance written notice, much less 60 days written notice, had a devastating economic impact on Plaintiff and the putative class members.

7.     As a consequence, the Plaintiff and the other class members are entitled under the Plans and ERISA and the WPCL to recover from the Defendants their respective severance compensation benefits provided under the Plans.   Specifically, the class Plaintiff seeks to certify is defined as:

> All Lord & Taylor employees employed at its Wilkes-Barre Distribution Center, Clearance Center and Outlet Store, 250 Highland Park Boulevard, Wilkes-Barre PA, 18702, and locations contiguous thereto ("Wilkes-Barre Location"), who suffered an employment loss anytime between 90 days before and 90 days after March 31, 2020, as a result of a "mass layoff" or "plant closing" or termination without being paid the severance compensation benefit defined by and provided in the Plans.

## III.   **THE PARTIES**

8.     Plaintiff Cope is a natural person currently permanently residing in New Mexico. During all periods relevant to this Complaint, Ms. Cope permanently resided in Jim Thorpe, PA during which time she was employed in the Lord & Taylor Wilkes-Barre Location since 2013.   Plaintiff Cope was employed in the Wilkes-Barre Location as a Sales Staffing Coordinator until she was terminated on March 31, 2020.   She earned regular compensation and other employee benefits except she was deprived of

participation in the Severance Pay Plans (Exhibits A and B hereto) previously available to her and was damaged by Defendants' acts and omissions in violation of ERISA, the Plans, and the WPCL.

9.      At all times relevant to this Complaint, the Plans were and are duly organized and existing qualified "employee benefit plans" and are plan type "Employee Welfare Severance Benefits Plan", as defined in 29 U.S.C. §§ 1002(1) and (3) of ERISA and are subject to and are governed by the terms and provisions of ERISA.   The pertinent Plans' information as pertains to Plaintiff and those similarly situated is as follows:

Claimant/Plan Participant:  Roxanne Cope

Plan Name:   HBC US Holdings LLC Severance Pay Plan for US Employees (previously called Hudson's Bay Company Severance Pay Plan for US Employees and any successor or predecessor Plan)

2017 Plan Sponsor:
HBC
401 Bay Street, Suite 500
Toronto, ON

Amended and Restated Plan:
HBC US Holdings LLC
225 Liberty Street
New York, NY 10281
and
39 Brighton Avenue
Boston, MA 02134

Plan Sponsor Employer EIN:   99-0372181
(formerly 98-0508650)
End of Plan Year: January 31
Plan Type: Employee Welfare Severance Benefits Plan
Employer:

7

Lord & Taylor Acquisition, Inc., and/or
Lord & Taylor Holdings, LLC, and/or
Lord & Taylor LLC

Plan Administrator:
Jessica Arnold, Esquire
Claim Denial Date: June 4, 2020
Application for Review of Claim Denial: August 1, 2020
Claim Appeal Denial Date: September 29, 2020

10.     Upon information and belief, the Defendant Plans are employee welfare severance pay benefit plans primarily intended to provide fixed severance benefits to eligible persons under § 2.9 of the Plans ("Eligible Employee"), which are (I) intended to comply with the tax qualification requirements of Internal Revenue Code § 401(a), 26 U.S.C. §401(a) and (ii) subject to ERISA.

11.     At all times relevant to this Complaint, the Defendants intended that the Plans shall be written and operated in a manner that meets the tax qualification requirements of Section 401(a) of the Internal Revenue Code.   29 U.S.C. § 401(a).

12.     At all times relevant to this Complaint, Defendants HBC and HBC Holdings have been limited liability companies with retail department stores, outlet and clearance stores, and Distribution Centers, in several States, as well as this Judicial District, and a distribution center, clearance center and outlet store located in and around Wilkes-Barre, Pennsylvania.  The Distribution Center, among other things, provided support functions for HBC and HBC Holdings retail, outlet and clearance locations, including such things as store staffing, merchandising, purchasing, procurement and product supply, and print

8

shop.   Plaintiff may name additional Defendants if discovery reveals other entities that employed Plaintiff and similarly situated persons and incurred liability for any of the events alleged herein.

13.    At all times relevant to this Complaint, HBC and HBC Holdings have been authorized to conduct business in the Commonwealth of Pennsylvania including but not limited to this Judicial District and the Wilkes-Barre Location.

14.    Upon information and belief, HBC and HBC Holdings, respectively, appoint Plan fiduciaries, including Plan Sponsor(s) and Plan Administrators.   Defendant Plan Sponsors and Defendant Plan Administrator monitor the activities of the Plans, exercise discretionary authority and control over the maintenance of the Plans and disposition of Plan assets, fund the Plans' benefits from the general assets of HBC and HBC Holdings and have the authority to appoint a Plan fiduciary.   Accordingly, HBC and HBC Holdings, as well as the Plan Administrator, are and have been fiduciaries as that term is defined in 29 U.S.C. §§ 1002(1) and (3) of ERISA and are subject to and governed by the terms and provisions of ERISA.   Further, as employers located in Pennsylvania, HBC and HBC Holdings are subject to WPCL.

15.    At all times relevant to this Complaint, Defendants HBC and HBC Holdings were the Plan Sponsors, respectively, of the 2017 Plan and the Amended and Revised Plan, and accordingly, fiduciaries within the meaning of ERISA.   Their respective places of business are as stated in Paragraph 9 above.   HBC and HBC Holdings are corporations

9

organized and doing business in the Commonwealth of Pennsylvania as well as several other States.

16.     At all times relevant to this Complaint, Jessica Arnold is and has been the Plan Administrator of the 2017 Plan and the Amended and Revised Plan, and accordingly, a fiduciary within the meaning of ERISA.   Defendant Arnold's principal place of business is 225 Liberty Street, Floor 24, New York, NY 10281.   Under the terms of the Plans, respectively at page C-2, "Service of legal process may be made upon the Plan Administrator."

17.     At all times relevant to this Complaint, Defendant Arnold is and has been the Plan Administrator of the Plans and a Plan fiduciary, as those terms are defined in §§ 1002(16) and (21) of ERISA, respectively.   In her capacity as the Plan Administrator for the Plans, she made the decisions and committed and promoted the ERISA violations alleged in this Complaint.   Under ERISA and the Plans, the Plans are administered by the Plan Administrator, as well as the Plan Sponsors, all of whom had and have the responsibility to review and decide all claims and claims denial appeals under the Plans, including the claim for severance pay benefits made by Plaintiff as described in this Complaint.

18.     At all times relevant to this Complaint, Plaintiff is and was a qualified and vested "participant" eligible for Plan participation as defined in 29 U.S.C. § 1002(7).

IV.   **JURISDICTION AND VENUE**

19.   Plaintiff's claims in Counts I, II and III relate to employee benefit and employee welfare plans as defined by ERISA.   Therefore, this Court has original jurisdiction over those matters pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1337(a).   Count IV relates to state based non-ERISA statutory claims over which this Court has supplemental jurisdiction under 29 U.S.C. § 1367(a), in that Count IV is so related to Counts I, II, III, that Count IV forms part of the same case or controversy.   Further, the claims raised in Count IV do not raise novel or complex issues of State law, do not substantially predominate over the ERISA claims over which this Court has original jurisdiction and which have not been dismissed by the Court, and there are no compelling reasons for declining supplemental jurisdiction.

20.   Venue is proper in this Judicial District pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. §§ 1391(a) and (c)(2) in that the Defendants are found in this Judicial District, are doing and have done business therein by and through their employees and/or agents at various business location in this Judicial District, including but not limited to (i) Lord & Taylor at Rittenhouse Square, Philadelphia, PA, (ii) Lord & Taylor at 121 East City Line Avenue, Bala Cynwyd, (iii) Lord & Taylor at 1300 Market Street, Philadelphia, PA, and (iv) Lord & Taylor at 180 N. Gulph Road, King of Prussia, PA; and accordingly, Defendants are subject to this Court's personal jurisdiction with respect to this action. Further, ERISA's venue provision states that when an action is brought in a district court

of the United States, "it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found and process may be served in any other district where a defendant resides or may be found."   ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).   Additionally, the Plans (Exhibits A and B at § 7.13) state:   All provisions of the Plan shall be interpreted and administered in accordance with the provisions of ERISA in a manner which will assure compliance of the Plan's operation herewith."   Further, the Plans (Exhibits A and B at § 7.16) state: "The U.S. Department of Labor has issued regulations that require the Employer to provide an Eligible Employee with a statement of rights under ERISA which are set forth in Appendix D."   Appendix D "RIGHTS UNDER ERISA" at page D-1 of the Plans states in relevant part:   "If you have a claim for severance and/or benefits which is denied or ignored, in whole or on part, you may file suit in a state or federal court after you have exhausted the Plan's claims and appeal procedures as described in the section 'Claims and Appeals Procedures' hereof."   Accordingly, venue appropriately lies in this Court in accordance with the provisions of ERISA, the terms of the Plans, and the U.S. Department of Labor Statement of Employee Rights Under ERISA.

## V.    CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and ERISA and the WPCL.

22.    Class Definition:  Plaintiff brings this action on behalf of herself and all other similarly situated employees.   Plaintiff seeks to represent a class initially defined as:

> All Lord & Taylor employees employed at its Wilkes-Barre Distribution Center, Clearance Center and Outlet Store, 250 Highland Park Boulevard, Wilkes-Barre PA, 18702, and locations contiguous thereto ("Wilkes-Barre Location"), who suffered an employment loss anytime between 90 days before and 90 days after March 31, 2020, as a result of a "mass layoff" or "plant closing" or termination without being paid the severance compensation benefits defined by and provided in the Plans.

23.    Plaintiff and Class Members are "affected employee(s)" subject to an "employment loss," as those terms are contemplated in the Plans, ERISA and the WPCL.

24.    Plaintiff's claims satisfy the numerosity, adequacy, commonality, typicality, predominance, and superiority requirements of a class action.

25.    Numerosity and Class Size:  Upon information and belief, the class contains in excess of 50 members, and joinder is therefore impracticable.  Plaintiff believes, based on the foregoing, that the total number of affected employees is in excess of 50 employees;  the precise number of class members and their addresses are readily determinable from the books and records of Defendants.

26.    Adequacy:  Plaintiff is an affected employee who suffered a loss of employment and severance pay benefits.   She is thereby a member of the Class.   Plaintiff is committed to pursuing this action and has retained counsel with experience pursuing and defending complex wage, employment, class action, ERISA and WPCL matters. Accordingly, Plaintiff is an adequate representative of the Class and has the same

13

interests as all of its members.   Plaintiff will fairly and adequately protect the interests of the absent members of the Class.

27.     Common Questions of Law and Fact:   There are questions of fact and law that are common to the Class and predominate over any questions affecting only individual Class Members.   The questions of law and fact common to the Class arising from Defendants' actions and omissions include, without limitation, the following:

     a. Whether the provisions of the ERISA and/or the WPCL apply;

     b. Whether Defendants HBC and HBC Holdings employee separations on or about March 31, 2020, and within 90 days prior to and after March 31, 2020, constitute a loss of employment under the Plans, ERISA and the WPCL;

     c. The appropriate formulae to measure damages under the Plans, ERISA and/or the WPCL;

     d. The appropriate definitions and formulae to measure payments to potentially offset damages under the Plans, ERISA and the WPCL;   and,

     e. The date by which initial claims for severance pay was to be submitted.

28.     Typicality:   Plaintiff's claims are typical of the claims of all members of the Class. Plaintiff was laid off or separated from employment and not paid any severance benefits on or about the same date as other members of the Class and/or during the 90 day period prior to and after March 31, 2020.

29.     Nature of the Proposed Notice:   Plaintiff proposes that, should the Court certify the Class, notice be sent to Class members via first class mail and/or email.   The names

14

and contact information of Class members are readily determinable from the books and records of Defendants.

30.     Rule 23(b) Requirements:   The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the claims.

31.     A class action is the superior method for the fair and efficient adjudication of this controversy.   Defendants have acted or refused to act on grounds generally applicable to the Class.   The presentation of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Class members to protect their interests.

32.     Further, class action treatment of this action is authorized and appropriate under ERISA, 29 U.S.C. § 2104(a)(5), as well as the WPCL, which clearly provide that a plaintiff seeking to enforce liabilities under ERISA and/or the WPCL may sue either on behalf of his or her self, for other persons similarly situated, or both.

## VI.     <u>EXHAUSTION OF PLAN ADMINISTRATIVE REMEDIES</u>

33.     By email of June 4, 2020, Plan Administrator Arnold notified Ms. Cope's Counsel that Plaintiff's Claim for severance pay benefits submitted to the 2017 Plan

Administrators by letter dated April 16, 2020, was denied for the reasons described in Preliminary Statement above.

34.    Ms. Cope appealed from that denial of severance benefits in that the denial of Ms. Cope's claim was erroneous, was a violation of the Plans' provisions, was a breach of fiduciary duties, and constituted an arbitrary and capricious determination.

35.    Additionally, Ms. Cope maintained that the Defendants' refusal to pay Ms. Cope (and others similarly situated) her entitlement to severance benefits from Lord & Taylor was the consequence of a conscious, purposeful, pretextual and bad faith artifice in order to separate from employment numerous employees without having to pay them their severance benefits under the 2017 Plan.

36.    The Plans sought to accomplish this payment evasion by amending the 2017 Plan to change the definition of "Employer" and dating it March 26, 2020, the day prior to the HBC's decision to have a mass layoff effective March 31, 2020, as well as cutting off the means of communication through the elimination of social medium devices.

37.    Further, and contrary to Plan provisions, the Defendants failed and refused to provide Ms. Cope with requested documents relating to the Lord & Taylor sale transaction, relating to the assignment of the Plans to Lord & Taylor/Le Tote, and relating to the intertwining and common ownership of HBC and Lord & Taylor/Le Tote.

38.    Ms. Cope was notified on March 31, 2020, by the President of "Lord & Taylor", her employer, that her separation date from the Company was March 31, 2020, and that

16

all regular compensation and employment will cease at that time.

39.     As shown herein, Ms. Cope's separation from employment was an involuntary termination within the contemplation of the 2017 Plan and that said termination was a "Covered Termination" within the meaning of the Plan and that she is an "Eligible Employee" as defined in the Plans.

40.     By letter dated September 29, 2020, Defendant Plan Administrator Arnold notified Plaintiff's Counsel that Ms. Cope's claims for benefits are denied for the following reasons:

> In denying Ms. Cope's entitlement to severance benefits, the Plan Administrator is relying on the following provisions of the Severance Plan with respect to Ms. Cope's November 1, 2019 termination from HBC:
>
> -Section 3.2(g) of the Severance Plan, which sets forth limitations on eligibility under the Severance Plan and provides that an Eligible Employee who is 'terminated in conjunction with the sale or transfer (whether of stock or assets) of all or any part of an Employer and is offered a comparable position with the acquirer of the part of all of the Employer sold or transferred' will not be eligible for severance per the Severance Plan.   As you know, Ms. Cope was terminated on November 1, 2019 in connection with the sale of Lord & Taylor to Le Tote, and she was offered comparable employment with her new employer, Le Tote/Lord & Taylor, at that time.   (Footnote omitted).
>
> As set forth in the Severance Plan: 'The Plan Administrator shall have the sole discretion to determine whether a position is 'comparable' and may take into consideration any factor it deems desirable, including, but not limited to, the geographic location in which the position is offered, the duration of the position, and the compensation offered to the person holding such position.   Despite Ms. Cope's argument that the position she was offered was not comparable, the Severance Plan gives broad discretion to the

17

determination of the Plan Administrator.   We maintain that the position offered to Ms. Cope was comparable.

-Section 8.2 of the Severance Plan requires that an initial claim for benefits must be made within 60 days of termination of employment.   Again, on that basis alone, Ms. Cope's Application is denied.   (Footnote omitted).

Ms. Cope's argument that her claim is timely because Lord & Taylor was not specifically removed from the definition of 'Employer' in Section 2.11 of the Severance Plan is meritless. Section 2.11 defines Employer as 'each of the following during the period that each such entity is an Affiliate of the Company:   (I) Hudson's Bay Company, (ii) Saks Incorporated, (iii) Saks & Company, LLC, (iv) Lord & Taylor Acquisition, Inc., (v) Lord & Taylor Holdings, LLC, (vi) Lord & Taylor LLC, (vii) GALERIA Kaufhof GmbH, (viii) Gilt Groupe Holdings, Inc., and (ix) their designated Affiliates' (emphasis added).   Lord & Taylor was no longer an Affiliate of the Company as of November 1, 2019, following the close of the sale to Le Tote, contrary to the assertions in the Application.

To the extent Ms. Cope is claiming that she is entitled to receive benefits in connection with her March 31, 2020 termination by Le Tote/Lord & Taylor that claim is also denied.   Please note that the Severance Plan was superseded by the Amended Severance Plan on March 26, 2020.   Per the Amended Severance Plan:

-Section 2.11 defines Employer as follows: 'each of the following during the period that each such entity is an Affiliate of the Company: (I) HBC L.P., (ii) HBC US Holdings LLC, (iii) Saks Incorporated, (iv) Saks & Company LLC, (v) Saks Fifth Avenue LLC, (vi) Saks Direct LLC, and (vii) their designated Affiliates.'

 -Ms. Cope was employed by Le Tote/Lord & Taylor, which is not an entity covered by the Amended Severance Plan, nor is it an Affiliate of the Company.   Ms. Cope's argument that HBC and Le Tote are joint employers is frivolous.

41.   Ms. Cope timely has filed this Complaint within ninety days of Defendant

Arnold's September 29, 2020 letter of denial.

## VII.   **OPERATIVE FACTS**

42.    Pursuant to the 2017 Plan (Exhibit A) Hudson's Bay Company Severance Pay Plan

for U.S. Employees and any successor or predecessor Plan Amended and Restated

effective March 26, 2020 (Exhibit B) as well as the Claim denial email/letter of June 4

from Plan Administrator Jessica Arnold, Esquire, Plaintiff submitted an Application for

Review of the denial of her claim for severance pay benefits under the 2017 Plan.

43.    By email of June 4, 2020, Plan Administrator Arnold notified Ms. Cope's Counsel

that Ms. Cope's Claim for severance pay benefits submitted to the 2017 Plan

Administrator by letter dated April 16, 2020, has been denied for the following reasons:

> (i) Ms. Cope's claim was untimely under Section 8.2 of the 2017
> Plan since 'an initial claim for benefits must be made within 60
> days of termination of employment' which the Plan maintains was
> November 1, 2019;   (ii) since Ms. Cope was 'offered a comparable
> position with the acquirer' of  Lord & Taylor, namely, Le Tote, she
> is not eligible for severance per Section 3.2(g) of the 2017 Plan;
> (iii) since the 2017 Plan is said to have been superseded by the
> March 26, 2020 Amended and Restated Plan in its elimination of
> 'Lord & Taylor LLC' from the definition of 'Employer' per Section
> 2.11 of Amended and Restated Plan, Lord & Taylor was no longer
> subject to the 2017 Plan because it ceased being an Affiliate of the
> Hudson's Bay Company ("HBC")."

44.    By letter of September 29, 2020 (Exhibit C), Plan Administrator Arnold denied

Plaintiff's appeal from Defendant Arnold's June 4, 2020 rejection of Plaintiff's severance

pay benefit application.   The refusal to pay Ms. Cope (and others similarly situated) her

19

entitlement to severance benefits from Lord & Taylor was the consequence of a conscious, purposeful and pretextual artifice in order to separate numerous employees without having to pay them their severance benefits under the 2017 Plan.

45.    This large scale systematic ruse for evading the payment of severance to any eligible separated employee was sought to be accomplished by amending the 2017 Plan to change the definition of "Employer" and dating it March 26, 2020, the day prior to the HBC Board's decision to have a mass layoff and terminations effective March 31, 2020, as well as cutting off the means of communication through the elimination of social medium devices.

46.    Further, and contrary to Plan provisions, the Plan failed and refused to provide Ms. Cope with requested documents relating to the Lord & Taylor sale transaction, relating to Plan assignment to Lord & Taylor/Le Tote, and relating to the intertwining and common ownership of HBC and Lord & Taylor/Le Tote.

47.    Ms. Cope was notified on March 31, 2020, by the President of "Lord & Taylor", her employer, that her separation date from the Company was March 31, 2020, and that all regular compensation and employment will cease at that time.   As shown herein, Ms. Cope's separation from employment was an involuntary termination within the contemplation of the 2017 Plan and that said termination was a "Covered Termination" within the meaning of the Plan and that she is an "Eligible Employee" as defined in the Plan.

20

48.    The terms of the 2017 Severance Plan and the Amended and Revised plan require a determination that Ms. Cope is eligible for a severance payment for the reasons that follow.

49.    Under the terms of the 2017 Plan, Ms. Cope is eligible for a severance  payment in that she was a full-time salaried employee of Lord & Taylor until her involuntary termination by and from Lord & Taylor effective March 31, 2020.   Page 2, Section 2.11 of the 2017 Plan (Exhibit A) defines an "Employer" as follows:

> 2.11    "Employer" shall mean each of the following during the period that each such entity is an Affiliate of the Company: … (iv) Lord & Taylor Acquisition, Inc., (v) Lord & Taylor Holdings, LLC, (vi) Lord & Taylor LLC…

50.    It is wrongly asserted by the Plan Administrator that the termination of Ms. Cope by HBC was 11/1/19.   That assertion is belied by the continuation of the 2017 Plan at least until 3/26/20 at which time the Plan Administrator asserts that the 2017 Plan was amended and restated ostensibly removing Lord & Taylor as an "Employer" under Section 2.11 of the 2017 Plan.   By such assertion, the Plan Administrator concedes that Lord & Taylor continued to be an "Employer" until 3/26/20.   Thus, Ms. Cope's severance pay benefit claim dated April 16, 2020, is erroneously, arbitrarily and wrongly said by the Plan Administrator to have been untimely in that Ms. Cope had only 60 days from 11/1/19 in which to file a benefit claim and that she failed to do so.

51.    The Plan Administrator's contention of untimeliness of Ms. Cope's benefit claim is erroneous, arbitrary, a product of conflict of interest and wrongly asserted, for several

reasons:

(i)   As noted, Lord & Taylor remained an Employer under the 2017 Plan until at least the 3/26/20 amendment and restatement of the 2017 Plan.  As such, the period within which Ms. Cope could file a benefits claim would run for 60 days from 3/26/20, that is, to 5/25/20.  Her claim of 4/16/20 is therefore timely as having been made within 60 days of the termination of employment.

(ii)   It is also clear that intertwining ties between HBC and Le Tote existed and continue to exist from 11/19 to date.  For example, HBC retained ownership of the Lord & Taylor properties and continued to lease back those properties to Le Tote.  Further, several HBC/Lord & Taylor principals joined Le Tote upon its "acquisition" of Lord & Taylor in order to lead the integration of Lord & Taylor and Le Tote, including HBC's Chief Marketing Officer Bari Harlam, HBC's Vice President of Corporate Development Nick Cavallaro, and HBC's Divisional Vice President, Store Support (Operations, Visual, Strategy and Communications Teams) Jeff LeFebvre.

(iii)   HBC retains a 25% stake in Le Tote and the right to designate two members to Le Tote's Board of Directors.

(iv) HBC received a promissory note from Le Tote for about $33 Million (Can), or $25 Million (USD), after two years from the sale to Le Tote.

52.   So, it cannot be said that an employment relationship between Ms. Cope and Lord

& Taylor concluded on 11/1/19 and in any event the relationship between HBC and Le Tote continued to be one of single employer, joint employer or alter ego.

53.    Further, Le Tote is a successor employer of HBC and Lord & Taylor thereby maintaining a common control group relationship.

54.    Accordingly, Ms. Cope's severance benefit pay claim of April 16, 2020, remains timely.

55.    Further, the attempt to remove Lord & Taylor as an "Affiliate" of HBC through the creation of the Amended and Restated Plan on March 26, 2020, just one business day before the termination of Ms. Cope and thereby disclaim her entitlement to severance benefits reasonably leads to the conclusion that Lord & Taylor continued to be an Affiliate of HBC and was the consequence of a conspicuous, conscious, purposeful, bad faith and pretextual artifice in order to separate numerous employees without having to pay them their severance pay benefits under the 2017 Plan.   Such contrivance is contrary to the imposition of the duties of good faith and fair dealing as well as violations of fiduciary duties under ERISA that preclude specious and unreasonable claim handling processes and claim denials which are the subjects of this Complaint.

56.    Also, contrary to the denial of Plaintiff's claims by Defendants, Ms. Cope was not offered nor did she receive "comparable employment" within the meaning of section 3.2(g) of the Plans.

57.    The Plan Administrator erroneously, arbitrarily and capriciously asserts that Ms.

Cope was "offered a comparable position with the acquirer" of Lord & Taylor, namely, Le Tote, and thus, she is not eligible for severance per Section 3.2(g) of the 2017 Plan even as Amended and Restated.   Section 3.2(g) of the 2017 Plan and the Amended and Restated Plan provides:

> 3.2   Limitations.   In no event shall an Eligible Employee be entitled to receive any benefit under the Plan if:
> (g)      the Eligible Employee is terminated in conjunction with the sale or transfer (whether of stock or assets) of all or any part of an Employer and is offered a comparable position with the acquirer of the part of all [sic] of the Employer sold or transferred.

58.    The Plan Administrator did not find that Ms. Cope was an otherwise ineligible employee under the Plan but for Section 3.2(g).   The Plan Administrator concluded only that Ms. Cope was ineligible for benefits because on 11/1/19 "she was offered comparable employment with her new employer Le Tote/Lord & Taylor at that time." (Exhibit C).   So, if the offered position was not comparable to the position Ms. Cope held with HBC, then by the Plan Administrator's own analysis, Ms. Cope is eligible for and entitled to severance pay benefits.

59.    Further, the position that Ms. Cope was offered with Lord & Taylor/Le Tote was made by Le Tote on August 29, 2019, which was prior to its 11/1/19 acquisition of Lord & Taylor (see Exhibit C hereto).   Thus, in that Ms. Cope had not and could not have been terminated as part of the Le Tote acquisition when offered the position on August 29, 2019, Section 3.2(g) by its own terms cannot be applied to Ms. Cope.

60.    Additionally, the position Ms. Cope was offered was not a comparable position.

24

The Plans do not define the term "comparable position".  So, the Plan Administrator arbitrarily and capriciously, and contrary to her fiduciary obligations, declared the position comparable without providing any true basis upon which to decide that the employment offer was comparable.  The Plan Administrator made an inaccurate and incomplete determination that the offer made to Ms. Cope was comparable to her job with Lord & Taylor despite the fact that she would no longer be the beneficiary of any severance pay benefit Plan while employed by Le Tote/Lord & Taylor.  Any severance pay benefit Plan she was entitled to while employed by Lord & Taylor is wrongly said by the Plan Administrator to have evaporated with the emergence of Le Tote's acquisition of Lord & Taylor.

61.    Further, the Plan Administrator failed to consider that the substantial workforce reduction implemented by Lord & Taylor/Le Tote dramatically changed the quantity and quality of her new position with Lord & Taylor/Le Tote.  Moreover, the Plan Administrator failed to assess the comparability of the benefit program provide by Lord & Taylor after its acquisition by Le Tote, for example, such benefits as the Employee Assistance Program, the Flexible Spending Account, Dependent Care, Commuter Account, Health Savings Account, Life Insurance, Accident Insurance, Critical Illness, Hospital Indemnity Insurance, Group Whole Life Insurance, Paid Time Off, and 401(k) Plan.

62.    Moreover, the Plan Administrator did not make the ineligibility decision

25

considering the best interest of the Plan beneficiary as opposed to the best interest of the Defendants and Lord & Taylor, especially where the severance benefits under the Plans were to be funded out of the employer's own current revenues as opposed to a funded severance pay benefit account.   (See Exhibits A and B at Appendix C).

## COUNT I
## DENIAL OF BENEFITS CLAIM (29 U.S.C. § 1132 (a)(1)(B))

63.   Plaintiff adopts and incorporates the preceding paragraphs as if they have been fully rewritten herein.

64.   By their foregoing conduct, acts and omissions detailed in the above Paragraphs, Defendants, and each of them, abused their discretion and unreasonably, arbitrarily, capriciously, improperly, and unlawfully denied Plaintiff her severance pay benefits under the Plans.

65.   This denial of such benefits constitutes a breach of the Plans in violation of 29 U.S.C. § 1132(a) (1)(B) of ERISA.   Elements of such conduct, acts and omissions include such things as:

(a) the inherent structural conflict where Lord & Taylor, HBC and HBC Holdings performed the dual function of funding the Plans from their general assets and administering the claims eligibility determinations;

(b) the purported administrative record reflecting questions about whether the Plan Administrator conducted a fair evaluation of Plaintiff's claim and undermined her

discretion in the following instances:

> By considering "materials" outside of the purported administrative record (see attached Exhibit B hereto) and by disregarding other record materials, without explanation, in making Plaintiff's benefit claim determination, such as - (i) the continuing relationship and intertwining of HBC, HBC Holdings and Lord & Taylor; (ii) the failure by the Defendants to investigate and analyze the nature , terms, conditions and description of the alleged "comparable position" supposedly offered to Ms. Cope with Le Tote in reaching their uninformed and unsupported conclusion that the benefits be denied to her in that she the declined to accept the "offered comparable position", and thus, she was precluded from receiving benefits under the Plans terms; these failures occurred even though the purported administrative record shows that at the time of the supposed offer of the position with Le Tote to Plaintiff, there was not even a semblance of a job description of that role; that the duration of the supposed role that Defendants claim Ms. Cope was offered and declined was not defined or made certain in any way; that the process of "filling" the supposed comparable position allegedly offered Ms. Cope was never seemingly undertaken.

(c) exhibiting, condoning and/or acquiescing in a threat and warning to Ms. Cope made by letter dated May 28, 2020 from Michael van den Berg, Lord & Taylor Senior Vice President & General Counsel (Exhibit D hereto) demanding either reimbursement of a post-employment payment to her, or her executing a separation agreement and waiver of claims contained in the separation agreement sent to Ms. Cope, in retaliation and retribution for her having made her April 2020 claim for severance benefits.

(d) an untoward obvious interest in budgetary considerations in decision making as to the payment of severance pay benefits under the Plans; and,

(e) the Defendants' arbitrary and uninformed reliance on a supposed "comparable

27

position" with Le Tote offered to Ms. Cope when in reality there was no such defined position (new, old, cobbled, or otherwise) for her to accept in that the vague and ambiguous position had no fixed duration, was provisional, temporary, transitory, expedient, illusory and whose elimination could come at any time.

66.    Plaintiff made a timely and proper claim for severance pay benefits under the Plans.   This claim was denied by Defendants.

67.    Plaintiff made a timely and proper appeal of the severance pay benefits denial to the Plan Administrator who affirmed the initial denial determination and denied Ms. Cope's appeal.

68.    The administrative process applicable to Plaintiff's claim for severance pay benefits under the Plan has been exhausted and Plaintiff's claims herein are ripe for judicial review by this Court.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Overturn the decision to deny severance pay benefits under the Plan to her because it is wrong, incorrect, improper, unlawful, contrary to the plain language of the Plan, an abuse of discretion, and/or arbitrary and capricious.   In so doing, Plaintiff respectfully requests that this Court overrule the denial of severance pay benefits to Plaintiff and order that such benefits be paid to her under the Plans at the level prescribed by the Plans; and,

(b) Enter judgment against Defendants to recover costs and attorney's fees associated with her bringing and maintaining this action per 29 U.S.C. § 1132(g) (1) of ERISA.

## COUNT II
## BREACH OF FIDUCIARY DUTY (29 U.S.C. §1132(a) (3))

69.     Plaintiff adopts and incorporates the preceding paragraphs as if they have been fully rewritten herein.

70.     Defendants HBC, HBC Holdings and Arnold are fiduciaries with respect to the Plans.   29 U.S.C. § 1002(21).

71.     Each of those three Defendants had a fiduciary obligation under ERISA 29 U.S.C. §1104, in connection with the Plans to, among other things, discharge their respective duties (i) solely in the interest of the Plan participants and beneficiaries, (ii) for the exclusive purpose of providing benefits to such participants and beneficiaries, (iii) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (iv) in accordance with the documents and instruments governing the Plans insofar as such documents and instruments are consistent with ERISA, Title I, 29 U.S.C. § 1001 et seq. and 29 U.S.C. § 1104(a).

72.     ERISA imposes fiduciary duties upon those three Defendants to, inter alia, disseminate correct information to the Plan participants and not to mislead them about their benefits.

73.     In as much as those three Defendants made consistent, repeated and inexcusable

29

misstatements to Plaintiff that her ineligibility for severance pay benefits was a consequence of her declining a supposed offer of "comparable employment" while arbitrarily and capriciously disregarding the actuality of the transient, imprecise, impermanent and prefatory job terms and conditions, Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances in conveying the terms of the Plans to Plaintiff.

74.    In as much as the Plans' Documents do not reflect that a participant would be eligible for benefits in the event that his/her former job position ends or is eliminated, and by Defendants failure and refusal to take that condition into consideration in assessing Plaintiff's severance pay benefits claim, the Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances.

75.    In as much as Defendants exhibited, condoned and/or acquiesced in a threat and warning to Ms. Cope made by letter dated May 28, 2020 from Michael van den Berg, Lord & Taylor Senior Vice President & General Counsel (Exhibit D hereto) demanding either reimbursement of a post-employment payment to her, or her executing a separation agreement and waiver of claims in that separation agreement sent to Ms. Cope, in retaliation and retribution for her having made her April 2020 claim for severance benefits, Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances in conveying the terms of the Plans

to Plaintiff.   Such contrivance is contrary to the imposition of the duties of good faith and fair dealing as well as violations of fiduciary duties under ERISA that preclude the specious and unreasonable claim handling processes and claim denials which are the subjects of this Complaint.

76.     In as much as those Defendants represented that Plaintiff had been offered a transfer to a "comparable position" with Le Tote as a replacement for the position she was then holding, either knowing or failing to determine that such a position did not exist, or was not comparable to her prior position, those Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances.

77.     In as much as Defendants' attempt to remove Lord & Taylor as an "Affiliate" of HBC through the creation of the Amended and Restated Plan on March 26, 2020, just one business day before the termination of Ms. Cope and thereby disclaim her entitlement to severance pay benefits reasonably leads to the conclusion that Lord & Taylor continued to be an Affiliate of HBC and was the consequence of a conspicuous, conscious, purposeful, bad faith and pretextual artifice in order to separate numerous employees without having to pay them their severance benefits under the 2017 Plan.   Such contrivance is contrary to the imposition of the duties of good faith and fair dealing as well as violations of fiduciary duties under ERISA that preclude the specious and unreasonable claim handling processes and claim denials which are the subjects of this

Complaint.

78.     In as much as those Defendants condoned or failed to denounce the orchestrated effort and HBC's and HBC Holdings', motivation to create a constructive resignation by Plaintiff for the purpose of classifying her as a resigned employee (and thereby not eligible for severance pay benefits) rather than a displaced employee (and thereby eligible for separation benefits), they violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances.

79.     The above described breaches of fiduciary duties have unjustly enriched the Plans and HBC and HBC Holdings, as well as caused Ms. Cope to suffer damages. Accordingly, pursuant to ERISA § 502(a)(3), this Court may order and Plaintiff may obtain appropriate equitable relief to remedy the breaches of fiduciary duties.

**WHEREFORE,** Plaintiff respectfully requests that this Court find that:

(a) Defendants HBC, HBC Holdings and Arnold breached their fiduciary duties and enjoin them from continuing to do so and to provide other appropriate equitable relief, including but not limited to, requiring the payment of money damages to Plaintiff and/or impose a surcharge upon the Defendants for losses incurred by Plaintiff as a result of their breach of fiduciary duties, as this Court deems appropriate;   and,

(b) Enter judgment against Defendants to recover costs and attorney's fees associated with her bringing and maintaining this action per 29 U.S.C. § 1132(g)(1) of ERISA.

## COUNT III
## INTERFERENCE WITH ATTAINMENT OF PLAN BENEFIT RIGHTS

80.    Plaintiff adopts and incorporates the preceding paragraphs as if they have been fully rewritten herein.

81.    Defendants engaged in a course of conduct designed to interfere with Plaintiff's attainment of the severance pay benefits to which she would have been entitled under the Plans.

82.    The short-term role Plaintiff was supposedly being offered was simply part of a well-organized and orchestrated effort to create the perception that she was being offered a substantial position with Lord & Taylor/Le Tote.   In reality, in as much as Defendants' attempted to remove Lord & Taylor as an "Affiliate" of HBC through the creation of the Amended and Restated Plan on March 26, 2020, just one business day before the termination of Ms. Cope and thereby disclaim her entitlement to severance benefits, reasonably leads to the conclusion that Lord & Taylor continued to be an Affiliate of HBC and was the consequence of a conspicuous conscious, purposeful, bad faith and pretextual artifice in order to separate numerous employees without having to pay them their severance benefits under the 2017 Plan.   Such contrivance is contrary to the imposition of the duties of good faith and fair dealing as well as violations of fiduciary duties and a Plan participant's attainment of Plan benefits under ERISA that preclude the specious and unreasonable claim handling processes and claim denials which are the subjects of this Complaint.   Thus, the Plans by this artifice would relieve themselves of

severance pay benefit payments (and an unwanted precedent) and interfere with Plaintiff's attainment of Plan benefit rights under the Plans to Plaintiff in violation of 29 U.S.C. § 1140 of ERISA.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Overturn the denial of severance pay benefits under the Plans to her because it is wrong, incorrect, improper, unlawful, contrary to the plain language of the Plans, an abuse of discretion, and/or arbitrary and capricious.  In so doing, Plaintiff respectfully requests that this Court order that such benefits be paid to her under the Plans at the level prescribed by the Plans;

(b) Enjoin Defendants from continuing to deny Plaintiff her severance pay benefits, and provide such other equitable relief, including but not limited to, requiring the payment of money damages against or imposing a surcharge upon Defendants for losses incurred by Plaintiff as a result of their breach of fiduciary duty and their interference with the attainment by Plaintiff of her benefits under the Plans as this Court deems appropriate; and,

(c) Enter judgment against Defendants to recover costs and attorney's fees associated with his bringing and maintaining this action per 29 U.S.C. §1132(g)(1) of ERISA.

## COUNT IV
## <u>VIOLATIONS OF THE WPCL</u>

83.    Plaintiff adopts and incorporates herein all of the allegations set forth above as if

fully rewritten.

84.     Defendants HBC and/or HBC Holdings constitute an "employer" as that term is defined in the WPCL.   43 P.S. § 260.2a.

85.     The severance pay and associated benefits due to Plaintiff and all similarly employees constitute "wages" and "fringe benefits or wage supplements" as defined in the WPCL.   43 P.S. § 260.2a.

86.     HBC's and/or HBC Holdings' actions in denying Plaintiff and all similarly situated employees their respective "wages" and "fringe benefits or wage supplements" as describe above constitute deliberate violations of the WPCL.

87.     Plaintiffs and all similarly situated employees are authorized to bring group claims of this nature.   43 P.S. § 260.9a. (a) and (b).


## ADDITIONAL PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, and all similarly situated employees, demand judgment against Defendants and pray for:

a.      an order certifying that this action may be maintained as a class action under Federal Rule of Civil Procedure 23;

b.      designation of Roxanne Cope as the representative of the Class, and counsel of record as Class Counsel;

c.      compensatory damages in an amount equal to at least the amounts provided in the

Plans as severance pay benefits and by ERISA and/or WPCL;

d.       reasonable attorneys' fees, costs, and disbursements as allowed by ERISA and the

WPCL, 43 P.S. § 260.9a(f);

e.       liquidated damages in an amount equal to twenty-five (25) percent of the

severance pay due and owing in accordance with 43 P.S. § 260.10; and,

f.       order payment of the severance pay due and owing, the 25% penalty, attorneys'

fees, and other amounts as this Court finds just.

### PLAINTIFF'S DEMAND FOR A JURY TRIAL
### AND ONGOING JURISDICTION OF THIS COURT

All of the claims of Plaintiff and members of the Class are to receive a trial by jury

to the extent allowed by applicable law.  This demand has also been endorsed on the

caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

This Court should maintain jurisdiction over the instant action to ensure full compliance

with its Orders therein until such time as it is satisfied that its Orders and dictates have

been complied with in full by Defendants.

Respectfully submitted,

**WEINSTEIN LAW FIRM, LLC**

By:     /s/ Marc E. Weinstein
Marc E. Weinstein, Esquire
Identification No. 79474
500 Office Center Drive, Suite 400
Fort Washington, PA 19034
267.513.1942 (tel)
marc@meweinsteinlaw.com

and

**PENTIMA LAW FIRM, PLLC**

By:     /s/ Vincent J. Pentima
Vincent J. Pentima, Esquire
Identification No. 18523
30 Rock Hill Road
Bala Cynwyd, PA 19004
484.436.2119 (tel)
vjp@pentimalaw.com

Dated:   December 24, 2020

EXHIBIT A

# HUDSON'S BAY COMPANY

## SEVERANCE PAY PLAN FOR U.S. EMPLOYEES

**HUDSON'S BAY COMPANY**
**SEVERANCE PAY PLAN FOR U.S. EMPLOYEES**

INTRODUCTION

Hudson's Bay Company hereby establishes the Hudson's Bay Company Severance Pay Plan for U.S. Employees, effective as of May 25, 2017, to provide for the payment of severance to certain employees of Employer who suffer a loss of employment under the terms and conditions set forth in the Plan. The Plan replaces and supersedes all prior plans. This document constitutes both the Plan document and summary plan description and shall be distributed to all Participants in this form. All defined terms have the meaning set forth in Article II below.

ARTICLE I
NAME AND PURPOSE

1.1.     Name.  The name of the Plan is the Hudson's Bay Company Severance Pay Plan for U.S. Employees.

1.2.     Purpose.  The Plan is hereby established in order to provide Eligible Employees of the Employer with severance benefits in the event of a Covered Termination under the conditions specified herein.

1.3.     Employee Welfare Benefit Plan.  The Plan is an employee welfare benefit plan as defined in Section 3(1) of ERISA.

ARTICLE II
DEFINITIONS

The following words used herein shall have the following meanings wherever used in the Plan:

2.1.     "Affiliate" shall mean a corporation that is a member of a controlled group of corporations that includes the Company or any trade or business that is under common control with the Company, in each case within the meaning of Sections 414(b) and (c) of the Internal Revenue Code.  Any such entity shall be treated as an Affiliate hereunder only with respect to its period of affiliated status.

2.2.     "Base Salary" shall mean the regular weekly base salary or regular weekly hourly wages of an Employee based on the Employee's regular weekly work schedule at the time of the Covered Termination, excluding any bonus or incentive pay, retention pay, overtime, expense or other allowances, production profit, variable pay or other irregular forms of compensation. Base Salary shall be determined in the sole discretion of the Employer based on the personnel records maintained by the Employer.

2.3.     "Board" shall mean the Board of Directors of the Company.

2.4.     "Cause" shall mean (i) the Participant's conviction of, or plea of guilty or no contest to, or confession to, (A) a felony or (B) a misdemeanor involving dishonesty or moral turpitude,

1

WEIL:\95519851\17\55323.0004

(ii) the Participant's breach of any of the Participant's terms and conditions of employment or any of the obligations or restrictive covenants applicable to the Participant, (iii) the Participant's violation of the Employer's policies, rules and regulations applicable to the Participant, including any compliance manual, Code of Ethics, Code of Business Conduct or employee handbook, or (iv) the Participant's fraud or misappropriation, embezzlement or misuse of funds or property belonging to the Employer.

2.5.    "Company" shall mean Hudson's Bay Company.

2.6.    "Covered Termination" shall mean a permanent layoff or other involuntary termination of employment not under the circumstances described in Section 3.2.

2.7.    "Date of Hire" shall mean the date on which an Employee commenced employment with the Employer or any Affiliate (or the first date of its affiliated status, if later) and shall mean, in the case of a rehired Employee, the Employee's most recent Date of Hire on which the Employee commences employment with the Employer or an Affiliate.

2.8.    "Effective Date" shall mean the effective date of the Plan, which is May 25, 2017.

2.9.    "Eligible Employee" shall mean an Employee of the Employer who is part of a class of Employee that is listed on Appendix A and receives such Employee's normal compensation payments through the Employer's U.S. payroll system. "Eligible Employee" shall not include any Employee who is:

      (i)    an Employee who has a right to any severance benefit from an Employer pursuant to an employment agreement, offer letter or other agreement, plan, or policy, unless specifically provided therein;

      (ii)    a contract Employee, freelance worker or an independent contractor;

      (iii)    being paid by or through an employee leasing company or other third party agency or third party vendor;

      (iv)    a seasonal, occasional or temporary Employee, or an intern;

      (v)    a member of a unit of Employees covered by a collective bargaining agreement, unless such agreement provides for coverage hereunder.

2.10.    "Employee" shall mean each regular, active (including employees on family and medical leave pursuant to an Employer policy or on short-term disability leave pursuant to an Employer policy), non-temporary, full-time or part-time employee of an Employer who receives normal compensation payments through the Employer's U.S. payroll system.

2.11.    "Employer" shall mean each of the following during the period that each such entity is an Affiliate of the Company: (i) Hudson's Bay Company, (ii) Saks Incorporated, (iii) Saks & Company, LLC, (iv) Lord & Taylor Acquisition, Inc., (v) Lord & Taylor Holdings, LLC, (vi) Lord & Taylor LLC, (vii) GALERIA Kaufhof GmbH, (viii) Gilt Groupe Holdings, Inc., and (ix) their designated Affiliates.

2

2.12.   "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as it may be amended from time to time, and regulations and pronouncements promulgated thereunder.

2.13.   "Participant" shall mean an Eligible Employee who incurs a Covered Termination and meets the requirements for Severance Payments under the Plan, as set forth in Article III. An individual will cease being a Participant once payment of all payments due to the Participant under the Plan have been completed, and no person will have any further rights under the Plan with respect to such former Participant.

2.14.   "Plan" shall mean the Hudson's Bay Company Severance Pay Plan for U.S. Employees.

2.15.   "Plan Administrator" shall mean any person or entity designated by the Board as Plan Administrator as provided in Article VI hereof.

2.16.   "Release Agreement" shall have the meaning set forth in Section 4.3(b) herein.

2.17.   "Severance Payments" shall mean the amounts set forth in Appendix B herein.

2.18.   "Termination Date" shall mean the date upon which an Eligible Employee's employment relationship with the Employer ceases.

2.19.   "Year of Service" shall mean a completed period of twelve (12) consecutive months of service measured from an Eligible Employee's Date of Hire and any anniversary thereof until such Eligible Employee's Termination Date. A fractional Year of Service shall be rounded downward and shall be disregarded in determining the amount of Severance Payment payable to a Participant under Section 4.1 hereof. Years of Service shall be determined based on the personnel records maintained by the Employer. Determinations regarding Years of Service shall be made by the Plan Administrator in its sole discretion.

## ARTICLE III
## ELIGIBILITY AND PARTICIPATION

3.1.   Entitlement to Benefits.  An Eligible Employee who incurs a Covered Termination not under circumstances described in Section 3.2 herein shall become a Participant in the Plan and receive the Severance Payments described in Article IV hereof subject to the terms and conditions set forth herein.

3.2.   Limitations.  In no event shall an Eligible Employee be entitled to receive any benefit under the Plan if:

> (a)   the Eligible Employee voluntarily resigns employment or abandons such Eligible Employee's position;

> (b)   the Eligible Employee is terminated for Cause;

> (c)   the Eligible Employee retires or dies;

3

(d)    the Eligible Employee, at the time of termination, is treated as an inactive Employee and is eligible to receive any form of disability or worker's compensation insurance or salary continuation because of any disability;

(e)    the Eligible Employee is provided at least three (3) months advance notice of a change in  facility or place of business of an Employer or an Affiliate of an Employer, provided such change is to a facility or place of business that is within fifty (50) miles of the location of the Participant's last position with the Employer;

(f)    the Eligible Employee is offered employment in a comparable position with an Employer or an Affiliate of Employer; or

(g)    the Eligible Employee is terminated in conjunction with the sale or transfer (whether of stock or assets) of all or any part of an Employer and is offered a comparable position with the acquirer of the part of all of the Employer sold or transferred.

The Plan Administrator shall have the sole discretion to determine whether a position is "comparable" and may take into consideration any factor it deems desirable, including, but not limited to, the geographic location in which the position is offered, the duration of the position, and the compensation offered to the person holding such position.

## ARTICLE IV
### SEVERANCE PAYMENTS

4.1.    <u>Determination and Amount of Severance Payments</u>.  If the Plan Administrator determines that a Participant is eligible for Severance Payments pursuant to Article III hereof, the Plan Administrator may grant Severance Payments in accordance with the schedule of Severance Payments set forth in Appendix B, subject to the Plan Administrator's discretion to pay a different amount of Severance Payments pursuant to Section 4.4, and/or the Board's ability to amend or terminate such schedule to the Plan pursuant to Article V. Severance Payments shall be paid in periodic installments consistent with the Employers' normal payroll practices in effect on the Termination Date (each such installment to be at the same Base Salary rate in effect immediately prior to the Termination Date), with the first such installment payable on the first payroll date following the Participant's timely execution, delivery of the Release Agreement pursuant to Section 4.3(b) and any applicable revocation period lapsing with respect to such Release Agreement, subject to Section 7.17 herein.

4.2.    <u>Payments of Bonuses to Eligible Employee</u>. A Participant who is eligible to receive Severance Payments under Section 4.1, and who participates in an incentive bonus plan of the Company, shall be eligible to receive any earned but unpaid bonus for any completed performance period prior to the Termination Date, under the terms and conditions of any applicable bonus plan. Such bonus shall be paid at the same time, and on the same basis, as such bonus is paid to other similarly situated employees under the bonus plan, with the payout and amount of such bonus determined in accordance with the applicable formula or achievement of the corporate objectives applicable to the Participant.  A Participant shall not be eligible to receive a bonus for any

4

performance period under the bonus plan that is not completed prior to the Termination Date, unless otherwise determined by the Plan Administrator (in its sole discretion) under certain circumstances consistent with the terms of any applicable bonus plan.

4.3.   <u>Conditions to Severance Payments</u>.

(a)   <u>General Conditions</u>.   As a condition to the receipt of any Severance Payments under Article IV of the Plan, a Participant must: (i) return all Employer property in the Participant's possession; (ii) protect all confidential information about the Employer and its Affiliates, including information concerning business, employees, operations, products and finances; (iii) cooperate with the transition of the responsibilities of the Participant's position, including being available to answer questions and give assistance after termination of employment; (iv) timely execute and not revoke any forms required by the Employer including a Release Agreement described in Section 4.3(b) hereof; (v) comply with all Employer policies, guidelines and employee handbooks or manuals; (vi) comply with any restrictive covenants to which the Participant is subject; and (vii) comply with any additional requirements included in any employment agreement, offer letter or other agreement to which the Participant is a party. The Plan Administrator may impose additional conditions on the payment of Severance Payments as are necessary to protect the business interests of the Employer, including, without limitation, requiring the Participant to agree to reasonably cooperate with the Employer following the Termination Date and to abide by non-competition, non-solicitation and non-disparagement covenants.  If Participant violates any of the conditions in Section 4.3 or if at any time following the Termination Date Employer determines that circumstances existed to terminate the Participant for Cause, all benefits under the Plan shall immediately cease.

(b)   <u>General Release of Claims</u>.  As a condition of entitlement to any Severance Payments under the Plan, a Participant shall be required to timely execute, not revoke within any applicable revocation period and honor a general release and waiver of any claims, demands and causes of action, both known and unknown, against the Employer and all Affiliates, as well as against such other persons or entities designated in the release, and to covenant not to sue such parties as to any such claim (the "Release Agreement"). The Severance Payments hereunder shall be provided as legal consideration for the Release Agreement. The form and content of the general release and waiver shall be specified by the Plan Administrator.

(c)   <u>Re-Hired Participants</u>.  If a Participant is hired or rehired by any Employer or any Affiliate of an Employer, all benefits under the Plan shall immediately cease on the date of such hire or rehire.

4.4.   <u>Discretionary Severance Payments</u>.  Notwithstanding anything in this Article IV to the contrary, the Plan Administrator may determine an eligible Participant is to receive a different amount of Severance Payments without regard to the schedule of benefits set forth in Appendix B herein (either greater or lesser in amount than the amount set forth in Appendix B herein) or is to receive no Severance Payments under the Plan. The amount of the Severance Payments for any

such Participant shall, subject to other limitations set forth in this Article IV, be at the complete and sole discretion of the Plan Administrator and need not be consistent as between similarly situated Participants.

4.5.   <u>Maximum Severance Payments</u>.   Under no circumstance will the Severance Payments payable to any Participant under the Plan (before taxes, withholdings and deductions) exceed two times such Participant's annual compensation (within the meaning of 29 CFR 2510.3-2(b)(2)(i)) for the calendar year preceding the Participant's Termination Date.

### ARTICLE V
### AMENDMENT AND TERMINATION

5.1.   <u>Establishment</u>.   Neither the establishment of the Plan, nor any modification thereof, nor the payment of any benefits hereunder, will be construed as giving to any Participant, Employee (or any beneficiary of either), or other person any legal or equitable right against any Employer or any officer, director or employee thereof, and in no event will the terms and conditions of employment by an Employer of any Employee be modified or in any way affected by the Plan. The Plan does not give any Employee any vested right to Plan benefits.

5.2.   <u>Amendment</u>.   The Company may amend the Plan at any time, or from time to time, by action of the Board.  No amendment shall adversely affect the benefits under the Plan of any Participant who has incurred a Covered Termination prior to the date such amendment is adopted.

5.3.   <u>Termination</u>.   The Company reserves the right to terminate the Plan at any time, by action of the Board.  No individual may become entitled to additional benefits or other rights under the Plan after the Plan is terminated.

### ARTICLE VI
### ADMINISTRATION

6.1.   <u>Appointment of Plan Administrator</u>.   The Plan Administrator shall mean any individual or committee designated by the Board. In the absence of an appointment by the Board, Plan Administrator shall mean a committee consisting of the Chief Human Resources Officer of the Company and two other senior executives of the Company appointed by the Chief Human Resources Officer, at its discretion.

6.2.   <u>Powers and Duties of the Plan Administrator</u>.   Except as expressly otherwise set forth herein, the Plan Administrator shall have the authority and responsibility granted or imposed on a "plan administrator" by ERISA.  The Plan Administrator shall have the sole authority and responsibility to determine any and all questions of fact, resolve all questions of interpretation of the Plan which may arise under any of the provisions of the Plan as to which no other provision for determination is made hereunder, and exercise all other powers and discretion necessary to be exercised under the terms of the Plan which it is herein given or for which no contrary provision is made.  The Plan Administrator shall have full power and discretion to interpret the Plan and related documents, to resolve ambiguities, inconsistencies and omissions, to determine any question of fact, and to determine the rights and benefits, if any, of any Participant or other applicant, in accordance with the provisions of the Plan. The Plan Administrator's decision with respect to any matter shall be final and binding on all parties concerned, and neither the Plan

Administrator nor any of its directors, officers, employees or delegates nor, where applicable, the directors, officers or employees of any delegate, shall be liable in that regard except for gross abuse of the discretion given it and them under the terms of the Plan. The Plan Administrator may, from time to time, by action of its appropriate officers, delegate to designated persons or entities the right to exercise any of its powers or the obligation to carry out any or all of its duties as Plan Administrator.

6.3.    Engagement of Advisors. The Plan Administrator may employ actuaries, attorneys, accountants, brokers, employee benefits consultants, and other specialists to render advice concerning any responsibility the Plan Administrator has under the Plan. Such persons may also be advisors to any Employer.

6.4.    Payment of Costs and Expenses. The costs and expenses incurred in the administration of the Plan shall be paid directly by one or more of the Employers as determined by the Plan Administrator in its sole discretion. Such costs and expenses include those incident to the performance of the responsibilities of the Plan Administrator, including but not limited to, claims administration fees and costs, fees of accountants, legal counsel and other specialists, bonding expenses and other costs of administering the Plan.

## ARTICLE VII
## MISCELLANEOUS

7.1.    Exclusive Benefit. The Plan has been adopted for the exclusive benefit of the Participants. Notwithstanding the foregoing, nothing herein contained shall be construed as giving to any Employee or any other person any legal or equitable right against any Employer unless such right shall exist by reason of the express provisions of the Plan or any action taken pursuant thereto and in compliance therewith.

7.2.    Withholding Taxes. The Employer shall have the authority to withhold (or cause to be withheld, as the case may be) from any amounts otherwise due or payable under or pursuant to this Plan such federal, state and local income, employment or other taxes or amounts as may be required to be withheld pursuant to any applicable law or regulation.

7.3.    Benefits Not Taken Into Account as Compensation. Amounts due or payable under this Plan shall not be taken into account as "compensation" or to determine the amount or accrual of any benefit under any Employer employee benefit plan, except as required by the terms of such plan or applicable law.

7.4.    No Assets. Participation in the Plan shall not entitle any Participant to any assets of any Employer. No funds shall in any way be set aside or segregated from the general assets of the Employer by reason of a Participant's participation herein except as otherwise expressly provided herein.

7.5.    No Employment Right. Nothing herein contained shall be construed as giving any Employee the right to be retained in the service of an Employer or any Affiliate or shall in any way affect the right of an Employer or any Affiliate to control its employees or held to create any liability upon the Employers to retain any Employee in their service. All Employees shall remain subject to termination to the same extent as if the Plan had not been put into effect. All Employees

of the Employer are at-will, and the Employer reserves the right to terminate the service of any Employee at any time, with or without Cause, with or without notice.

7.6.   <u>Prior Severance Plans Superseded</u>.  Except as otherwise may be required under applicable law, the Plan supersedes any and all prior separation, severance and salary continuation plans, policies, programs and arrangements that previously may have been offered by the Employer to Eligible Employees, including, but not limited to, the Saks Incorporated Severance Plan (as amended through December 9, 2010), the Saks Bridging of Service Policy, the Summary Plan Description for the Saks Incorporated Severance Plan, the Lord & Taylor Supplemental Unemployment Benefit Plan (and amendments thereto), The Lord & Taylor Severance Benefit Plan, and the Severance Guidelines for Store Based Associates not Covered by the Formal Severance Plan. Any Employee who is eligible to receive benefits under any such applicable law shall not be eligible to receive benefits under the Plan unless otherwise expressly provided by the Employer.

7.7.   <u>No Duplication of Benefits</u>.  A Participant will not be entitled to receive any other severance, separation, notice or termination payments on account of the Participant's employment with the Employer or any Affiliate.  In addition, benefits under the Plan are not intended to duplicate such benefits as workers' compensation, wage replacement benefits, disability benefits, pay-in-lieu-of-notice, Severance Payments or similar benefits under other benefit plans, severance programs, employment contracts or applicable laws. Should such other benefits be payable, benefits payable to a Participant under the Plan will be offset or, alternatively, benefits previously paid under the Plan will be treated as having been paid to satisfy such other benefit obligations but only to the extent such payment or benefit is not "nonqualified deferred compensation" governed by Code Section 409A. In either case, the Plan Administrator, in its sole discretion, will determine how to apply this provision and may override other provisions in the Plan in doing so, including to the extent necessary to comply with Code Section 409A, if applicable.

7.8.   <u>WARN Act</u>.  Any Severance Payments hereunder are considered a part of, and not in addition to, any amounts that may be payable to a Participant under the Worker Adjustment Retraining Notification Act or any similar law or regulation.

7.9.   <u>Overpayments</u>.  If any overpayment is made under the Plan for any reason, the Plan Administrator will have the right to recover the overpayment. The Participant shall cooperate fully with the Plan and return any overpayment.

7.10.   <u>Construction</u>.  The respective terms and provisions of the Plan shall be construed, whenever possible, to be in conformity with the requirements of ERISA and the Code, or any subsequent laws or amendments thereto. To the extent not in conflict with the preceding sentence or another provision in the Plan, the construction and administration of the Plan shall be in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York (without reference to its conflicts of laws provisions).

7.11.   <u>No Liability</u>.  No liability shall be incurred by the Employer beyond the specific provisions of the Plan.

7.12.   <u>Severability</u>.  Should any provisions of the Plan be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the other provisions of the Plan unless such determination shall render impossible or impracticable the functioning of the Plan, and in such case, an appropriate provision or provisions shall be adopted so that the Plan may continue to function properly.

7.13.   <u>Interpretation</u>.  All provisions of the Plan shall be interpreted and administered in accordance with the provisions of ERISA in a manner which will assure compliance of the Plan's operation therewith.

7.14.   <u>Titles</u>.  The titles are for reference only.  In the event of a conflict between a title and the content of a section, the content of the section shall control.

7.15.   <u>Other Important Plan Information</u>.  Other important plan information can be found in Appendix C.

7.16.   <u>Rights Under ERISA</u>.  The U.S. Department of Labor has issued regulations that require the Employer to provide an Eligible Employee with a statement of rights under ERISA which are set forth in Appendix D.

7.17.   <u>Code Section 409A</u>.

(a)   <u>Interpretation</u>.  The Employer intends that that payments and benefits under this Plan will either comply with or be exempt from Section 409A of the Code and the regulations and guidance promulgated thereunder (collectively "<u>Section 409A</u>") and, accordingly, to the maximum extent permitted, this Plan shall be interpreted to be exempt from Section 409A or in compliance therewith, as applicable.

(b)   <u>Separation from Service</u>.  A termination of employment shall not be deemed to have occurred for purposes of any provision of the Plan providing for the payment of any amounts or benefits that are considered nonqualified deferred compensation under Section 409A upon or following a termination of employment, unless such termination is also a "separation from service" within the meaning of Section 409A and the payment thereof prior to a "separation from service" would violate Section 409A.  For purposes of any such provision of the Plan or relating to any such payments or benefits, references to a "termination," "termination of employment," "Covered Termination" or like terms shall mean "separation from service."

(c)   <u>Specified Employees</u>.  Notwithstanding any contrary provision in the Plan, any payment(s) of nonqualified deferred compensation (within the meaning of Section 409A) that are otherwise required to be made under the Plan to a "specified employee" (as defined under Section 409A) as a result of the Employee's separation from service (other than a payment that is not subject to Section 409A) shall be delayed for the first six (6) months following such separation from service (or, if earlier, until the date of death of the specified employee) and shall instead be paid on the day that immediately follows the end of such six (6) month period.

(d)   Installment Payments.  If an amount is paid in two (2) or more installments, for purposes of Section 409A, each installment shall be treated as a separate payment.

(e)   Release Agreement.  Notwithstanding anything herein to the contrary, if any payment or benefit paid or provided under this Plan is determined to be "nonqualified deferred compensation" that is subject to Section 409A, and the payment or provision of such payment or benefit could be made in either of two calendar years depending upon when a Participant's Release Agreement becomes irrevocable, such payment or provision of benefits shall in all cases be made in the second such calendar year.

## ARTICLE VIII
## CLAIMS PROCEDURE

8.1.   General.  The Plan Administrator shall make a determination in connection with the Covered Termination of any Eligible Employee as to whether a benefit under the Plan is payable to such Eligible Employee, taking into consideration any determination made by the Plan Administrator as to the circumstances regarding the termination, the Plan Administrator's decision as to whether or not to pay a benefit under Article IV and as to the amount of payment.  The Plan Administrator shall advise any Eligible Employee it determines is entitled to severance and/or benefits under the Plan and the amount of such severance and benefits.  The Plan Administrator may delegate any or all of its responsibilities under these procedures.

8.2.   Claim Procedures.  Each Eligible Employee or an Eligible Employee's authorized representative ("Claimant") may file a written claim with the Plan Administrator if the Eligible Employee believes he or she did not receive all benefits to which he or she is entitled under Article IV.  The written claim must be filed within 60 days of the Eligible Employee's Termination Date.  In the event that a claim is denied, the Plan Administrator shall provide to the Claimant written notice of the denial within 90 days after the Plan Administrator receives the claim, unless special circumstances require an extension of time for processing the claim.  If such an extension of time is required, written notice of the extension shall be furnished to the Claimant prior to the termination of the initial 90-day period.  In no event shall such extension exceed a period of 90 days from the end of such initial period.  Any extension notice shall indicate the special circumstances requiring the extension of time, the date by which the Plan Administrator expects to render the final decision, the standards on which entitlement to benefits are based, the unresolved issues that prevent a decision on the claim and the additional information needed to resolve those issues.

8.3.   Notice of Denial.  If an Eligible Employee is denied a claim for benefits under the Plan, the Plan Administrator shall provide to such Claimant written notice of the denial which shall set forth:

(a)   the specific reasons for the denial;

(b)   specific references to the pertinent provisions of the Plan on which the denial is based;

10

   (c) a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

   (d) an explanation of the Plan's claim review procedures, and the time limits applicable to such procedures.

  8.4. <u>Right to Review</u>.  After receiving written notice of the denial of a claim, a Claimant or a Claimant's representative shall be entitled to:

   (a) request a full and fair review of the denial of the claim by written application to the Plan Administrator;

   (b) request, free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim;

   (c) submit written comments, documents, records and other information relating to the denied claim to the Plan Administrator; and

   (d) a review that takes into account all comments, documents, records and other information submitted by the Claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

  8.5. <u>Application for Review of Claim Denials</u>.  Any Participant or any authorized representative of such Participant whose claim for benefits under the Plan has been denied or deemed denied, in whole or in part, by the Plan Administrator may upon written notice to the Plan Administrator request a review by the Plan Administrator of such denial of the claim for benefits. Such Participant shall have 60 days from the date the claim is deemed denied, or 60 days from receipt of the notice denying the claim, as the case may be, in which to request a review by written application delivered to the Plan Administrator, which must specify the relief requested and the reason such Participant believes the denial should be reversed.

  8.6. <u>Decision on Review</u>.  No later than 60 days following the receipt of the written application for review, the Plan Administrator shall submit its decision on the review in writing to the Claimant involved and to the Claimant's representative, if any, unless the Plan Administrator determines that special circumstances (such as the need to hold a hearing) require an extension of time, to a day no later than 120 days after the date of receipt of the written application for review. If the Plan Administrator determines that the extension of time is required, the Plan Administrator shall furnish to the Claimant written notice of the extension before the expiration of the initial 60 day period.  The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan Administrator expects to render its decision on review.  In the case of a decision adverse to the Claimant, the Plan Administrator shall provide to the Claimant written notice of the denial which shall include:

   (a) the specific reasons for the decision;

(b)     specific references to the pertinent provisions of the Plan on which the decision is based;

(c)     a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's claim for benefits; and

(d)     an explanation of the Plan's claim review procedures, and the time limits applicable to such procedures, including a statement of the Claimant's right to bring an action under Section 502(a) of ERISA following the denial of the claim upon review.

8.7.    <u>Filing a Claim</u>.  No claim may be filed with a court regarding a denial of a claim for benefits under the Plan until the Eligible Employee has exhausted the administrative review procedures under the Plan. All claims for benefits denied under the Plan must be brought in a federal court for New York, within 90 days after the Eligible Employee receives the Eligible Employee's decision on review pursuant to Section 8.6 hereof.

## APPENDIX A

## ELIGIBLE CLASSES OF EMPLOYEES

The following classes of Employees, who are not store Employees, shall be eligible to become Participants under the Plan:

- President
- Executive Vice President
- Senior Vice President
- Vice President
- Senior Director
- Divisional Vice President
- Director
- Sr. Manager
- Manager
- Professional
- Associate

Store Employees who are salaried Employees and are classified as General Manager level and above shall be eligible to become Participants under the Plan.

A-1

**APPENDIX B**

**SEVERANCE PAYMENTS SCHEDULE**

| Position[1] | Severance Payments |
|---|---|
| President and Executive Vice President | 12 months continued Base Salary |
| Senior Vice President | • 1 month of continued Base Salary for each Year of Service<br>• Minimum of 6 months and a maximum of 12 months |
| Vice President | • 3 weeks of continued Base Salary for each Year of Service<br>• Minimum of 18 weeks and a maximum of 39 weeks |
| Senior Director, Divisional Vice President and Director | • 2 weeks of continued Base Salary for each Year of Service<br>• Minimum of 12 weeks and a maximum of 26 weeks |
| Senior Manager, Manager, Professional, Store General Manager, Associate and All Other Participants | • If less than 1 Year of Service, 2 weeks continued Base Salary<br>• If 1 Year or more of Service: 2 weeks continued Base Salary plus 1 additional week per Year of Service<br>• Minimum of 9 weeks and a maximum of 26 weeks |

B-1

**APPENDIX C**

**OTHER IMPORTANT PLAN INFORMATION**

OFFICIAL NAME OF THE PLAN:  Hudson's Bay Company Severance Pay Plan for U.S.
Employees

SPONSOR:  HBC
401 Bay Street, Suite 500
Toronto, ON
M2H 2Y4
416.861.6112

EMPLOYER IDENTIFICATION
NUMBER (EIN):  98-0508650

PLAN NUMBER:  503

TYPE OF PLAN:  Employee Welfare Severance Benefit Plan

END OF PLAN YEAR:  January 31

TYPE OF ADMINISTRATION:  Employer Administered

PLAN FUNDING:  The Plan shall be unfunded within the meaning of
ERISA.

PLAN ADMINISTRATOR:  Dan Caspersen
Chief Human Resources Officer
225 Liberty Street
New York, NY 10281
646-802-7099

David Schwartz
EVP, General Counsel and Corporate Secretary
225 Liberty Street
New York, NY 10281
646-802-2274

Michael Greenberg
VP, Benefits, Corporate
225 Liberty Street
New York, NY 10281
646-802-7077

EFFECTIVE DATE:                    May 25, 2017

The Plan Administrator keeps records of the Plan and is responsible for the administration of the Plan.  The Plan Administrator will also answer any questions you may have about the Plan.

Service of legal process may be made upon the Plan Administrator.

## APPENDIX D

### RIGHTS UNDER ERISA

The U.S. Department of Labor has issued regulations that require the Employer to provide an Eligible Employee with a statement of Eligible Employee's rights under ERISA with respect to this Plan. The following statement was designated by the U.S. Department of Labor to satisfy this requirement and is presented accordingly:

As a Participant in the Plan, you are entitled to certain rights and protections under ERISA. ERISA provides that all Plan Participants are entitled to:

*Receive Information About Your Plan and Benefits*

1.      Examine, without charge, all Plan documents and copies of all documents filed by the Employer with the U.S. Department of Labor. This includes annual reports (Form 5500 Series) and Plan descriptions. All such documents are available for review in your Human Resources Department and with the U.S. Department of Labor at the Public Disclosure Room of the Employee Benefits Security Administration.

2.      Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including copies of the latest annual report (Form 5500 Series) and an updated summary plan description. The Plan Administrator may charge you a reasonable fee for the copies.

3.      Receive a summary of the Plan's annual financial report. Once each year, the Plan Administrator will send you a Summary Annual Report of the Plan's financial activities at no charge. The Plan Administrator is required by law to furnish each Participant with a copy of this Summary Annual Report.

*Prudent Action by Fiduciaries*

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called fiduciaries of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants.

No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension or welfare benefit or exercising your rights under ERISA.

*Enforcing Your Rights*

If your claim for severance and/or benefits is denied or ignored in whole or in part, you have a right to receive a written explanation of the reason for the denial, to obtain copies of documents related to the decision without charge, and to appeal any denial, all within certain time schedules. You have the right to have your claim reviewed and reconsidered. You also have the right to request a review of the denial of your claim as explained in the "Appeal Procedures" section. No

one, including your employer or any other person, may discriminate against you in any way to prevent you from obtaining severance and/or benefits under the Plan or exercising your rights under ERISA.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for severance and/or benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court after you have exhausted the Plan's claims and appeal procedures as described in the section "Claims and Appeal Procedures" hereof. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court.

The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

*Assistance with Your Questions*

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest Area Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or you may contact:

> The Division of Technical Assistance and Inquiries
> Employee Benefits Security Administration,
> Department of Labor
> 200 Constitution Avenue, N.W., Room
> Washington, DC 20210
> 1-866-444-EBSA (1-866-444-3272)
> www.dol.gov/ebsa (for general information)
> www.askebsa.dol.gov (for electronic inquiries)

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration at 1-866-444-3272.

EXHIBIT B

HBC US HOLDINGS LLC

AMENDED AND RESTATED SEVERANCE PAY PLAN FOR U.S. EMPLOYEES

## HBC US HOLDINGS LLC AMENDED AND RESTATED SEVERANCE PAY PLAN FOR U.S. EMPLOYEES

### INTRODUCTION

HBC US Holdings LLC, along with its subsidiaries and Affiliates (the "Company") hereby establishes the Amended and Restated HBC US Holdings LLC Severance Pay Plan for U.S. Employees, effective as of March 26, 2020, to provide for the payment of severance to certain employees of Employer who suffer a loss of employment under the terms and conditions set forth in the Plan. The Company's Severance Pay Plan for U.S. Employees was originally effective as of February 1, 2016. Subject to Section 5.2 hereof, the Plan replaces and supersedes all prior plans. This document constitutes both the Plan document and summary plan description and shall be distributed to all Participants in this form. All defined terms have the meaning set forth in Article II below.

### ARTICLE I
### NAME AND PURPOSE

1.1.  <u>Name</u>.  The name of the Plan is the Amended and Restated HBC US Holdings LLC Severance Pay Plan for U.S. Employees.

1.2.  <u>Purpose</u>.  The Plan is hereby established in order to provide Eligible Employees of the Employer with severance benefits in the event of a Covered Termination under the conditions specified herein.

1.3.  <u>Employee Welfare Benefit Plan</u>.  The Plan is an employee welfare benefit plan as defined in Section 3(1) of ERISA.

### ARTICLE II
### DEFINITIONS

The following words used herein shall have the following meanings wherever used in the Plan:

2.1.  "<u>Affiliate</u>" shall mean a corporation or partnership that is a member of a controlled group of corporations or partnerships that includes the Company or any holding company, trade or business that is under common control with the Company, in each case within the meaning of Sections 414(b) and (c) of the Internal Revenue Code.  Any such entity shall be treated as an Affiliate hereunder only with respect to its period of affiliated status.

2.2.  "<u>Base Salary</u>" shall mean the regular weekly base salary or regular weekly hourly wages of an Employee based on the Employee's regular weekly work schedule at the time of the Covered Termination, excluding any bonus or incentive pay, retention pay, overtime, expense or other allowances, production profit, variable pay or other irregular forms of compensation. Base Salary shall be determined in the sole discretion of the Employer based on the personnel records maintained by the Employer.

2.3.  "<u>Board</u>" shall mean the Board of Directors of the Company.

1

2.4.    "Cause" shall mean (i) the Participant's conviction of, or plea of guilty or no contest to, or confession to, (A) a felony or (B) a misdemeanor involving dishonesty or moral turpitude, (ii) the Participant's breach of any of the Participant's terms and conditions of employment or any of the obligations or restrictive covenants applicable to the Participant, (iii) the Participant's violation of the Employer's policies, rules and regulations applicable to the Participant, including any compliance manual, Code of Ethics, Code of Business Conduct or employee handbook, or (iv) the Participant's fraud or misappropriation, embezzlement or misuse of funds or property belonging to the Employer.

2.5.    "Company" shall mean HBC US Holdings LLC.

2.6.    "Covered Termination" shall mean a permanent layoff or other involuntary termination of employment not under the circumstances described in Section 3.2.

2.7.    "Date of Hire" shall mean the date on which an Employee commenced employment with the Employer or any Affiliate (or the first date of its affiliated status, if later) and shall mean, in the case of a rehired Employee, the Employee's most recent Date of Hire on which the Employee commences employment with the Employer or an Affiliate.

2.8.    "Effective Date" shall mean the effective date of the Plan, which is March 26, 2020.

2.9.    "Eligible Employee" shall mean an Employee of the Employer who has provided at least one (1) year of service for an Employer or Affiliate,  is part of a class of Employee that is listed on Appendix A and receives such Employee's normal compensation payments through the Employer's U.S. payroll system. "Eligible Employee" shall not include any Employee who is:

(i)      an Employee who has a right to any severance benefit from an Employer pursuant to an employment agreement, offer letter or other agreement, plan, or policy, unless specifically provided therein;

(ii)     a contract Employee, freelance worker or an independent contractor;

(iii)    being paid by or through an employee leasing company or other third party agency or third party vendor;

(iv)     a seasonal, occasional or temporary Employee, or an intern;

(v)      a member of a unit of Employees covered by a collective bargaining agreement, unless such agreement provides for coverage hereunder.

2.10.    "Employee" shall mean each regular, active (including employees on family and medical leave pursuant to an Employer policy or on short-term disability leave pursuant to an Employer policy), non-temporary, full-time or part-time employee of an Employer who receives normal compensation payments through the Employer's U.S. payroll system.

2.11.    "Employer" shall mean each of the following during the period that each such entity is an Affiliate of the Company: (i) HBC L.P., (ii) HBC US Holdings LLC, (iii) Saks Incorporated,

(iv) Saks & Company LLC, (v) Saks Fifth Avenue LLC, (vi) Saks Direct LLC, and (vii) their designated Affiliates.

2.12.   "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as it may be amended from time to time, and regulations and pronouncements promulgated thereunder.

2.13.   "Original Plan" shall mean the Hudson's Bay Company Severance Pay Plan for U.S. Employees.

2.14.   "Participant" shall mean an Eligible Employee who incurs a Covered Termination and meets the requirements for Severance Payments under the Plan, as set forth in Article III. An individual will cease being a Participant once payment of all payments due to the Participant under the Plan have been completed, and no person will have any further rights under the Plan with respect to such former Participant.

2.15.   "Plan" shall mean the Amended and Restated HBC US Holdings LLC Severance Pay Plan for U.S. Employees.

2.16.   "Plan Administrator" shall mean any person or entity designated by the Board as Plan Administrator as provided in Article VI hereof.

2.17.   "Release Agreement" shall have the meaning set forth in Section 4.3(b) herein.

2.18.   "Severance Payments" shall mean the amounts set forth in Appendix B herein.

2.19.   "Termination Date" shall mean the date upon which an Eligible Employee's employment relationship with the Employer ceases.

2.20.   "Year of Service" shall mean a completed period of twelve (12) consecutive months of service measured from an Eligible Employee's Date of Hire and any anniversary thereof until such Eligible Employee's Termination Date. A fractional Year of Service shall be rounded downward and shall be disregarded in determining the amount of Severance Payment payable to a Participant under Section 4.1 hereof. Years of Service shall be determined based on the personnel records maintained by the Employer.  Determinations regarding Years of Service shall be made by the Plan Administrator in its sole discretion.

## ARTICLE III
### ELIGIBILITY AND PARTICIPATION

3.1.   Entitlement to Benefits.  An Eligible Employee who incurs a Covered Termination not under circumstances described in Section 3.2 herein shall become a Participant in the Plan and receive the Severance Payments described in Article IV hereof subject to the terms and conditions set forth herein.

3.2.   Limitations.  In no event shall an Eligible Employee be entitled to receive any benefit under the Plan if:

(a)     the Eligible Employee voluntarily resigns employment or abandons such Eligible Employee's position;

(b)     the Eligible Employee is terminated for Cause;

(c)     the Eligible Employee retires or dies;

(d)     the Eligible Employee, at the time of termination, is treated as an inactive Employee and is eligible to receive any form of disability or worker's compensation insurance or salary continuation because of any disability;

(e)     the Eligible Employee is provided at least three (3) months advance notice of a change in  facility or place of business of an Employer or an Affiliate of an Employer, provided such change is to a facility or place of business that is within fifty (50) miles of the location of the Participant's last position with the Employer;

(f)     the Eligible Employee is offered employment in a comparable position with an Employer or an Affiliate of Employer; or

(g)     the Eligible Employee is terminated in conjunction with the sale or transfer (whether of stock or assets) of all or any part of an Employer and is offered a comparable position with the acquirer of the part of all of the Employer sold or transferred.

The Plan Administrator shall have the sole discretion to determine whether a position is "comparable" and may take into consideration any factor it deems desirable, including, but not limited to, the geographic location in which the position is offered, the duration of the position, and the compensation offered to the person holding such position.

## ARTICLE IV
### SEVERANCE PAYMENTS

4.1.    <u>Determination and Amount of Severance Payments</u>.  If the Plan Administrator determines that a Participant is eligible for Severance Payments pursuant to Article III hereof, the Plan Administrator may grant Severance Payments in accordance with the schedule of Severance Payments set forth in Appendix B, subject to the Plan Administrator's discretion to pay a different amount of Severance Payments pursuant to Section 4.4, and/or the Board's ability to amend or terminate such schedule to the Plan pursuant to Article V. Severance Payments shall be paid in periodic installments consistent with the Employers' normal payroll practices in effect on the Termination Date (each such installment to be at the same Base Salary rate in effect immediately prior to the Termination Date), with the first such installment payable on the first payroll date following the Participant's timely execution, delivery of the Release Agreement pursuant to Section 4.3(b) and any applicable revocation period lapsing with respect to such Release Agreement, subject to Section 7.17 herein.

4.2.    <u>Payments of Bonuses to Eligible Employee</u>. A Participant who is eligible to receive Severance Payments under Section 4.1, and who participates in an incentive bonus plan of the

4

Company, shall be eligible to receive any earned but unpaid bonus for any completed performance period prior to the Termination Date, under the terms and conditions of any applicable bonus plan. Such bonus shall be paid at the same time, and on the same basis, as such bonus is paid to other similarly situated employees under the bonus plan, with the payout and amount of such bonus determined in accordance with the applicable formula or achievement of the corporate objectives applicable to the Participant. A Participant shall not be eligible to receive a bonus for any performance period under the bonus plan that is not completed prior to the Termination Date, unless otherwise determined by the Plan Administrator (in its sole discretion) under certain circumstances consistent with the terms of any applicable bonus plan.

4.3.    <u>Conditions to Severance Payments</u>.

(a)    <u>General Conditions</u>.  As a condition to the receipt of any Severance Payments under Article IV of the Plan, a Participant must: (i) return all Employer property in the Participant's possession; (ii) protect all confidential information about the Employer and its Affiliates, including information concerning business, employees, operations, products and finances; (iii) cooperate with the transition of the responsibilities of the Participant's position, including being available to answer questions and give assistance after termination of employment; (iv) timely execute and not revoke any forms required by the Employer including a Release Agreement described in Section 4.3(b) hereof; (v) comply with all Employer policies, guidelines and employee handbooks or manuals; (vi) comply with any restrictive covenants to which the Participant is subject; and (vii) comply with any additional requirements included in any employment agreement, offer letter or other agreement to which the Participant is a party. The Plan Administrator may impose additional conditions on the payment of Severance Payments as are necessary to protect the business interests of the Employer, including, without limitation, requiring the Participant to agree to reasonably cooperate with the Employer following the Termination Date and to abide by non-competition, non-solicitation and non-disparagement covenants. If Participant violates any of the conditions in Section 4.3 or if at any time following the Termination Date Employer determines that circumstances existed to terminate the Participant for Cause, all benefits under the Plan shall immediately cease.

(b)    <u>General Release of Claims</u>.  As a condition of entitlement to any Severance Payments under the Plan, a Participant shall be required to timely execute, not revoke within any applicable revocation period and honor a general release and waiver of any claims, demands and causes of action, both known and unknown, against the Employer and all Affiliates, as well as against such other persons or entities designated in the release, and to covenant not to sue such parties as to any such claim (the "Release Agreement"). The Severance Payments hereunder shall be provided as legal consideration for the Release Agreement. The form and content of the general release and waiver shall be specified by the Plan Administrator.

(c)    <u>Re-Hired Participants</u>.  If a Participant is hired or rehired by any Employer or any Affiliate of an Employer, all benefits under the Plan shall immediately cease on the date of such hire or rehire.

4.4.    <u>Discretionary Severance Payments</u>.  Notwithstanding anything in this Article IV to the contrary, the Plan Administrator may determine an eligible Participant is to receive a different amount of Severance Payments without regard to the schedule of benefits set forth in Appendix B herein (either greater or lesser in amount than the amount set forth in Appendix B herein) or is to receive no Severance Payments under the Plan. The amount of the Severance Payments for any such Participant shall, subject to other limitations set forth in this Article IV, be at the complete and sole discretion of the Plan Administrator and need not be consistent as between similarly situated Participants.

4.5.    <u>Maximum Severance Payments</u>.  Under no circumstance will the Severance Payments payable to any Participant under the Plan (before taxes, withholdings and deductions) exceed two times such Participant's annual compensation (within the meaning of 29 CFR 2510.3-2(b)(2)(i)) for the calendar year preceding the Participant's Termination Date.

4.6.    <u>Reduction</u>.  If a Participant who is entitled to Severance Payments obtains other employment that is comparable to his or her position immediately prior to his or her Covered Termination, while receiving Severance Payments pursuant to the Plan, the Company shall have the right to reduce the amount to be earned by the Participant by one-half of the value of remaining Severance Payments payable to the Participant.  For clarity, any Severance Payments owed as of the date of the Participant's commencement of employment with such other employer through the date the Participant would otherwise cease receiving Severance Payments pursuant to the Plan shall be reduced and such reduced remaining Severance Payments shall be advanced to Participant via a one-time lump sum payment.  The Plan Administrator shall have the sole discretion to determine whether a position is "comparable."  For purposes of this Section 4.6, the Participant shall inform the Company regarding his or her employment status following his or her Covered Termination and during the period he or she receives Severance Payments under the Plan.  The Company shall have the right to withhold Severance Payments if the Participant fails to periodically certify his or her employment status in accordance with procedures established by the Company, or to recover any Severance Payments made to a Participant who fails to advise the Company of other employment.

ARTICLE V
AMENDMENT AND TERMINATION

5.1.    <u>Establishment</u>.  Neither the establishment of the Plan, nor any modification thereof, nor the payment of any benefits hereunder, will be construed as giving to any Participant, Employee (or any beneficiary of either), or other person any legal or equitable right against any Employer or any officer, director or employee thereof, and in no event will the terms and conditions of employment by an Employer of any Employee be modified or in any way affected by the Plan. The Plan does not give any Employee any vested right to Plan benefits.

5.2.    <u>Amendment</u>.  The Company may amend the Plan at any time, or from time to time, by action of the Board.  No amendment shall adversely affect the benefits under the Plan of any Participant who has incurred a Covered Termination prior to the date such amendment is adopted.

5.3.   <u>Termination</u>.  The Company reserves the right to terminate the Plan at any time, by action of the Board.  No individual may become entitled to additional benefits or other rights under the Plan after the Plan is terminated.

ARTICLE VI
<u>ADMINISTRATION</u>

6.1.   <u>Appointment of Plan Administrator</u>.   The Plan Administrator shall mean any individual or committee designated by the Board. In the absence of an appointment by the Board, Plan Administrator shall mean a committee consisting of the Chief Human Resources Officer of the Company and two other senior executives of the Company appointed by the Chief Human Resources Officer, at its discretion.

6.2.   <u>Powers and Duties of the Plan Administrator</u>.  Except as expressly otherwise set forth herein, the Plan Administrator shall have the authority and responsibility granted or imposed on a "plan administrator" by ERISA.  The Plan Administrator shall have the sole authority and responsibility to determine any and all questions of fact, resolve all questions of interpretation of the Plan which may arise under any of the provisions of the Plan as to which no other provision for determination is made hereunder, and exercise all other powers and discretion necessary to be exercised under the terms of the Plan which it is herein given or for which no contrary provision is made.  The Plan Administrator shall have full power and discretion to interpret the Plan and related documents, to resolve ambiguities, inconsistencies and omissions, to determine any question of fact, and to determine the rights and benefits, if any, of any Participant or other applicant, in accordance with the provisions of the Plan.  The Plan Administrator's decision with respect to any matter shall be final and binding on all parties concerned, and neither the Plan Administrator nor any of its directors, officers, employees or delegates nor, where applicable, the directors, officers or employees of any delegate, shall be liable in that regard except for gross abuse of the discretion given it and them under the terms of the Plan.  The Plan Administrator may, from time to time, by action of its appropriate officers, delegate to designated persons or entities the right to exercise any of its powers or the obligation to carry out any or all of its duties as Plan Administrator.

6.3.   <u>Engagement of Advisors</u>.  The Plan Administrator may employ actuaries, attorneys, accountants, brokers, employee benefits consultants, and other specialists to render advice concerning any responsibility the Plan Administrator has under the Plan. Such persons may also be advisors to any Employer.

6.4.   <u>Payment of Costs and Expenses</u>.   The costs and expenses incurred in the administration of the Plan shall be paid directly by one or more of the Employers as determined by the Plan Administrator in its sole discretion. Such costs and expenses include those incident to the performance of the responsibilities of the Plan Administrator, including but not limited to, claims administration fees and costs, fees of accountants, legal counsel and other specialists, bonding expenses and other costs of administering the Plan.

ARTICLE VII
MISCELLANEOUS

7.1.    Exclusive Benefit.  The Plan has been adopted for the exclusive benefit of the Participants.  Notwithstanding the foregoing, nothing herein contained shall be construed as giving to any Employee or any other person any legal or equitable right against any Employer unless such right shall exist by reason of the express provisions of the Plan or any action taken pursuant thereto and in compliance therewith.

7.2.    Deductions or Withholdings.  The Employer shall have the authority to deduct or withhold (or cause to be withheld, as the case may be) from any amounts otherwise due or payable under or pursuant to this Plan such federal, state and local income, employment or other taxes or amounts as may be required or permitted to be withheld pursuant to any applicable law or regulation.

7.3.    Benefits Not Taken Into Account as Compensation.  Amounts due or payable under this Plan shall not be taken into account as "compensation" or to determine the amount or accrual of any benefit under any Employer employee benefit plan, except as required by the terms of such plan or applicable law.

7.4.    No Assets.  Participation in the Plan shall not entitle any Participant to any assets of any Employer.  No funds shall in any way be set aside or segregated from the general assets of the Employer by reason of a Participant's participation herein except as otherwise expressly provided herein.

7.5.    No Employment Right.  Nothing herein contained shall be construed as giving any Employee the right to be retained in the service of an Employer or any Affiliate or shall in any way affect the right of an Employer or any Affiliate to control its employees or held to create any liability upon the Employers to retain any Employee in their service. All Employees shall remain subject to termination to the same extent as if the Plan had not been put into effect. All Employees of the Employer are at-will, and the Employer reserves the right to terminate the service of any Employee at any time, with or without Cause, with or without notice.

7.6.    Prior Severance Plans Superseded.  Except as otherwise may be required under applicable law and Section 5.2 hereof, the Plan supersedes any and all prior separation, severance and salary continuation plans, policies, programs and arrangements that previously may have been offered by the Employer to Eligible Employees, including, but not limited to, the Original Plan, the Saks Incorporated Severance Plan (as amended through December 9, 2010), the Saks Bridging of Service Policy, the Summary Plan Description for the Saks Incorporated Severance Plan, the Lord & Taylor Supplemental Unemployment Benefit Plan (and amendments thereto), The Lord & Taylor Severance Benefit Plan, and the Severance Guidelines for Store Based Associates not Covered by the Formal Severance Plan. Any Employee who is eligible to receive benefits under any such applicable law shall not be eligible to receive benefits under the Plan unless otherwise expressly provided by the Employer.

7.7.    No Duplication of Benefits.  A Participant will not be entitled to receive any other severance, separation, notice or termination payments on account of the Participant's employment

8

with the Employer or any Affiliate. In addition, benefits under the Plan are not intended to duplicate such benefits as workers' compensation, wage replacement benefits, disability benefits, pay-in-lieu-of-notice, Severance Payments or similar benefits under other benefit plans, severance programs, employment contracts or applicable laws. Should such other benefits be payable, benefits payable to a Participant under the Plan will be offset or, alternatively, benefits previously paid under the Plan will be treated as having been paid to satisfy such other benefit obligations but only to the extent such payment or benefit is not "nonqualified deferred compensation" governed by Code Section 409A. In either case, the Plan Administrator, in its sole discretion, will determine how to apply this provision and may override other provisions in the Plan in doing so, including to the extent necessary to comply with Code Section 409A, if applicable.

7.8.   WARN Act. Any Severance Payments hereunder are considered a part of, and not in addition to, any amounts that may be payable to a Participant under the Worker Adjustment Retraining Notification Act or any similar law or regulation.

7.9.   Overpayments. If any overpayment is made under the Plan for any reason, the Plan Administrator will have the right to recover the overpayment. The Participant shall cooperate fully with the Plan and return any overpayment.

7.10.   Construction. The respective terms and provisions of the Plan shall be construed, whenever possible, to be in conformity with the requirements of ERISA and the Code, or any subsequent laws or amendments thereto. To the extent not in conflict with the preceding sentence or another provision in the Plan, the construction and administration of the Plan shall be in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York (without reference to its conflicts of laws provisions).

7.11.   No Liability. No liability shall be incurred by the Employer beyond the specific provisions of the Plan.

7.12.   Severability. Should any provisions of the Plan be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the other provisions of the Plan unless such determination shall render impossible or impracticable the functioning of the Plan, and in such case, an appropriate provision or provisions shall be adopted so that the Plan may continue to function properly.

7.13.   Interpretation. All provisions of the Plan shall be interpreted and administered in accordance with the provisions of ERISA in a manner which will assure compliance of the Plan's operation therewith.

7.14.   Titles. The titles are for reference only. In the event of a conflict between a title and the content of a section, the content of the section shall control.

7.15.   Other Important Plan Information. Other important plan information can be found in Appendix C.

7.16.   Rights Under ERISA. The U.S. Department of Labor has issued regulations that require the Employer to provide an Eligible Employee with a statement of rights under ERISA which are set forth in Appendix D.

9

7.17.   <u>Code Section 409A</u>.

(a)   <u>Interpretation</u>.  The Employer intends that that payments and benefits under this Plan will either comply with or be exempt from Section 409A of the Code and the regulations and guidance promulgated thereunder (collectively "<u>Section 409A</u>") and, accordingly, to the maximum extent permitted, this Plan shall be interpreted to be exempt from Section 409A or in compliance therewith, as applicable.

(b)   <u>Separation from Service</u>.  A termination of employment shall not be deemed to have occurred for purposes of any provision of the Plan providing for the payment of any amounts or benefits that are considered nonqualified deferred compensation under Section 409A upon or following a termination of employment, unless such termination is also a "separation from service" within the meaning of Section 409A and the payment thereof prior to a "separation from service" would violate Section 409A.  For purposes of any such provision of the Plan or relating to any such payments or benefits, references to a "termination," "termination of employment," "Covered Termination" or like terms shall mean "separation from service."

(c)   <u>Specified Employees</u>.  Notwithstanding any contrary provision in the Plan, any payment(s) of nonqualified deferred compensation (within the meaning of Section 409A) that are otherwise required to be made under the Plan to a "specified employee" (as defined under Section 409A) as a result of the Employee's separation from service (other than a payment that is not subject to Section 409A) shall be delayed for the first six (6) months following such separation from service (or, if earlier, until the date of death of the specified employee) and shall instead be paid on the day that immediately follows the end of such six (6) month period.

(d)   <u>Installment Payments</u>.  If an amount is paid in two (2) or more installments, for purposes of Section 409A, each installment shall be treated as a separate payment.

(e)   <u>Release Agreement</u>.  Notwithstanding anything herein to the contrary, if any payment or benefit paid or provided under this Plan is determined to be "nonqualified deferred compensation" that is subject to Section 409A, and the payment or provision of such payment or benefit could be made in either of two calendar years depending upon when a Participant's Release Agreement becomes irrevocable, such payment or provision of benefits shall in all cases be made in the second such calendar year.

ARTICLE VIII
CLAIMS PROCEDURE

8.1.   <u>General</u>.  The Plan Administrator shall make a determination in connection with the Covered Termination of any Eligible Employee as to whether a benefit under the Plan is payable to such Eligible Employee, taking into consideration any determination made by the Plan Administrator as to the circumstances regarding the termination, the Plan Administrator's decision

10

as to whether or not to pay a benefit under Article IV and as to the amount of payment. The Plan Administrator shall advise any Eligible Employee it determines is entitled to severance and/or benefits under the Plan and the amount of such severance and benefits. The Plan Administrator may delegate any or all of its responsibilities under these procedures.

8.2.    Claim Procedures.  Each Eligible Employee or an Eligible Employee's authorized representative ("Claimant") may file a written claim with the Plan Administrator if the Eligible Employee believes he or she did not receive all benefits to which he or she is entitled under Article IV. The written claim must be filed within 60 days of the Eligible Employee's Termination Date. In the event that a claim is denied, the Plan Administrator shall provide to the Claimant written notice of the denial within 90 days after the Plan Administrator receives the claim, unless special circumstances require an extension of time for processing the claim. If such an extension of time is required, written notice of the extension shall be furnished to the Claimant prior to the termination of the initial 90-day period. In no event shall such extension exceed a period of 90 days from the end of such initial period. Any extension notice shall indicate the special circumstances requiring the extension of time, the date by which the Plan Administrator expects to render the final decision, the standards on which entitlement to benefits are based, the unresolved issues that prevent a decision on the claim and the additional information needed to resolve those issues.

8.3.    Notice of Denial.  If an Eligible Employee is denied a claim for benefits under the Plan, the Plan Administrator shall provide to such Claimant written notice of the denial which shall set forth:

> (a)    the specific reasons for the denial;
>
> (b)    specific references to the pertinent provisions of the Plan on which the denial is based;
>
> (c)    a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and
>
> (d)    an explanation of the Plan's claim review procedures, and the time limits applicable to such procedures.

8.4.    Right to Review.  After receiving written notice of the denial of a claim, a Claimant or a Claimant's representative shall be entitled to:

> (a)    request a full and fair review of the denial of the claim by written application to the Plan Administrator;
>
> (b)    request, free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claim;
>
> (c)    submit written comments, documents, records and other information relating to the denied claim to the Plan Administrator; and

(d)    a review that takes into account all comments, documents, records and other information submitted by the Claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

8.5.   <u>Application for Review of Claim Denials</u>.  Any Participant or any authorized representative of such Participant whose claim for benefits under the Plan has been denied or deemed denied, in whole or in part, by the Plan Administrator may upon written notice to the Plan Administrator request a review by the Plan Administrator of such denial of the claim for benefits. Such Participant shall have 60 days from the date the claim is deemed denied, or 60 days from receipt of the notice denying the claim, as the case may be, in which to request a review by written application delivered to the Plan Administrator, which must specify the relief requested and the reason such Participant believes the denial should be reversed.

8.6.   <u>Decision on Review</u>.  No later than 60 days following the receipt of the written application for review, the Plan Administrator shall submit its decision on the review in writing to the Claimant involved and to the Claimant's representative, if any, unless the Plan Administrator determines that special circumstances (such as the need to hold a hearing) require an extension of time, to a day no later than 120 days after the date of receipt of the written application for review. If the Plan Administrator determines that the extension of time is required, the Plan Administrator shall furnish to the Claimant written notice of the extension before the expiration of the initial 60 day period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the Plan Administrator expects to render its decision on review. In the case of a decision adverse to the Claimant, the Plan Administrator shall provide to the Claimant written notice of the denial which shall include:

(a)    the specific reasons for the decision;

(b)    specific references to the pertinent provisions of the Plan on which the decision is based;

(c)    a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the Claimant's claim for benefits; and

(d)    an explanation of the Plan's claim review procedures, and the time limits applicable to such procedures, including a statement of the Claimant's right to bring an action under Section 502(a) of ERISA following the denial of the claim upon review.

8.7.   <u>Filing a Claim</u>.  No claim may be filed with a court regarding a denial of a claim for benefits under the Plan until the Eligible Employee has exhausted the administrative review procedures under the Plan. All claims for benefits denied under the Plan must be brought in a federal court for New York, within 90 days after the Eligible Employee receives the Eligible Employee's decision on review pursuant to Section 8.6 hereof.

## APPENDIX A

## ELIGIBLE CLASSES OF EMPLOYEES

The following classes of Employees, who are not store Employees, shall be eligible to become Participants under the Plan:

- President
- Executive Vice President
- Senior Vice President
- Vice President
- Senior Director
- Divisional Vice President
- Director
- Sr. Manager
- Manager
- Professional
- Associate

**APPENDIX B**

## SEVERANCE PAYMENTS SCHEDULE

| Position | Severance Payments |
| --- | --- |
| Senior Vice President and up | <ul><li>1 month of continued Base Salary for each Year of Service</li><li>Maximum of 12 months</li></ul> |
| Vice President | <ul><li>3 weeks of continued Base Salary for each Year of Service</li><li>Maximum of 26 weeks</li></ul> |
| Senior Director, Divisional Vice President and Director | <ul><li>2 weeks of continued Base Salary for each Year of Service</li><li>Maximum of 12 weeks</li></ul> |
| Senior Manager, Manager, Professional, Associate and All Other Salaried Participants | <ul><li>1 week continued Base Salary for each Year of Service</li><li>Maximum of 12 weeks</li></ul> |
| All Hourly Participants | <ul><li>1 week continued Base Salary for each Year of Service</li><li>Maximum of 4 weeks</li></ul> |

## APPENDIX C

## OTHER IMPORTANT PLAN INFORMATION

OFFICIAL NAME OF THE PLAN:    HBC US Holdings LLC Severance Pay Plan for U.S. Employees

SPONSOR:

HBC US Holdings LLC
225 Liberty Street
New York, NY 10281

EMPLOYER IDENTIFICATION
NUMBER (EIN):                 99-0372181

PLAN NUMBER:                  503

TYPE OF PLAN:                 Employee Welfare Severance Benefit Plan

END OF PLAN YEAR:             January 31

TYPE OF ADMINISTRATION:       Employer Administered

PLAN FUNDING:                 The Plan shall be unfunded within the meaning of ERISA.

PLAN ADMINISTRATOR:

Janis Leigh
EVP, Chief Human Resources Officer
225 Liberty Street
New York, NY 10281
646-802-7078

David Schwartz
EVP, General Counsel and Corporate Secretary
225 Liberty Street
New York, NY 10281
646-802-2274

Jessica Arnold
DVP, Senior Labor & Employment Counsel
225 Liberty Street
New York, NY 10281
646-802-7233

EFFECTIVE DATE:               March 26, 2020

WEIL:\97417401\1\55323.0004

The Plan Administrator keeps records of the Plan and is responsible for the administration of the Plan.  The Plan Administrator will also answer any questions you may have about the Plan.

Service of legal process may be made upon the Plan Administrator.

C-2

## APPENDIX D

## RIGHTS UNDER ERISA

The U.S. Department of Labor has issued regulations that require the Employer to provide an Eligible Employee with a statement of Eligible Employee's rights under ERISA with respect to this Plan. The following statement was designated by the U.S. Department of Labor to satisfy this requirement and is presented accordingly:

As a Participant in the Plan, you are entitled to certain rights and protections under ERISA. ERISA provides that all Plan Participants are entitled to:

*Receive Information About Your Plan and Benefits*

1. Examine, without charge, all Plan documents and copies of all documents filed by the Employer with the U.S. Department of Labor. This includes annual reports (Form 5500 Series) and Plan descriptions. All such documents are available for review in your Human Resources Department and with the U.S. Department of Labor at the Public Disclosure Room of the Employee Benefits Security Administration.

2. Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including copies of the latest annual report (Form 5500 Series) and an updated summary plan description. The Plan Administrator may charge you a reasonable fee for the copies.

3. Receive a summary of the Plan's annual financial report. Once each year, the Plan Administrator will send you a Summary Annual Report of the Plan's financial activities at no charge. The Plan Administrator is required by law to furnish each Participant with a copy of this Summary Annual Report.

*Prudent Action by Fiduciaries*

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called fiduciaries of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants.

No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension or welfare benefit or exercising your rights under ERISA.

*Enforcing Your Rights*

If your claim for severance and/or benefits is denied or ignored in whole or in part, you have a right to receive a written explanation of the reason for the denial, to obtain copies of documents related to the decision without charge, and to appeal any denial, all within certain time schedules. You have the right to have your claim reviewed and reconsidered. You also have the right to request a review of the denial of your claim as explained in the "Appeal Procedures" section. No

D-1

one, including your employer or any other person, may discriminate against you in any way to prevent you from obtaining severance and/or benefits under the Plan or exercising your rights under ERISA.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If you have a claim for severance and/or benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court after you have exhausted the Plan's claims and appeal procedures as described in the section "Claims and Appeal Procedures" hereof. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court.

The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

*Assistance with Your Questions*

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest Area Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or you may contact:

> The Division of Technical Assistance and Inquiries
> Employee Benefits Security Administration,
> Department of Labor
> 200 Constitution Avenue, N.W., Room
> Washington, DC 20210
> 1-866-444-EBSA (1-866-444-3272)
> www.dol.gov/ebsa (for general information)
> www.askebsa.dol.gov (for electronic inquiries)

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration at 1-866-444-3272.

EXHIBIT C



Jessica Arnold
Plan Administrator, HBC US Holdings
LLC Amended and Restated Severance
Pay Plan for U.S. Employees
jessica.arnold@hbc.com
(O): 646.802.7233
(C): 347.541.1887
225 Liberty Street, Floor 24
New York, NY 10281

Via Email (vjp@pentimalaw.com)

September 29, 2020

Vincent Pentima
Pentima Law Firm PLLC
30 Rock Hill Road
Bala Cynwyd, PA 19004

       Re:     **Roxanne Cope**

Mr. Pentima,

       I write in response to your Application for Review (the "Application") of Ms. Cope's claim denial dated August 1, 2020. The Application makes the following assertions: (1) that Ms. Cope's claim is timely under either the Hudson's Bay Company's Severance Pay Plan for U.S. Employees (the "Severance Plan") or the HBC US Holdings LLC Amended and Restated Severance Pay Plan for U.S. Employees (the "Amended Severance Plan"); and (2) that Ms. Cope was not offered comparable employment with Le Tote. The Plan Administrator(s) have reviewed Ms. Cope's Application and find her claim for benefits under either the Severance Plan or the Amended Severance Plan to be erroneous. Ms. Cope's claim for benefits is therefore denied.

       In denying Ms. Cope's entitlement to severance benefits, the Plan Administrator is relying on the following provisions of the Severance Plan with respect to Ms. Cope's November 1, 2019 termination from HBC:

-        Section 3.2(g) of the Severance Plan, which sets forth limitations on eligibility under the Severance Plan and provides that an Eligible Employee who is "terminated in conjunction with the sale or transfer (whether of stock or assets) of all or any part of an Employer and is offered a comparable position with the acquirer of the part of all of the Employer sold or transferred" will **not** be eligible for severance per the Severance Plan. As you know, Ms. Cope was terminated on November 1, 2019 in connection with the sale of Lord & Taylor to Le Tote, and she was offered comparable employment with her new employer, Le Tote/Lord & Taylor, at that time.[1]

---

[1] While an offer of employment may have been made to Ms. Cope prior to November 1, 2019, her employment with HBC did not end until then, at which point the sale of Lord & Taylor to Le Tote closed. Accordingly, any assertion that she was not terminated in connection with the sale is meritless.

As set forth in the Severance Plan: "The Plan Administrator shall have the sole discretion to determine whether a position is 'comparable' and may take into consideration any factor it deems desirable, including, but not limited to, the geographic location in which the position is offered, the duration of the position, and the compensation offered to the person holding such position." Despite Ms. Cope's argument that the position she was offered was not comparable, the Severance Plan gives broad discretion to the determination of the Plan Administrator. We maintain that the position offered to Ms. Cope was comparable.

- Section 8.2 of the Severance Plan requires that an initial claim for benefits must be made within 60 days of termination of employment. Again, on that basis alone, Ms. Cope's Application is denied.[2] Ms. Cope's argument that her claim is timely because Lord & Taylor was not specifically removed from the definition of "Employer" in Section 2.11 of the Severance Plan is meritless. Section 2.11 defines Employer as "each of the following *during the period that each such entity is an Affiliate of the Company*: (i) Hudson's Bay Company, (ii) Saks Incorporated, (iii) Saks & Company, LLC, (iv) Lord & Taylor Acquisition, Inc., (v) Lord & Taylor Holdings, LLC, (vi) Lord & Taylor LLC, (vii) GALERIA Kaufhof GmbH, (viii) Gilt Groupe Holdings, Inc., and (ix) their designated Affiliates" (emphasis added). Lord & Taylor was no longer an Affiliate of the Company as of November 1, 2019, following the close of the sale to Le Tote, contrary to the assertions in the Application.

To the extent Ms. Cope is claiming that she is entitled to receive benefits in connection with her March 31, 2020 termination by Le Tote/Lord & Taylor, that claim is also denied. Please note that the Severance Plan was superseded by the Amended Severance Plan on March 26, 2020. Per the Amended Severance Plan:

- Section 2.11 defines Employer as follows: "each of the following during the period that each such entity is an Affiliate of the Company: (i) HBC L.P., (ii) HBC US Holdings LLC, (iii) Saks Incorporated, (iv) Saks & Company LLC, (v) Saks Fifth Avenue LLC, (vi) Saks Direct LLC, and (vii) their designated Affiliates."

- Ms. Cope was employed by Le Tote/Lord & Taylor, which is not an entity covered by the Amended Severance Plan, nor is it an Affiliate of the Company. Ms. Cope's argument that HBC and Le Tote are joint employers is frivolous.

---

[2] The argument in the Application that Ms. Cope had 60 days from the effective date of the Amended Severance Plan also fails. Section 8.2 of the Severance Plan states that an initial claim must be made within 60 days of **termination of employment**. Thus, the effective date of the Amended Severance Plan is irrelevant.

Following this denial, Ms. Cope has 90 days to file a claim in accordance with Section 8.7 of either the Severance Plan or the Amended Severance Plan.  Ms. Cope has the right to bring an action under Section 502(a) of ERISA following the denial of this claim.  Ms. Cope is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to her claim for benefits.

Thank you.

Very truly yours,

*Jessica Arnold*

Jessica Arnold
Plan Administrator,
HBC US Holdings LLC Amended and Restated
Severance Pay Plan for U.S. Employees

EXHIBIT D

**Lord & Taylor LLC**
**250 Vesey Street, 22nd Floor**
**New York, NY 10281**

May 28, 2020

Roxanne Cope
10 Sequin Circle
Jim Thorpe, PA 18299

      Re:  Demand for Immediate Repayment.

Dear Roxanne Cope,

      On March 31, 2020, Lord & Taylor LLC ("L&T") offered you $1,173.06 as a Severance Payment, which was paid in advance on April 3, 2020, in addition to one (1) month of employer-paid COBRA premiums for the month of April (collectively, the "Severance Benefits"), conditioned upon you signing and returning the severance agreement attached hereto as Annex A, (the "Severance Agreement") by April 21, 2020, or, in the alternative, reimbursement for the Severance Benefits in full by April 28, 2020. You are receiving this letter because you have neither returned the signed Severance Agreement nor remitted the Severance Benefits.

      L&T hereby demands that you return the signed Severance Agreement by Monday, June 1, 2020, at 5:00 p.m., EST to Minerva Abujawdeh at minerva.abujawdeh@lordandtaylor.com. In the alternative, you must immediately reimburse L&T for the Severance Benefits by sending a check in the amount of $1,173.06, made payable to Le Tote, Inc., to 8790 Beckett Rd., West Chester, OH 45069 by the above date.

      We regret the circumstances under which we are now required to make this demand and sincerely hope that this may be resolved by a timely return of the signed Severance Agreement. However, should you retain the Severance Benefits and fail to return a signed Severance Agreement, your inaction and retention of the Severance Benefits will be deemed acceptance of the terms and conditions of the Severance Agreement.

      In the event you initiate litigation against L&T or otherwise take action contrary to your obligations under the Severance Agreement, L&T will seek all costs and attorneys' fees incurred in connection with the enforcement of its rights. L&T expressly reserves all rights, defenses, and remedies available to it, at law and in equity, and nothing contained in this letter shall constitute a waiver thereof.

*[Signature Page Follows]*

Sincerely,

Michael van den Berg
Senior Vice President & General Counsel

*[Signature Page to Demand Letter]*