**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROXANNE COPE,<br><br>                          Plaintiff,<br><br>     v.<br><br>HUDSON'S BAY COMPANY SEVERANCE<br>PAY PLAN FOR U.S. EMPLOYEES<br>AMENDED AND RESTATED AS HBC US<br>HOLDINGS LLC SEVERANCE PAY PLAN<br>FOR U.S. EMPLOYEES,<br><br>HUDSON'S BAY COMPANY, PLAN SPONSOR,<br><br>HBC US HOLDINGS LLC, PLAN SPONSOR,<br><br>and<br><br>JESSICA ARNOLD, PLAN ADMINISTRATOR,<br><br>                          Defendants. | Civil Action No. 2:20-cv-06490-CDJ |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................... 2

    A.    The 2017 Hudson's Bay Company Severance Pay Plan For U.S. Employees ................................................................................. 2

    B.    Plaintiff's Employment And Termination From Lord & Taylor And Claim And Appeal For Benefits ................................................ 5

III.  ARGUMENT ...................................................................................... 7

    A.    Legal Standard ......................................................................... 7

    B.    Plaintiff's Claim For Severance Pay Benefits In Count I Fails Because, Under The Terms Of The 2017 HBC Plan, Lord & Taylor Was Not An "Affiliate" Of HBC In March 2020, When Plaintiff's Employment Was Terminated ................................................................................ 7

        1.    Plaintiff's Claim Is Governed By The Terms Of The 2017 HBC Plan ................................................................... 8

        2.    The Complaint Does Not Allege Facts That Lord & Taylor An "Affiliate" Of HBC At The Time Plaintiff's Employment Was Terminated In March 2020, So Plaintiff Is Not Entitled To Benefits Under The 2017 HBC Plan ................................................. 8

    C.    Plaintiff's Fiduciary Breach Claim In Count II Fails As A Matter Of Law For Several Independent Reasons. ...................................... 10

    D.    Plaintiff's Claim In Count III Fails Because Plaintiff Has Not Alleged That Defendants Were Her Employer Or That They Took Employment Related Actions To Interfere with Plaintiff's Attainment of Benefits ................ 12

    E.    Plaintiff's Pennsylvania WPCL Claim Is Preempted By ERISA ....................... 14

CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aicher v. IBEW Local Union No. 269 Joint Trust Funds Office*,
  No. 12–1781 (FLW), 2017 WL 2364191 (D.N.J. May 31, 2017)..........................................14

*Arrow Drilling Co., Inc. v. Carpenter*,
  No. 2:02-CV-09097, 2003 WL 23100808 (E.D. Pa. Sept. 23, 2003).....................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................7

*Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*,
  107 F.3d 139 (2d Cir. 1997)....................................................................................................12

*Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. – Pension Fund v. Centra*,
  983 F.2d 495 (3d Cir. 1992).....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................7

*Boyle v. Penn Dental Med.*,
  689 F. App'x 140 (3d Cir. 2017) .............................................................................................13

*Buck v. Hampton Twp. Sch. Dist.*,
  452 F.3d 256 (3d Cir. 2006).....................................................................................................3

*Campbell v. BankBoston, N.A.*,
  327 F.3d 1 (1st Cir. 2003) .......................................................................................................11

*Corman v. Nationwide Life Ins. Co.*,
  396 F. Supp. 3d 530 (E.D. Pa. 2019) .......................................................................................3

*Deibler v. UFCW Local Union 23*,
  973 F.2d 206 (3d Cir. 1992).....................................................................................................11

*Diaconu v. Skyline Transp.*,
  No. 12-CV-0663, 2012 WL 4109099 (E.D. Pa. Sept. 18, 2012), *aff'd*, 514 F. App'x 94 (3d Cir. 2013)...........................................................................................................7

*Fischer v. Phila. Elec. Co.*,
  96 F.3d 1533 (3d Cir. 1996)....................................................................................................14

*Flanagan v. Gen. Motors Corp.*,
  No. 1:04-CV-3498-JEC, 2007 WL 9701255 (N.D. Ga. Aug. 29, 2007) ..................................9

*Galman v. Sysco Food Servs. of Metro N.Y., LLC*,
  No. 13-7800, 2016 WL 1047573 (D.N.J. Mar. 16, 2016) .......................................................12

*Gavalik v. Cont'l Can Co.*,
  812 F.2d 834 (3d Cir. 1987)........................................................................................................12

*Grabski v. Aetna, Inc.*,
  43 F. Supp. 2d 521 (E.D. Pa. 1999) .....................................................................................14, 15

*Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*,
  24 F.3d 1491 (3d Cir. 1994)........................................................................................................14

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
  571 U.S. 99 (2013)........................................................................................................................8

*Hooven v. Exxon Mobil Corp.*,
  465 F.3d 566 (3d Cir. 2006).........................................................................................................8

*Ingersoll-Rand Co. v. McClendon*,
  498 U.S. 133 (1990)....................................................................................................................14

*Jenkins v. Union Labor Life Ins. Co., Inc.*,
  900 F. Supp. 2d 534 (E.D. Pa. 2012) ........................................................................................13

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996)....................................................................................................................11

*Lynn v. Jefferson Health Sys.*,
  No. 09–6086, 2010 WL 3656634 (E.D. Pa. Sept. 15, 2010) .....................................................15

*M&G Polymers USA, LLC v. Tackett*,
  574 U.S. 427 (2015)....................................................................................................................11

*McMahon v. McDowell*,
  794 F.2d 100 (3d Cir. 1986)........................................................................................................15

*In re Olick*,
  466 B.R. 680 (E.D. Pa. 2011) ....................................................................................................12

*Pegram v. Herdrich*,
  530 U.S. 211 (2000)....................................................................................................................11

*Shoenberger v. Agere Sys., Inc.*,
  No. 04-CV-03766, 2007 WL 2850570 (E.D. Pa. Sept. 28, 2007) ............................................13

*Stout v. Bethlehem Steel Corp.*,
   957 F. Supp. 673 (E.D. Pa. 1997) .........................................................................13

*The 1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*,
   968 F.2d 401 (3d Cir. 1992), *cert. denied*, 506 U.S. 1086 (1993) ...........................14

*Woerner v. FRAM Grp. Operations, LLC*,
   No. 12–6648 (SRC), 2013 WL 1815518 (D.N.J. Apr. 29, 2013) ...........................13

*Young v. Reconstructive Orthopaedic Assocs., II, P.C.*,
   No. 03-2034, 2005 WL 627796 (E.D. Pa. Mar. 16, 2005) ...............................14, 15

**Statutes**

26 U.S.C. § 414(c) ............................................................................................................5

29 U.S.C. § 1024(b) ........................................................................................................12

29 U.S.C. § 1132(a)(1)(B) ...............................................................................................8

29 U.S.C. § 1132(c) ........................................................................................................12

29 U.S.C. § 1144(a) ........................................................................................................14

Employee Retirement Income Security Act ("ERISA")........................................ *passim*

Internal Revenue Code Section 414............................................................... *passim*

Internal Revenue Code Section 1563(a) ............................................................. *passim*

Pennsylvania Wage Payment and Collection Law ("WPCL").............................2, 14, 15

**Other Authorities**

26 C.F.R. § 1.414(c)–2.....................................................................................................5

Fed. R. Civ. P. 12(b)(6).....................................................................................................7

I.       **INTRODUCTION**

This is an ERISA case seeking severance pay.  Plaintiff Roxanne Cope ("Plaintiff" or "Ms. Cope") is a former employee of Lord & Taylor.  Lord & Taylor had been an affiliate of Defendant Hudson's Bay Company ("HBC") until HBC sold Lord & Taylor to a third-party company called Le Tote in 2019.  After that transaction, Ms. Cope continued her employment with Lord & Taylor until March 31, 2020, when she was laid off.  Ms. Cope was offered severance pay from Lord & Taylor in connection with her layoff.  Nevertheless, she claims in this lawsuit (Count I) an entitlement to additional severance under the terms of the Hudson's Bay Company Severance Pay Plan for U.S. Employees ("2017 HBC Plan").

Plaintiff is not entitled to the severance pay she seeks under the 2017 HBC Plan.  Most importantly, the 2017 HBC Plan is an ERISA plan, and eligibility for benefits is governed by the terms of the plan itself.  Here, those plan terms are very specific:  The 2017 HBC Plan only applies to certain "Employees" of an "Employer," which is defined as "each of the following *during the period that each such entity is an 'Affiliate'* of [HBC]: . . .  (vi) Lord & Taylor LLC."  Compl. Ex. A § 2.11 (emphasis added).  The term "Affiliate" in turn, is defined as "a corporation that is a member of a controlled group of corporations that includes [HBC] or any trade or business that is under common control with [HBC], in each case within the meaning of Sections 414(b) and (c) of the Internal Revenue Code.  Any such entity shall be treated as an Affiliate hereunder *only with respect to its period of affiliated status*."  *Id.* at § 2.1 (emphasis added).  After HBC sold Lord & Taylor to Le Tote in 2019, Lord & Taylor ceased to be an "Affiliate" of HBC under the terms of the 2017 HBC Plan.  Notably, the Complaint alleges no facts (nor could it) that as of Plaintiff's layoff in March 2020, Lord & Taylor was a "member of a controlled group of corporations" with HBC or was "under common control" with HBC, *as those terms are defined in Sections 414(b)*

*and (c) of the Internal Revenue Code and incorporated into the 2017 HBC Plan's terms.* Accordingly, Ms. Cope is not entitled to the benefits she seeks under the 2017 HBC Plan.

Plaintiff also alleges related claims that (1) Defendants breached their fiduciary duties in denying her benefits in violation of ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) (Count II); (2) Defendants interfered with Plaintiff's attainment of benefits in violation of ERISA section 510, 29 U.S.C. § 1140 (Count III); and (3) Defendants' refusal to pay severance pay under the 2017 HBC Plan also violated the Pennsylvania Wage Payment and Collection Law ("WPCL") (Count IV).  Each of these ancillary claims likewise fails.  First, Plaintiff's fiduciary breach claims are premised on the fact that Defendants denied her request for severance pay and fail for the same reasons.  Second, Plaintiff's related allegation that Defendants breached their fiduciary duty by amending the 2017 HBC Plan cannot state a claim because amending plan terms is not a fiduciary function.  Third, Count III is improper because Defendants were not Plaintiff's employer at the time that she was laid off, and there is no allegation that these Defendants were involved in the decision to terminate Plaintiff's employment in March 2020.  Lastly, ERISA preempts Plaintiff's WPCL claim in Count IV, mandating its dismissal.

For each of these reasons, and those set forth more fully below, Defendants respectfully request that this Court dismiss Plaintiff's claims in their entirety and with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

## II.   **FACTUAL BACKGROUND**

### A.   **The 2017 Hudson's Bay Company Severance Pay Plan For U.S. Employees[1]**

The 2017 HBC Plan is an ERISA-governed employee welfare benefit plan meant to

---

[1]     Although the 2017 HBC Plan was amended in March 2020, Plaintiff takes issue with that amendment and suggests that her claim should still be governed by the 2017 HBC Plan.  For purposes of this Motion only, Defendants will assume that the 2017 HBC Plan governs.

"provide for the payment of severance to certain employees of Employer who suffer a loss of employment under the terms and conditions set forth in the Plan." Ex. A,[2] Introduction at 1, § 1.3; Compl. ¶ 9.  Under the terms of the 2017 HBC Plan, there is no automatic entitlement to severance benefits.  *See* Ex. A § 5.1 ("The Plan does not give any Employee any vested right to Plan benefits.").  Rather, to be entitled to severance benefits under the 2017 HBC Plan, an individual must be an "Eligible Employee" of the Employer who incurs a "Covered Termination" of employment.  Ex. A §§ 2.9, 3.1.

Critically important to the task at hand, the 2017 HBC Plan sets forth an explicit test to determine whether an individual's employment is with a covered "Employer."  First, the 2017 HBC Plan defines Employer as:

> "Employer" shall mean each of the following *during the period that each such entity is an Affiliate of the Company*: (i) Hudson's Bay Company, (ii) Saks Incorporated, (iii) Saks & Company, LLC, (iv) Lord & Taylor Acquisition, Inc., (v) Lord & Taylor Holdings, LLC, (vi) Lord & Taylor LLC, (vii) GALERIA Kaufhof GmbH, (viii) Gilt Groupe Holdings, Inc., and (ix) their designated Affiliates.

Ex. A § 2.11 (emphasis added).

Second, the 2017 HBC Plan defines the "Company" as Hudson's Bay Company.  Ex. A § 2.5.  Third, the 2017 HBC Plan defines "Affiliate" in a specific, precise way:

> [A] corporation that is a member of a controlled group of corporations that includes the Company or any trade or business that is under common control with the Company, in each case within the meaning of Sections 414(b) and (c) of the Internal Revenue Code. Any such entity shall be treated as an Affiliate hereunder *only with respect to its period of affiliated status*.

---

[2]       To determine if a claim is legally sufficient, a court may consider any document attached to the complaint as an exhibit, documents or statements incorporated in the complaint by reference, any matters of which judicial notice may be taken, and any documents either in a plaintiff's possession or of which he or she had knowledge and relied upon in bringing suit.  *Corman v. Nationwide Life Ins. Co.*, 396 F. Supp. 3d 530, 535 (E.D. Pa. 2019) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).  Plaintiff attaches four exhibits to her Complaint, which are referenced throughout as Exs. A–D.  The 2017 HBC Plan is Exhibit A to the Complaint.

Ex. A § 2.1 (emphasis added).  By its terms, this definition incorporates the conditions for being within a "controlled group of corporations" or "under common control" that are set forth in Section 414 of the Internal Revenue Code.

Section 414(b) of the Internal Revenue Code states:

[A]ll employees of all corporations which are members of *a controlled group of corporations (within the meaning of section 1563(a)*, determined without regard to section 1563(a)(4) and (e)(3)(C)) shall be treated as employed by a single employer. With respect to a plan adopted by more than one such corporation, the applicable limitations provided by section 404(a) shall be determined as if all such employers were a single employer, and allocated to each employer in accordance with regulations prescribed by the Secretary.

26 U.S.C. § 414(b) (emphasis added).

Section 1563(a) of the Internal Revenue Code in turn states:

**(a) Controlled group of corporations.**

For purposes of this part, the term "controlled group of corporations" means any group of—

**(1) Parent-subsidiary controlled group.**

One or more chains of corporations connected through stock ownership with a common parent corporation if—

(A) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations, except the common parent corporation, is owned (within the meaning of subsection (d)(1)) by one or more of the other corporations; and

(B) the common parent corporation owns (within the meaning of subsection (d)(1)) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of at least one of the other corporations, excluding, in computing such voting power or value, stock owned directly by such other corporations.

**(2) Brother-sister controlled group.**

Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

**(3) Combined group.**

Three or more corporations each of which is a member of a group of corporations described in paragraph (1) or (2), and one of which--
(A) is a common parent corporation included in a group of corporations described in paragraph (1), and also (B) is included in a group of corporations described in paragraph (2).

26 U.S.C. § 1563(a).  26 U.S.C. § 414(c) applies the same test to determine whether companies are "under common control" pursuant to regulations promulgated by the Treasury Department. *See* 26 C.F.R. § 1.414(c)–2 (listing 80% test and five or fewer "individuals, estates or trusts" test to determine whether "two or more trades or businesses [are] under common control. . . .").

In other words, to qualify as an "Affiliate" under the 2017 HBC Plan, an employer must either (a) be 80% owned by Hudson's Bay Company or must have a common parent that owns 80% of both Hudson's Bay Company and the employer; (b) have five or fewer "individuals, estates or trusts" that own 50% or more of the stock of the employer and Hudson's Bay Company under the circumstances as described in subsection (B) of the statute; or (c) some combination of these, as described in subsection (C) of the statute.

**B.    Plaintiff's Employment And Termination From Lord & Taylor And Claim And Appeal For Benefits**

Ms. Cope was "a full-time salaried employee of Lord & Taylor until her involuntary termination by and from Lord & Taylor effective March 31, 2020." Compl. ¶ 49.  On November 8, 2019, HBC sold Lord & Taylor to a third-party company called Le Tote.  Compl. ¶ 59.  Plaintiff

continued her employment with Lord & Taylor after the sale until March 31, 2020, when she was laid off.  Compl. ¶¶ 8, 49.

After her layoff, Plaintiff was offered severance pay from Lord & Taylor.  Compl. Ex. D. Ms. Cope also requested severance pay under the 2017 HBC Plan.  Compl. ¶ 42.  On June 4, 2020, Plan Administrator Jessica Arnold notified Plaintiff, among other things, that her claim was denied because Ms. Cope's employer, Lord & Taylor, was no longer an "Affiliate" of HBC, and therefore Plaintiff's termination on March 31, 2020 did not entitle her to severance pay.  Compl. ¶ 43.

On August 1, 2020, Ms. Cope appealed the denial of benefits, claiming that the denial was "erroneous, was a violation of the Plans' provisions, was a breach of fiduciary duties, and constituted an arbitrary and capricious determination."  Compl. ¶ 34.  On September 29, 2020, Ms. Arnold notified Plaintiff that her appeal was denied.  Compl. ¶ 40; Ex. C.

Plaintiff filed her Complaint on December 24, 2020 "contesting the denial of [her] claim for severance pay benefits under the Plans and seeking, on behalf of herself and those similarly situated the payment by Defendants of all unpaid severance pay benefits provided under the Plans." Compl. at 2.  The Complaint does not allege that when Plaintiff's employment was terminated in March 2020, Lord & Taylor was 80% owned by Hudson's Bay Company, or that any other company owned 80% of both Lord & Taylor and Hudson's Bay Company, i.e., "the Company." Nor does the Complaint allege that five or fewer individuals, estates, or trusts owned 50% or more of Lord & Taylor and Hudson's Bay Company when Plaintiff's employment was terminated.  In short, although the Complaint alleges that Lord & Taylor still had some ongoing contractual relationships with Hudson's Bay Company, it does not allege any facts that Lord & Taylor was, as of March 2020, an "Affiliate" of Hudson's Bay Company, as that term "Affiliate" is defined in the 2017 HBC Plan.

-6-

### III.    ARGUMENT

####     A.    Legal Standard

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal citation and footnote omitted). To survive a motion to dismiss under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Diaconu v. Skyline Transp.*, No. 12-CV-0663, 2012 WL 4109099, at *2 (E.D. Pa. Sept. 18, 2012), *aff'd*, 514 F. App'x 94 (3d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Where there are allegations in the complaint that, even if true, "could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations omitted).

####     B.    Plaintiff's Claim For Severance Pay Benefits In Count I Fails Because, Under The Terms Of The 2017 HBC Plan, Lord & Taylor Was Not An "Affiliate" Of HBC In March 2020, When Plaintiff's Employment Was Terminated

Plaintiff's claim for severance pay in Count I fails because the Complaint does not allege facts that Lord & Taylor was an "Affiliate" of HBC, as that term is defined in the 2017 HBC Plan, when Plaintiff's employment was terminated.

#####         1.    Plaintiff's Claim Is Governed By The Terms Of The 2017 HBC Plan

ERISA section 502(a)(1)(B) provides a cause of action for participants in ERISA-governed benefit plans to recover benefits due "under the terms" of the applicable plan. 29 U.S.C. § 1132(a)(1)(B); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013)

("[W]e have recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims."); *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006) ("Whether and how a severance plan provides an employee with enforceable benefits must be determined on a case-by-case basis, according to the terms of the plan itself—not through the automatic application of 'unilateral contract principles.'").

>2. **The Complaint Does Not Allege Facts That Lord & Taylor Was An "Affiliate" Of HBC At The Time Plaintiff's Employment Was Terminated In March 2020, So Plaintiff Is Not Entitled To Benefits Under The 2017 HBC Plan**

Plaintiff alleges that she was employed by Lord & Taylor at the time of her termination in March 2020. Under the terms of the 2017 HBC Plan, Lord & Taylor was considered an "Employer" whose employees might be entitled to severance only "during the period that [it] is an Affiliate of" HBC. Ex. A § 2.1 (defining "Affiliate"), § 2.11 (defining "Employer"). The central question underpinning Plaintiff's claim, then, is whether at the time Plaintiff's employment was terminated in March 2020, Lord & Taylor was an "Affiliate" of HBC.

The Plan's definition of Affiliate is specific, and requires that a company be a "member of a controlled group of corporations" with HBC or be "under common control" with HBC, as those terms are defined in Section 414 of the Internal Revenue Code, 26 U.S.C. § 414. Ex. A § 2.1. Section 414 of the Code in turn refers to Section 1563(a) of the Code, 26 U.S.C. § 1563(a) to define what it means to be "under common control" or a "member of a controlled group of corporations." *See* 26 U.S.C. § 1563(a). *See also Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. – Pension Fund v. Centra*, 983 F.2d 495, 502 (3d Cir. 1992) (applying the two-factor test for parent-subsidiary ownership in a controlled group of corporations, notably focusing on a corporation's ownership of 80% of the total value of all outstanding shares in the subsidiary company to constitute control); *Flanagan v. Gen. Motors Corp.*, No. 1:04-CV-3498-JEC, 2007

WL 9701255, at *8–9 (N.D. Ga. Aug. 29, 2007) (holding that the defendant properly relied upon an Internal Revenue Code provision, 26 U.S.C. § 1563(a), to support its interpretation of the ERISA-governed benefits plan that the plaintiff's employer was not an "affiliate" of the defendant).

To be an "Affiliate" of HBC as of March 2020 under the terms of the 2017 HBC Plan, Lord & Taylor therefore needed to be (a) 80% owned by HBC or have a common parent own 80% of both HBC and Lord & Taylor; (b) be a brother-sister corporation with HBC that is more than 50% owned by five or fewer "individuals, estates, or trusts[;]" or (c) some combination of those two. *See supra* at II.A.

The Complaint alleges no facts satisfying any of these tests. Ms. Cope acknowledges that HBC sold Lord & Taylor to Le Tote in 2019. Compl. ¶ 59. The Complaint does not allege any facts that Lord & Taylor and HBC were, as of March 2020 (1) in a parent-subsidiary controlled group of corporations with 80% ownership; (2) a brother-sister controlled group of corporations that are both more than 50% owned by the same five or fewer individuals, estates, or trusts; or (3) any combination of the two.

Instead, Plaintiff cites four features of the Lord & Taylor/Le Tote acquisition to suggest that Lord & Taylor was still associated with HBC: (1) HBC's retaining ownership of certain Lord & Taylor properties and leasing back such properties to Le Tote; (2) former HBC employees transitioning to Le Tote's management team in 2019; (3) HBC's 25% ownership stake in Le Tote and its ability to choose two board members of Le Tote; and (4) HBC's promissory note from Le Tote. Compl. ¶ 51(ii)–(iv). Three of these facts have no bearing at all on the requirements of Section 414(b) and Section 1563(a) of the Internal Revenue Code, and thus, Sections 2.1 and 2.11

of the 2017 HBC Plan.  And to state the obvious, the fourth fact – that HBC owned 25% of Le

Tote – does not satisfy the 80% ownership test.

Plaintiff also argues that because Lord & Taylor is one of the listed entities that are an

"Employer," in Section 2.11, she must be entitled to severance.  Compl. ¶ 49–50.  But that ignores

the actual language in the "Affiliate" and "Employer" definitions.  Lord & Taylor, and all of the

other entities listed, are only an Employer "*during the period that each such entity is an Affiliate*

*of the Company*."  Ex. A § 2.11 (emphasis added).  *See also* Ex. A § 2.1 ("Any such entity shall

be treated as an Affiliate hereunder only with respect to its period of affiliated status.").  In other

words, the 2017 HBC Plan expressly contemplated that any of the listed companies could be an

"Employer" and an "Affiliate" at some points in time and not at others.  Here, when Plaintiff's

employment was terminated in March 2020, Lord & Taylor was not an "Affiliate" under the 2017

HBC Plan.  Accordingly, Plaintiff is not entitled to benefits.[3]

Count I fails as a matter of law and should be dismissed.

### C.    Plaintiff's Fiduciary Breach Claim In Count II Fails As A Matter Of Law For Several Independent Reasons.

Plaintiff's fiduciary breach claim in Count II fails for several reasons.

First, Plaintiff's fiduciary breach claim alleges that Defendants breached their fiduciary

duty by denying her claim for benefits.  Compl. ¶ 74.  But Plaintiff is not entitled to benefits under

---

[3]       When she filed her administrative claim for benefits under the Plan on April 16, 2020, Plaintiff also suggested that she was entitled to benefits based on the alleged termination of her employment in November 2019, when HBC sold Lord & Taylor to Le Tote.  That claim was denied for several reasons, including that to the extent Plaintiff's employment was "terminated" in November 2019, Plaintiff was offered comparable employment with Lord & Taylor after the sale to Le Tote and that Plaintiff's claim for benefits based on an alleged November 2019 termination was untimely, because the 2017 HBC Plan required any claim for benefits to be filed within 60 days of the termination date.  Ex. A § 8.2 ("The written claim must be filed within 60 days of the Eligible Employee's Termination Date.");  Ex. A § 3.2(g) (establishing that no severance is owed where "the Eligible Employee is terminated in conjunction with the sale or transfer (whether of stock or assets) of all or any part of an Employer and is offered a comparable position with the acquirer of the part of all of the Employer sold or transferred").  The Complaint does not challenge those determinations, but instead alleges that Plaintiff is entitled to benefits based on the termination of her employment from Lord & Taylor effective March 31, 2020.  *E.g.*, Compl. ¶¶ 49–50.

the 2017 HBC Plan for all of the reasons explained above.  Accordingly, Plaintiff's fiduciary breach claim fails for the same reasons.  *See supra* at III.B.2.

Second, to the extent that Plaintiff alleges that Defendants breached their fiduciary duty by amending the 2017 HBC Plan in March 2020 before Lord & Taylor terminated her employment, that claim fails because amending a plan is not fiduciary activity.  On the contrary, for fiduciary breach claims, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.  *Pegram v. Herdrich*, 530 U.S. 211, 212 (2000).  As the Supreme Court has explained many times, "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries. . . . When employers undertake those actions, they do not act as fiduciaries."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996).  *See also M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 434–35 (2015) (holding that employers and plan sponsors "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." (internal quotations and citations omitted)); *Arrow Drilling Co., Inc. v. Carpenter*, No. 2:02-CV-09097, 2003 WL 23100808, at *4 (E.D. Pa. Sept. 23, 2003) ("[E]mployers do not act as fiduciaries when they simply adopt, modify, or terminate pension plans." (citing *Spink*, *supra*)).[4]

Lastly, to the extent Plaintiff claims that Defendants had a fiduciary obligation to give her business documents regarding the sale of Lord & Taylor to Le Tote, Plaintiff is wrong.  ERISA

---

[4]    Not surprisingly, courts consistently reject claims challenging amendments to severance plans even days before an employee is terminated.  *See Deibler v. UFCW Local Union 23*, 973 F.2d 206, 211–12 (3d Cir. 1992) ("[B]ecause welfare plans, whether funded or unfunded, are expressly exempted from ERISA's vesting requirements, . . . [plaintiff] would clearly be entitled to no severance pay if [his employer] on one day amended the plan to do away with severance pay and provide for a reversion upon termination, and had then, on the next day, terminated the Plan.").  *See also Campbell v. BankBoston, N.A.*, 327 F.3d 1 (1st Cir. 2003) (holding that the employer's amendment of the severance plan the day before closing a sale of a portion of the employer's business was not a fiduciary act, and, thus, did not breach any fiduciary duties).

has a specific and detailed disclosure regime, requiring plan administrators to provide plan documents, summary plan descriptions, Plan annual reports, and certain other plan governing documents upon written request. *See* 29 U.S.C. § 1024(b); 29 U.S.C. § 1132(c). Documents about mergers, sales, or other business transactions are not among the documents that fiduciaries are obligated to provide. *See id.* Accordingly, Plaintiff's fiduciary breach claim fails for this additional reason. *See also Galman v. Sysco Food Servs. of Metro N.Y., LLC*, No. 13-7800, 2016 WL 1047573, at *5 (D.N.J. Mar. 16, 2016) (dismissing plaintiff's breach of fiduciary duty claim premised on defendants' alleged failure to supply information because "§ 1024(b)(4) is not sufficiently broad to require disclosure of any and all documents that would assist participants and beneficiaries in determining their rights under a plan and in determining whether a plan is being properly administered") (quoting *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 145 (2d Cir. 1997) (internal quotations omitted)); *In re Olick*, 466 B.R. 680 (E.D. Pa. 2011) (finding that the employer could not be held liable under ERISA section 1024 because the plaintiff did not allege that he requested documents that the plan administrator was required to provide).

###### D. Plaintiff's Claim In Count III Fails Because Plaintiff Has Not Alleged That Defendants Were Her Employer Or That They Took Employment Related Actions To Interfere with Plaintiff's Attainment of Benefits

To state an ERISA section 510 claim, Plaintiff must allege "(1) prohibited *employer* conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987) (emphasis added); *Woerner v. FRAM Grp. Operations, LLC*, No. 12–6648 (SRC), 2013 WL 1815518, at *5 (D.N.J. Apr. 29, 2013) (same). Here, the Complaint alleges no facts regarding any of these elements.

First, Plaintiff does not allege any prohibited employer conduct by any of *these Defendants*. More specifically, a "prerequisite" of pleading an ERISA section 510 claim is an allegation "that the *employer-employee relationship* . . . was changed in some discriminatory or wrongful way." *Shoenberger v. Agere Sys., Inc.*, No. 04-CV-03766, 2007 WL 2850570, at *6 (E.D. Pa. Sept. 28, 2007) (emphasis added) (citing *Stout v. Bethlehem Steel Corp.*, 957 F. Supp. 673, 694 (E.D. Pa. 1997)).  Here, Plaintiff alleges that her employment was terminated by "the President of Lord & Taylor, her employer" on March 31, 2020.  Compl. ¶ 37.  None of these Defendants allegedly terminated Plaintiff's employment.

Second, Plaintiff does not allege conduct by Defendants taken for the purpose of interfering with Plaintiff's entitlement to benefits.  Claims under Section 510 require a "specific intent to violate ERISA." *Boyle v. Penn Dental Med.*, 689 F. App'x 140, 145 (3d Cir. 2017).  To adequately plead this claim, Plaintiff must plead factual allegations that HBC specifically intended to interfere with her ERISA-protected benefits. *Woerner,* 2013 WL 1815518, at *5.  Here, Plaintiff was not entitled to benefits under the 2017 HBC Plan terms – not because of anything that Defendants allegedly did to Plaintiff's employment – but because she was not employed by an "Employer" under the 2017 HBC Plan's terms at the time Lord & Taylor terminated her employment.  And amending the 2017 HBC Plan (a) was lawful and proper, *see supra* at n. 4, and (b) can never be actionable under Section 510, because it is not employer conduct regarding the employer-employee relationship. *See Jenkins v. Union Labor Life Ins. Co., Inc.*, 900 F. Supp. 2d 534, 546 (E.D. Pa. 2012) (dismissing plaintiff's ERISA section 1140 claim because amending plan terms does not violate the statute) (citing *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1502–03 (3d Cir. 1994)). *See also Aicher v. IBEW Local Union No. 269 Joint Trust Funds Office*, No. 12–1781 (FLW), 2017 WL 2364191, at *15 (D.N.J. May 31,

2017) ("The Third Circuit has limited actionable conduct under Section 510 to that which affects the employer-employee relationship.") (citing *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996)).

Count III, therefore, should be dismissed.

### E.    Plaintiff's Pennsylvania WPCL Claim Is Preempted By ERISA

In Count IV, Ms. Cope brings a claim under the Pennsylvania WPCL, alleging that she is entitled to "severance pay and associated benefits" under the 2017 HBC Plan, and that the failure to pay those benefits is a violation of the WPCL.  Compl. ¶ 85.  This claim is preempted by ERISA.

Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  ERISA preemption applies when (1) the plan at issue is an employee benefit plan, and (2) when the cause of action "relates to" this employee benefit plan.  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139–40 (1990).  "A law 'relates to' an employee benefit plan if it has a connection with or reference to such a plan." *Young v. Reconstructive Orthopaedic Assocs., II, P.C.*, No. 03-2034, 2005 WL 627796, at *5 (E.D. Pa. Mar. 16, 2005) (quoting *Ingersoll-Rand*, 498 U.S. at 139).  "Where the court's inquiry must be directed to the plan, the cause of action 'relates to' the ERISA plan."  *Id.*[5]

Courts in the Third Circuit have used this test to determine that WPCL claims are preempted by ERISA because they necessarily involve the terms of benefit plans governed by ERISA.  *See Lynn v. Jefferson Health Sys.*, No. 09–6086, 2010 WL 3656634, at *3–4 (E.D. Pa. Sept. 15, 2010) (denying plaintiffs' motion to remand and finding that plaintiffs' WPCL claim was preempted by ERISA because the ERISA and WPCL claims were so similar and the

---

[5]      *See also Grabski v. Aetna, Inc.*, 43 F. Supp. 2d 521, 526 (E.D. Pa. 1999) (quoting *The 1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992), *cert. denied*, 506 U.S. 1086 (1993)).

"inextricability of ERISA benefit plans from the relationship between the parties and the requested remedy" required preemption of the WPCL claim). *See also Grabski*, 43 F. Supp. 2d at 527 (holding that plaintiffs' WPCL claim for severance benefits was preempted by ERISA).[6]

Here, it is undisputed that the 2017 HBC Plan is governed by ERISA and is an employee benefit plan. Compl. ¶ 9; Ex. A, at 1 ("The Plan is an employee welfare benefit plan as defined in Section 3(1) of ERISA."). Additionally, Ms. Cope's WPCL claim seeks the severance payments and related benefits payable under the terms of the 2017 HBC Plan. Thus, Plaintiff's WPCL claim is preempted by ERISA and should be dismissed.

---

[6]   *See also Young*, 2005 WL 627796, at *5–6 (granting summary judgment on plaintiffs' WPCL claim because it was preempted by ERISA); *McMahon v. McDowell*, 794 F.2d 100, 106 (3d Cir. 1986) (finding that plaintiffs' WPCL claim was preempted by ERISA because it "relate[d], refer[red], and pertain[ed] to the underlying employee benefit plans" governed by ERISA).

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to dismiss Plaintiff's

Complaint with prejudice.

Respectfully submitted,

/s/  *Brian T. Ortelere*
Brian T. Ortelere (PA ID No. 46464)
Jeremy P. Blumenfeld (PA ID No. 85955)
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA 19103
Tel.: 215.963.5000
Fax: 215.963.5001
Email: brian.ortelere@morganlewis.com
Email: jeremy.blumenfeld@morganlewis.com

*Counsel for Defendants*

Dated: May 17, 2021