# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROXANNE COPE**, | : | CIVIL ACTION |
| individually, on behalf of herself and | : | |
| on behalf of all others similarly situated, | : | No. 20-CV-06490 (CDJ) |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| **HUDSON BAY COMPANY SEVERANCE** | : | |
| **PAY PLAN FOR US EMPLOYEES** | : | |
| **AMENDED and RESTATED AS** | : | |
| **HBC US HOLDINGS LLC SEVERANCE** | : | |
| **PAY PLAN FOR US EMPLOYEES** | : | CLASS ACTION |
| | : | |
| and | : | |
| | : | |
| **HUDSON'S BAY COMPANY,** | : | |
| **PLAN SPONSOR** | : | |
| | : | |
| and | : | |
| | : | |
| **HBC US HOLDINGS LLC** | : | |
| **PLAN SPONSOR,** | : | |
| | : | |
| and | : | |
| | : | |
| **JESSICA ARNOLD,** | : | |
| **PLAN ADMINISTRATOR** | : | |
| | : | |
| Defendants | : | |

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff submits the within *Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint.*

## I.     <u>INTRODUCTION</u>

Plaintiff Roxanne Cope ("Plaintiff" or "Ms. Cope"), on behalf of herself and on behalf of all others similarly situated, files this Memorandum of Law In Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss the Class Action Complaint against Hudson Bay Company Severance Pay Plan for US Employees (hereinafter "2017 Plan"), amended and restated as HBC US Holdings LLC Severance Pay Plan for US Employees (hereinafter "Amended and Revised Plan") (collectively "the Plans"), Hudson's Bay Company ("HBC") ("Plan Sponsor"), and HBC US Holdings LLC ("HBC Holdings") ("Plan Sponsor") and Jessica Arnold ("Plan Administrator").

An apt summary characterization of the Defendants' Motion  and supporting Memorandum is fairly described  as a benign refusal to acknowledge the principles of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and their progeny, especially the Court of Appeals embrace of those cases in *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114 (3d Cir. 2013). Rather, the warp and woof of the Motion is that Plaintiff's allegations are insufficient and thus, must be dismissed. Such assertions of pleading insufficiency are overstated as the following demonstrates.

## II.   COUNTER STATEMENT OF THOSE FACTS PERTINENT TO THE MOTION AND DEMONSTRATIVE OF THE SUFFICENCY OF PLAINTIFF'S CLAIMS

The salient and pivotal facts necessary for the disposition of Defendant's motion   are largely undisputed and are as follows:

Pursuant to the Defendant Hudson's Bay Company Severance Pay Plan for U.S. Employees and any successor or predecessor Plan effective May 25, 2017 ("2017 Plan"). (attached as Exhibit A to the Complaint), as amended and restated **effective March 26, 2020** ("Amended and Restated Plan") (attached as Exhibit B to the Complaint), as well as the Claim denial  email letter of September 29, 2020, from Plan Administrator Jessica Arnold, Esquire (attached to the Complaint as Exhibit C), Ms. Cope has filed this Complaint contesting the denial of her claim for severance pay benefits under the Plans and seeking on behalf of herself and those similarly situated the payment by Defendants of all unpaid severance pay benefits provided under the Plans. (Complaint at 8, 9).

By email of June 4, 2020, Plan Administrator Arnold notified Ms. Cope's Counsel that her claim for severance pay benefits submitted to the 2017 Plan Administrators by letter dated April 16, 2020, was denied for the following reasons:  (i) Ms. Cope's claim was untimely under Section 8.2 of the 2017 Plan since "an initial claim for benefits must be made within 60 days of termination of employment" which Defendants erroneously maintain was November 1, 2019;  (ii) since Ms. Cope was "offered a comparable position with the acquirer [from Hudson Bay Company]" of Lord & Taylor, namely, Le Tote, she was not eligible for severance pay per Section 3.2(g) of the 2017 Plan;  (iii) since the 2017 Plan is said to have been superseded by the March 26, 2020 Amended and Restated Plan in its elimination of "Lord & Taylor LLC" from the definition of "Employer"

3

per Section 2.11 of Amended and Restated Plan, Lord & Taylor was no longer subject to the 2017 Plan because Lord & Taylor ceased being an Affiliate of HBC. (Complaint at page 2 and ¶43).

Ms. Cope appealed from that denial of severance benefits in that the denial of Ms. Cope's claim was erroneous, was a violation of Plan provisions, was a breach of fiduciary duties, and constituted an arbitrary and capricious determination. (Complaint at ¶34). Additionally, Ms. Cope maintained that the Defendants' refusal to pay Ms. Cope (and others similarly situated) her entitlement to severance pay benefits from Lord & Taylor was the consequence of a conscious, purposeful, pretextual and bad faith artifice in order to separate from employment numerous employees without having to pay them their severance benefits under the 2017 Plan. (Complaint at ¶35) and thereby evade the benefit payments.

The Plans sought to accomplish this payment evasion by amending the 2017 Plan to change the definition of "Employer" and dating it March 26, 2020, the day prior to the HBC's decision to have a mass layoff effective March 31, 2020, as well as cutting off the means of communication through the elimination of social medium devices. (Complaint at ¶36).  Further, and contrary to Plan provisions, the Defendants failed and refused to provide Ms. Cope with requested documents relating to the Lord & Taylor sale transaction, relating to the assignment of the Plans to Lord & Taylor/Le Tote, and relating to the intertwining and common ownership of HBC and Lord & Taylor/Le Tote (Complaint at ¶37) as well as any transition agreement between HBC and Lord & Taylor.

Further, the Plan gave no notice to participants that an amendment to the 2017 Plan was to be and was made on March 26, 2020.  Rather, Ms. Cope was notified on March 31, 2020, by the President of "Lord & Taylor", her ostensible employer, that her separation date from the Company

4

was March 31, 2020, and that all regular compensation and employment will cease at that time.

Ms. Cope's separation from employment was an involuntary termination within the contemplation of the Plans, and that said termination was a "Covered Termination" within the meaning of the Plan, and that she is an "Eligible Employee" as defined in the Plans. (Complaint at ¶39). Pursuant to the 2017 Plan (Complaint Exhibit A) Hudson's Bay Company Severance Pay Plan for U.S. Employees and any successor or predecessor Plan Amended and Restated effective March 26, 2020 (Complaint Exhibit B) as well as the Claim denial email/letter of June 4 from Plan Administrator Jessica Arnold, Esquire, Plaintiff submitted an Application for Review of the denial of her claim for severance pay benefits under the 2017 Plan. (Complaint at ¶42).

By letter of September 29, 2020 (Complaint Exhibit C), Plan Administrator Arnold denied Plaintiff's appeal from Defendant Arnold's June 4, 2020 rejection of Plaintiff's severance pay benefit application.  It bears repeating that the refusal to pay Ms. Cope (and others similarly situated) her entitlement to severance benefits from Lord & Taylor was the consequence of a conscious, purposeful and pretextual artifice in order to separate numerous employees without having to pay them their severance benefits under the 2017 Plan. (Complaint at ¶44) and thereby evade the benefit payments.

This large scale systematic ruse for evading the payment of severance to any eligible separated employee was sought to be accomplished by amending the 2017 Plan to change the definition of "Employer" and dating it March 26, 2020, the day prior to the HBC Board's decision to have a mass layoff effective March 31, 2020, as well as cutting off the means of communication through the elimination of social medium devices. (Complaint at ¶45).

Further, and contrary to Plan provisions, the Plan failed and refused to provide Ms. Cope with requested documents relating to the Lord & Taylor sale transaction, relating to Plan

assignment to Lord & Taylor/Le Tote, and relating to the intertwining and common ownership of HBC and Lord & Taylor/Le Tote. (Complaint at ¶46) as well as any transition agreement between HBC and Lord & Taylor.

Ms. Cope was notified on March 31, 2020, by the President of "Lord & Taylor", that her separation date from the Company was March 31, 2020, and that all regular compensation and employment will cease at that time.  As shown herein, Ms. Cope's separation from employment was an involuntary termination within the contemplation of the 2017 Plan and that said termination was a "Covered Termination" within the meaning of the Plan and that she is an "Eligible Employee" as defined in the Plan. (Complaint at ¶47).

Contrary to the conclusions of the Plan Administrator, the terms of the 2017 Severance Plan and the Amended and Revised Plan require a determination that Ms. Cope, and those similarly situated, are eligible for a severance payment for the reasons that follow in **Part IV Argument below.**

III.     <u>**STANDARD OF REVIEW OF A RULE 12 (b)(6) MOTION**</u>

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b) (6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." For each of her causes of action, Plaintiff's Complaint has plead more than "sufficient factual matter...to 'state a claim to relief that is plausible on its face'" with respect to the conduct of the Defendants. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 570 (2007)); see also, *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir.2008) (quoting *Twombly, id.* at n.3); *George v. Rehiel,* 738 F.3d 562, 581 (3d Cir. 2013). As aptly and concisely summarized by the Court in *DiFolco v. MSNBC Cable L.L.C.*, 622 F3d 104, 111 (2d Cir. 2010): "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 111 (quoting *Iqba*l, 129 S. Ct. at 1950). Further, the Third Circuit Court of Appeals in *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 117-118 (2013), expounded as follows:

> The District Court cited *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), in support of its dismissal. However, those cases do not provide a panacea for defendants. **Instead, they merely require that plaintiff raise a "plausible claim for relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937. Although it is established that under the *Twombly* and *Iqbal* pleading standards, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955, those cases make it clear that a claimant does not have to "set out in detail the facts upon  which he bases his claim." Id. at 555 n. 3, 127 S.Ct. 1955 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (emphasis omitted). The pleading standard "is not akin to a 'probability requirement' " *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955); to survive a motion to dismiss, a complaint merely has to state a "plausible claim for relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.**

IV.   **ARGUMENT**

A.   **Plaintiff Was Wrongfully Denied Severance Benefits In Violation of ERISA, 29 U.S.C. § 1132 (a)(1)(B)**

Contrary to Defendants' arguments in their Supporting Memorandum (ECF No. 7-1), the terms of the 2017 Severance Plan and the Amended and Revised Plan require a determination that Ms. Cope is eligible for a severance payment for the reasons that follow.

1.   **Contrary To Defendants' Assertion (Supporting Memorandum at III.B.), Plaintiff's Claim For Severance Pay Benefits In Count I. Of The Complaint Was Wrongfully Denied Under The Terms Of The 2017 HBC Plan As Amended And Restated In That Under The Facts Alleged In The Complaint, HBC Is A Liable Predecessor Of Lord & Taylor**

Under the terms of the 2017 Plan, Ms. Cope is eligible for a severance  payment in that she was a full-time salaried employee of Lord & Taylor until her involuntary termination by and from Lord & Taylor effective March 31, 2020. Section 2.11 of the 2017 Plan (Exhibit A) defines an "Employer" as follows:

> 2.11    "Employer" shall mean each of the following during the period that each such entity is an Affiliate of the Company: … (iv) Lord & Taylor Acquisition, Inc., (v) Lord & Taylor Holdings, LLC, (vi) Lord & Taylor LLC…(Complaint at 49)

It was wrongly asserted by the Plan Administrator[1] that the termination of Ms. Cope by HBC was 11/1/19.   That assertion is belied by the continuation of the 2017 Plan at least until 3/26/20 at which time Defendants asserts that the 2017 Plan was amended and restated ostensibly

---

[1] Quite notably, the Defendants offer only a half-hearted and unenthusiastic endorsement of the Plan Administrator's assertion that Ms. Cope's termination was actually 11/19, stating in footnote 3 of their Supporting Memorandum that Plaintiff's claim was denied for several reasons, including "that **to the extent** Plaintiff's employment was 'terminated, in November 2019,…on an **alleged** November  2019 termination." (Emphasis added). Indeed, Defendants affirmatively maintain that Plaintiff's employment was terminated in March 2020. (Supporting Memorandum at 8).

removing Lord & Taylor as an "Employer" under Section 2.11 of the 2017 Plan.  (Complaint at ¶50). By such assertion, the Defendants necessarily concede that Lord & Taylor continued to be an "Employer" under the Plan until 3/26/20.  Thus, Ms. Cope's severance pay benefit claim dated April 16, 2020, is erroneously, arbitrarily and wrongly said by Defendants to have been untimely in that Ms. Cope had only 60 days from 11/1/19 in which to file a benefit claim and that she failed to do so. (Complaint at ¶50).

### 2.      Plaintiff's Benefit Claim Is Timely

The Plan Administrator's (and Defendants' unspirited) contention of untimeliness of Ms. Cope's benefit claim is erroneous, arbitrary, a product of conflict of interest and wrongly asserted, for several reasons (Complaint at ¶51):

(a)  As noted, Lord & Taylor remained an Employer under the 2017 Plan until at least the 3/26/20 amendment and restatement of the 2017 Plan.  As such, the period within which Ms. Cope could file a benefits claim would run for 60 days from 3/26/20, that is, to 5/25/20.  Her claim of 4/16/20 is therefore timely as having been made within 60 days of the termination of employment.

(b)  It is also clear that intertwining ties and common ownership between HBC and Lord & Taylor/Le Tote existed and continue to exist from 11/19 to date.  For example, HBC retained ownership of the Lord & Taylor properties and continued to lease back those properties to Le Tote.  Further, several HBC/Lord & Taylor principals joined Le Tote upon its "acquisition" of Lord & Taylor in order to lead the integration of Lord & Taylor and Le Tote.

(c)  HBC retains a 25% stake in Le Tote and the right to designate two members to Le Tote's Board of Directors.

(d) HBC received a promissory note from Lord & Taylor/Le Tote for about $33 Million (Can), or $25 Million (USD) payable after two years from the sale to Lord & Taylor/Le Tote.

So, it cannot be said that an employment relationship between Ms. Cope and Lord & Taylor concluded on 11/1/19 and in any event the relationship between HBC and Lord & Taylor continued to be one of single employer, joint employer or alter ego. (Complaint at ¶52).

### 3.   Defendants Are Liable For Severance Pay Benefits Notwithstanding the "Affiliate" Status of Lord & Taylor

Defendants argue that Ms. Cope's claim for severance pay benefits must fail because as of her termination in March 2020, Lord & Taylor was no longer an "Affiliate" of HBC as that term is used in the HBC 2017 Plan. (Supporting Memorandum at 7-8). Such argument is deficient for several reasons. Defendants' reliance on the concept of "control group" liability as an escape by HBC from severance pay liability ignores the well-established principles of liability under single and joint employer liability concepts. Under those rapidly expanding concepts, a predecessor company like HBC may be liable for violations of ERISA. See e.g., *Einhorn v M.L. Ruberton Construction Co.*, 632 F.3d 89, 99 (3d Cir. 2011).

First, Lord & Taylor/Le Tote is a successor employer of HBC thereby obviating the requirement of a common control group relationship as argued by Defendants.  (Complaint at ¶55.

Further, the attempt to remove Lord & Taylor as an "Affiliate" of HBC through the creation of the Amended and Restated Plan on March 26, 2020, just one business day before the termination of Ms. Cope and thereby disclaim her entitlement to severance benefits reasonably leads to the conclusion that Lord & Taylor continued to be an Affiliate of HBC and that "transaction" was the consequence of a conspicuous conscious, purposeful, bad faith and pretextual artifice in order to separate numerous employees without having to pay them their severance pay benefits under the

2017 Plan. (Complaint at ¶55). As discussed below, such contrivance is contrary to the imposition

of the duties of good faith and fair dealing as well as violations of fiduciary duties under ERISA

that preclude specious and unreasonable claim handling processes and claim denials which are the

subjects of this Complaint. *See, Fischer v. Philadelphia Electric Co.*, 96 F.3d 1533 (3d Cir. 1996)

cert. denied, 117 S. Ct. 1247 (1997);

      Furthermore, HBC and Lord & Taylor (Le Tote) remained inextricably intertwined and

maintained common ownership in carrying on their business. The alleged facts which must be

accepted as true, show (Complaint at ¶¶51-52): Lord & Taylor remained an Employer under the

2017 Plan until at least the 3/26/20 amendment and restatement of the 2017 Plan. It is also clear

that the intertwining ties and common ownership between HBC and Lord & Taylor/Le Tote existed

and continue to exist from 11/19 to date.  HBC retained ownership of the Lord & Taylor properties

and continued to lease back those properties to Le Tote. Also, several HBC/Lord & Taylor

principals joined Le Tote upon its "acquisition" of Lord & Taylor in order to lead the integration

of Lord & Taylor and Le Tote. Common ownership continued to exist as HBC retained a 25%

stake in the Lord & Taylor/Le Tote enterprise and the right to designate two members to Le Tote's

Board of Directors. Also, HBC received a promissory note from Le Tote for about $33 Million

(Can), or $25 Million (USD) payable after two years from the sale to Le Tote.

      So, under the facts as alleged, it cannot be said that an employment relationship between

Ms. Cope and Lord & Taylor concluded on 11/1/19 and in any event the relationship between HBC

and Lord & Taylor/Le Tote continued to be one of single employer, joint employer or alter ego.

(Complaint at ¶52). Plaintiff simply cannot be precluded from exploring these undisputed facts in

discovery by the interposition of a Motion to Dismiss. Moreover, Plaintiff was denied the

documents she requested documents relating to the Lord & Taylor sale transaction, relating to the

assignment of the Plans to Lord & Taylor/Le Tote, and relating to the intertwining and common ownership of HBC and Lord & Taylor/Le Tote (Complaint at ¶37), as well as the adoption of any ERISA transition plan between HBC and Lord & Taylor for the soon to be legacy employees of HBC like Ms. Cope and the class she seeks to represent. Further, Defendants cannot be allowed to cut off Plaintiff's inquiry into whether HBC and Lord & Taylor contemplated that severance benefits for HBC legacy employees would continue unabated after the sale transaction.

### 4.      Comparability of Employment By Lord & Taylor

The Plan Administrator erroneously, arbitrarily and capriciously asserts that Ms. Cope was "offered a comparable position with the acquirer" of Lord & Taylor, namely, Le Tote, and thus, she is not eligible for severance per Section 3.2(g) of the 2017 Plan even as Amended and Restated. Defendants' have chosen to double down on that assertion in an underwhelming one sentence statement also appearing as an aside in footnote 3 of their Supporting Memorandum. However, Ms. Cope alleges that she was not offered nor did she receive "comparable employment" within the meaning of section 3.2(g) of the Plans. The Plan Administrator did not find that Ms. Cope was an otherwise ineligible employee under the Plan but for Section 3.2(g).  The Plan Administrator concluded only that Ms. Cope was ineligible for benefits because on 11/1/19 "she was offered comparable employment with her new employer Le Tote/Lord & Taylor at that time." (Exhibit C). So, if the offered position was not comparable to the position Ms. Cope held with HBC, then by the Plan Administrator's own analysis, Ms. Cope is eligible for and entitled to severance pay benefits.[2]

---

[2] Further, the position that Ms. Cope was offered with Lord & Taylor/Le Tote was made by Le Tote on August 29, 2019, which was prior to its 11/1/19 acquisition of Lord & Taylor (see Exhibit C hereto).  Thus, in that Ms. Cope had not and could not have been terminated as part of the Le Tote acquisition when offered the position on August 29, 2019, Section 3.2(g) by its own terms cannot be applied to Ms. Cope.

The position Ms. Cope was offered was not a comparable position. The Plans do not define the term "comparable position".  So, the Plan Administrator arbitrarily and capriciously, and contrary to her fiduciary obligations, declared the position comparable without providing any true basis upon which to decide that the employment offer was comparable.  The Plan Administrator made an inaccurate and incomplete determination that the offer made to Ms. Cope was comparable to her job with Lord & Taylor despite the fact that she would seemingly no longer be the beneficiary of any severance pay benefit Plan while employed by Le Tote/Lord & Taylor.  Any severance pay benefit Plan she was entitled to while employed by Lord & Taylor is wrongly said by the Plan Administrator to have evaporated with the emergence of Le Tote's acquisition of Lord & Taylor. Further, the Plan Administrator failed to consider that the substantial workforce reduction implemented by Lord & Taylor/Le Tote dramatically changed the quantity and quality of her new position with Lord & Taylor/Le Tote.  (Complaint at ¶61). Moreover, the Plan Administrator failed to assess the comparability of the benefit program provided by Lord & Taylor after its acquisition by Le Tote, for example, such benefits as the Employee Assistance Program, the Flexible Spending Account, Dependent Care, Commuter Account, Health Savings Account, Life Insurance, Accident Insurance, Critical Illness, Hospital Indemnity Insurance, Group Whole Life Insurance, Paid Time Off, and 401(k) Plan. (Complaint at 61). *See Yocum v. Barrett Banks Inc. Severance Pay Plan*, 234 F.3d 541 (11th Cir. 2000) (holding that plaintiff's predecessor employer wrongly denied severance benefits in that plaintiff was not offered a "comparable position" by the successor employer, and the predecessor employer's decision to deny severance pay was arbitrary and capricious).

**5.** **Defendants, And Each Of Them, Abused Their Discretion And Unreasonably, Arbitrarily, Capriciously, And Improperly Denied Plaintiff Her Severance Pay Benefits Under The Plans**

This denial of severance pay benefits to Ms. Cope constitutes a breach of the Plans in violation of 29 U.S.C. § 1132(a) (1)(B) of ERISA in that Defendants' conduct, acts and omissions alleged in the Complaint describes in detail that elements of such conduct, acts and omissions included such things as (Complaint at ¶65):

(1) the inherent structural conflict where Lord & Taylor, HBC and HBC Holdings performed the dual function of funding the Plans from their general assets and administering the claims eligibility determinations;

(2) the purported administrative record reflecting questions about whether the Plan Administrator conducted a fair evaluation of Plaintiff's claim and undermined her discretion in the following instances:

By considering "materials" outside of the purported administrative record and by disregarding other record materials, without explanation, in making Plaintiff's benefit claim determination, such as - (i) the continuing relationship and intertwining of HBC, HBC Holdings and Lord & Taylor; (ii) the failure by the Defendants to investigate and analyze the nature , terms, conditions and description of the alleged "comparable position" supposedly offered to Ms. Cope with Le Tote in reaching their uninformed and unsupported conclusion that the benefits be denied to her in that she declined to accept the "offered comparable position", and thus, she was precluded from receiving benefits under the Plans terms; these failures occurred even though the purported administrative record shows that at

14

the time of the supposed offer of the position with Le Tote to Plaintiff,

there was not even a semblance of a job description of that role; that the

offered and declined position was not defined or made certain in any way;

that the process of "filling" the supposed comparable position allegedly

offered Ms. Cope was never seemingly undertaken.

(3) exhibiting, condoning and/or acquiescing in a threat and warning to Ms. Cope
made by letter dated May 28, 2020 from Michael van den Berg, Lord & Taylor Senior Vice
President & General Counsel (attached to the Complaint as Exhibit D) demanding either
reimbursement of a post-employment payment to her, or her executing a separation agreement and
waiver of claims contained in the separation agreement sent to Ms. Cope, in retaliation and
retribution for her having made her April 2020 claim for severance benefits.

(4) an untoward obvious self-interest in budgetary considerations in decision
making as to the payment of severance pay benefits under the Plans. *See Yocum v. Barrett Banks
Inc. Severance Pay Plan*, *id*.

(5) the Defendants' arbitrary and uninformed reliance on a supposed "comparable
position" with Le Tote/Lord & Taylor offered to Ms. Cope when in reality there was no such
defined position (new, old, cobbled, or otherwise) for her to accept in that the vague and ambiguous
position had no fixed duration, was provisional, temporary, transitory, expedient, illusory and
whose elimination could come at any time. *See Yocum v. Barrett Banks Inc. Severance Pay Plan*,
*id*.

## B.   <u>Defendants Breached Their Fiduciary Duties Under ERISA</u>

Defendants HBC, HBC Holdings and Arnold are fiduciaries with respect to the
Plans.  29 U.S.C. §1002(21). (Complaint at §70). Each of those three Defendants had a fiduciary

obligation under ERISA 29 U.S.C. §1104, in connection with the Plans to, among other things, discharge their respective duties (i) solely in the interest of the Plan participants and beneficiaries, (ii) for the exclusive purpose of providing benefits to such participants and beneficiaries, (iii) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (iv) in accordance with the documents and instruments governing the Plans insofar as such documents and instruments are consistent with ERISA, Title I, 29 U.S.C. § 1001 et seq. and 29 U.S.C. § 1104(a). (Complaint at §71). *See, Fischer v. Philadelphia Electric Co.*, *id.*

ERISA imposes fiduciary duties upon those three Defendants to, inter alia, disseminate correct information to the Plan participants and not to mislead them about their benefits. (Complaint at §72). In *Fischer, id* at 1537, the Court explained:

> Our analysis proceeds within the confines of *Fischer I*.   In that decision, we established the general rule that governs interactions between a company-as-fiduciary and its employee-beneficiaries regarding changes in benefits:  "A plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan.   Put simply, when a plan administrator speaks, it must speak truthfully."  994 F.2d at 135.   This overarching duty of truthfulness forms an important part of our ERISA jurisprudence.   See *In re Unisys Corp. Retiree Medical Benefit "ERISA" Litig.,* 57 F.3d 1255, 1266-67 (3d Cir.1995), cert. denied, 517 U.S. 1103, ____, 116 S.Ct. 1316, 134 L.Ed.2d 469, 470 (1996);  *Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1302-03 (3d Cir.1994).

> The rule of truthfulness that we announced in *Fischer* I focused on the materiality of a plan administrator's misrepresentations.   We defined materiality as a mixed question of law and fact, ultimately turning on whether "there is a substantial likelihood that [the misrepresentation] would mislead a reasonable employee in making an adequately informed decision about if and when to retire."  Id. at 135.   We further explained that [i]ncluded within the overall materiality inquiry will be an inquiry into the seriousness with which a particular change to an employee pension plan is being considered at the time the misrepresentation is made.   All else equal, the more seriously a plan change is being considered, the more likely a misrepresentation, e.g., that no change is under consideration, will pass the threshold of materiality.

Surely, Defendants' scheme to evade the payment of severance benefits by surreptitiously amending the 2017 Plan just days before announcing the Plaintiff's termination and presenting her with a severance agreement and waiver to be signed within weeks of it presentation, "passes the threshold of materiality." Case law holds that ERISA plan fiduciaries have a duty to inform participants about possible changes to a plan if they are under serious consideration. See, *Fischer v. Phila. Elec. Co.*, *id.* at 1538*; McAuley v. IBM*, 165 F.3d 1038, 1043 (6th Cir. 1999); *Vartanian v. Monsanto Co.*, 131 F.3d 264, 268 (1st Cir. 1997); and *Kovarikova v. Wellspan Good Samaritan Hospital*, No. 1:15-CV-2218, 2018 WL 2095700 (M.D. Pa May 7, 2018). These cases indicate that where and when an employer is seriously considering an amendment to reduce benefits under a severance plan, such amendment is to be disclosed to eligible employees prior to becoming effective. A failure to do so, is a breach of ERIS fiduciary duties for which those abusing this obligation are liable. It is a self-evident proposition that where a fiduciary relationship is involved, misrepresentations can occur by omission – here, the failure to disclose to participants the imminent Plan amendment of March 2020 which deprived participants of their severance benefits.

Further, in as much as those three Defendants made consistent, repeated and inexcusable misstatements to Plaintiff that her ineligibility for severance pay benefits was a consequence of her declining a supposed offer of "comparable employment" while arbitrarily and capriciously disregarding the actuality of the transient, imprecise, impermanent and prefatory job terms and conditions, Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances in conveying the terms of the Plans to Plaintiff. (Complaint at §73).

17

Also, in as much as the Plans' Documents do not reflect that a participant would be eligible for benefits in the event that his/her former job position ends or is eliminated, and by Defendants failure and refusal to take that condition into consideration in assessing Plaintiff's severance pay benefits claim, the Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances. (Complaint at §74).

Additionally, in as much as Defendants exhibited, condoned and/or acquiesced in a threat and warning to Ms. Cope made by letter dated May 28, 2020 from Michael van den Berg, Lord & Taylor Senior Vice President & General Counsel (Complaint Exhibit D), and HBC surrogate, demanding either reimbursement of a post-employment payment to her, or her executing a separation agreement and waiver of claims, the separation agreement sent to Ms. Cope in retaliation and retribution for her having made her April 2020 claim for severance benefits, Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances in conveying the terms of the Plans to Plaintiff.  Such contrivance is contrary to the imposition of the duties of good faith and fair dealing as well as violations of fiduciary duties under ERISA that preclude the specious and unreasonable claim handling processes and claim denials which are the subjects of this Complaint. Complaint at §75).

Similarly, in as much as those Defendants represented that Plaintiff had been offered a transfer to a "comparable position" with Le Tote as a replacement for the position she was then holding, either knowing or failing to determine that such a position did not exist, or was not comparable to her prior position, those Defendants violated their respective obligations to act with the requisite care, skill, prudence and diligence under the circumstances. (Complaint at §76).

Moreover, in as much as Defendants' attempt to remove Lord & Taylor as an "Affiliate" of HBC through the creation of the Amended and Restated Plan on March 26, 2020, just one

18

business day before the termination of Ms. Cope and thereby disclaim her entitlement to severance

pay benefits reasonably leads to the conclusion that Lord & Taylor continued to be an Affiliate of

HBC and was the consequence of a conspicuous, conscious, purposeful, bad faith and pretextual

artifice in order to separate numerous employees without having to pay them their severance

benefits under the 2017 Plan.  Such contrivance is contrary to the imposition of the duties of good

faith and fair dealing as well as violations of fiduciary duties under ERISA that preclude the

specious and unreasonable claim handling processes and claim denials which are the subjects of

this Complaint. (Complaint at §77).

Again, in as much as those Defendants condoned or failed to denounce the orchestrated

effort and HBC's and HBC Holdings', motivation to create a constructive resignation by Plaintiff

for the purpose of classifying her as a resigned employee (and thereby not eligible for severance

pay benefits) rather than a displaced employee (and thereby eligible for separation benefits), they

violated their respective obligations to act with the requisite care, skill, prudence and diligence

under the circumstances. (Complaint at §78).

In addition to the foregoing elements of Defendants' breach of their fiduciary duties, the

Plan Administrator did not make the ineligibility decision considering the best interest of the

Plan beneficiary (Ms. Cope and those similarly situated) as opposed to the best interest of the

Defendants and Lord & Taylor, especially where, as here, the severance benefits under the Plans

were to be funded out of the employer's own current revenues as opposed to a funded severance

pay benefit account.  (See Complaint at Exhibits A and B at Appendix C); *Yocum v. Barrett*

*Banks Inc. Severance Pay Plan*, *id.* 544 ("Where the funding for severance plans comes directly

from the coffers of a company, rather than through a trust, there is a conflict of interest"). The

duty of loyalty requires that a fiduciary must act solely in the interest of the plan's participants

and beneficiaries. In this case, the fiduciaries were in the situation where potential or actual conflict of interest existed – a decision to award Ms. Cope severance benefits, would have taken money directly from HBC's treasure and cost it substantial amounts of money. In these situations where a "structural conflict of interest exist, the Plan fiduciaries are obligated to make severance benefit decisions "with an eye single to the interests of the participants and beneficiaries." See *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Circuit 1982). Likewise, the duty of loyalty imposed upon fiduciaries is a duty to ''avoid placing themselves in a position where their acts as officers and directors of the corporation will prevent their functioning with complete loyalty to participants." The Defendant fiduciaries here found themselves in a structural conflict situation, and should have appointed an independent fiduciary to ensure that the duty of loyalty was not breached – especially where, as here, Defendants schemed to amend the 2017 Plan on the eve of the termination of beneficiaries so as to effectuate the transaction between HBC and Lord & Taylor, all to the financial interest of HBC. The failure to do so amounts to a conflict of interest, and thus, a clear breach of fiduciary duty.

The above described breaches of fiduciary duties have unjustly enriched the Plans and HBC and HBC Holdings, as well as caused Ms. Cope to suffer damages. Accordingly, this Court must deny the Defendants' Motion to Dismiss.

**C.** **Defendants Interfered With Plaintiff's Attainment Of Plan Severance Benefits**

Defendants engaged in a course of conduct designed to interfere with Plaintiff's attainment of the severance pay benefits to which she would have been entitled under the Plans.

The short-term role Plaintiff was supposedly being offered was simply part of a well-organized and orchestrated effort to create the perception that she was being offered a substantial position with Lord & Taylor/Le Tote. (Complaint ¶82). In reality, in as much as Defendants' attempted to remove Lord & Taylor as an "Affiliate" of HBC through the creation of the Amended and Restated Plan on March 26, 2020, just one business day before the termination of Ms. Cope and thereby disclaim her entitlement to severance benefits,  reasonably leads to the conclusion that Lord & Taylor continued to be an Affiliate of HBC and was the consequence of a conspicuous conscious, purposeful, bad faith and pretextual artifice in order to separate numerous employees without having to pay them their severance benefits under the 2017 Plan.  Such contrivance and evasion of benefit payments are contrary to the imposition of the duties of good faith and fair dealing as well as violations of fiduciary duties and a Plan participant's attainment of Plan benefits under ERISA. Thus, the Plans by this artifice would relieve themselves of and evade severance pay benefit payments (and an unwanted precedent) and interfere with Plaintiff's attainment of Plan benefit rights under the Plans to Plaintiff in violation of 29 U.S.C. § 1140 of ERISA.

Moreover, Ms. Cope alleges that she was not offered nor did she receive "comparable employment" within the meaning of section 3.2(g) of the Plans. The Plan Administrator erroneously, arbitrarily and capriciously asserted that Ms. Cope was "offered a comparable position with the acquirer" of Lord  & Taylor, namely, Le Tote, and thus, she was not eligible for severance per Section 3.2(g) of the 2017. The Plan Administrator, however, did not find that Ms. Cope was an otherwise ineligible employee under the Plan but for Section 3.2(g).  The Plan Administrator concluded only that Ms. Cope was ineligible for benefits because on 11/1/19 "she was offered comparable employment with her new employer Le Tote/Lord & Taylor at that time."

(Exhibit C).  In so doing, Defendants manipulated the Plans and thereby evaded Plaintiff's

attainment of Plan Severance Benefits also in violation of 29 U.S.C. § 1140 of ERISA.

Additionally, Mr. van den Berg threatened Ms. Cope with adverse actions by his letter to

her of May 28, 2020, should she fail to return the $1,173.06 paid to her as a reduced severance

benefits. (Complaint at Exhibit D). Such action is a direct violation of ERISA §510. ERISA

section 510 makes it unlawful for any person to discharge, fine, suspend, expel, discipline, or

discriminate against a participant or beneficiary for exercising any right to which he/she is

entitled under an ERISA plan.  Ms. Cope made her claim for severance benefits on April 16,

2020 and in retaliation therefor, received Mr. van den Berg's threat.


### D.       Defendants' Violated The Pennsylvania Wage Payment And Collection Law

Defendants' assertion that Ms. Cope's WPCL claim are preempted by ERISA is

misplaced. As quoted by Defendants: "Where the court's inquiry must be directed to the plan,

the cause of action, relates' to the Plan" and is thereby preempted by ERISA. (Supporting

Memorandum at 14). As discussed above, Mr. van den Berg, threatened Ms. Cope with adverse

actions by his letter to her of May 28, 2020, should she fail to return the $1,173.06 paid to her.

Since severance pay constitutes "wages" and "fringe benefits or wage supplements" as defined in

the WPLC at 43 P.S. ¶¶260.9a. (a) and (b), then Mr. van den Berg's actions constitute retaliatory

conduct against Ms. Cope for her refusing to participate in the Separation Agreement and

Release proffered to her and for her claiming unpaid wages. Notably that proffered Separation

Agreement and Release does not implicate ERISA except for the demand that she release any of

her ERISA claims.

IV.     **CONCLUSION**

Plaintiff respectfully requests that for any and all of the foregoing reason, the Court deny

Defendant's Motion to Dismiss.[3]

Respectfully submitted,

WEINSTEIN LAW FIRM, LLC

*/s/* Marc E. Weinstein, Esquire
Marc E. Weinstein
Identification No. 79474
500 Office Center Drive, Suite 400
Fort Washington, PA 19034
267.513.1942 (tel)
marc@meweinsteinlaw.com

and

PENTIMA LAW FIRM, PLLC

*/s/* Vincent J. Pentima, Esquire
Vincent J. Pentima
Identification No. 18523
30 Rock Hill Road
Bala Cynwyd, PA
484.436.2119 (tel)
vjp@pentimalaw.com

Dated: May 31, 2021

---

[3] In the event that the Court grants any part of Defendant's Motion to Dismiss, Plaintiff requests that such dismissal be without prejudice to Plaintiff's filing an Amended Complaint within 14 days of the Court's Order. See *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008); *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004*); Soppick v. Borough of West Conshohocken,* C.A. No. 03-890 (E.D Pa. 10/22/2003).

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Memorandum of Law in

Opposition to Defendants' Motion to Dismiss has been served upon counsel of record on the

below listed date via the Court's ECF system.

PENTIMA LAW FIRM, PLLC

*/s/* <u>Vincent J. Pentima, Esquire</u>
Vincent J. Pentima
Identification No. 18523
30 Rock Hill Road
Bala Cynwyd, PA
484.436.2119 (tel)
vjp@pentimalaw.com

<u>Dated:</u> May 31, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROXANNE COPE**, | : | CIVIL ACTION |
| individually, on behalf of herself and | : | |
| on behalf of all others similarly situated, | : | No. 20-CV-06490 (CDJ) |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| **HUDSON BAY COMPANY SEVERANCE** | : | |
| **PAY PLAN FOR US EMPLOYEES** | : | CLASS ACTION |
| **AMENDED and RESTATED AS** | : | |
| **HBC US HOLDINGS LLC SEVERANCE** | : | |
| **PAY PLAN FOR US EMPLOYEES;** | : | |
| **HUDSON'S BAY COMPANY, PLAN** | : | |
| **SPONSOR; HBC US HOLDINGS** | : | |
| **LLC**, **PLAN SPONSOR; JESSICA** | : | |
| **ARNOLD, PLAN ADMINISTRATOR** | : | : |
| | : | |
| Defendants | : | |

## PROPOSED ORDER

AND NOW, this _____ day of _____, 2021, after having reviewed Defendants' Motion to

Dismiss and Plaintiff's Opposition thereto, and after oral argument held on _____, 2021, IT IS

HEREBY ORDERED that Defendants' Motion to Dismiss is DENIED.


_____

C. Darnell Jones, III, Judge