IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROXANNE COPE,<br><br>                 Plaintiff,<br><br>v.<br><br>HUDSON'S BAY COMPANY SEVERANCE PAY PLAN FOR U.S. EMPLOYEES AMENDED AND RESTATED AS HBC US HOLDINGS LLC SEVERANCE PAY PLAN FOR US EMPLOYEES,<br><br>HUDSON'S BAY COMPANY, PLAN SPONSOR,<br><br>HBC US HOLDINGS LLC, PLAN SPONSOR,<br><br>and<br><br>JESSICA ARNOLD, PLAN ADMINISTRATOR,<br><br>                 Defendants. | Civil Action No. 2:20-cv-06490-CDJ |

**[PROPOSED] DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR UNCONTESTED MOTION FOR LEAVE TO FILE
A REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Defendants Hudson's Bay Company Severance Pay Plan for U.S. Employees Amended and Restated as HBC US Holdings LLC Severance Pay Plan for U.S. Employees, Hudson's Bay Company, HBC US Holdings LLC, and Jessica Arnold ("Defendants" or "HBC"), by and through their undersigned counsel, hereby submit this Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiff's Complaint in accordance with the Court's policies and procedures.

At bottom, all of Plaintiff's arguments stem from the same threshold error: she wrongly assumes that she was an employee of an affiliated company upon her termination from Lord &

Taylor/Le Tote on March 31, 2020. The Plan from which she seeks benefits explicitly contradicts her contention. The lawsuit should be dismissed.

## I. LEGAL ARGUMENT

### A. Plaintiff Ignores Key Requirements Of An "Affiliate" Under The 2017 HBC Plan And Concedes That Her Employer, Lord & Taylor, Cannot Meet The Requirements

HBC's Motion to Dismiss Plaintiff's Complaint (Dkt. 7) ("Opening Brief" or "Defs.' Br.") explains in detail that, upon Le Tote's acquisition of Lord & Taylor in 2019, Lord & Taylor no longer met the definition of an "Affiliate" of HBC according to the definition in the Hudson's Bay Company Severance Pay Plan for U.S. Employees ("2017 HBC Plan" or "Plan"). Defs.' Br. 2–5, 7–10. This was not because of any *amendment* to the Plan terms, but because of the *application* of them. In Plaintiff Roxanne Cope's ("Plaintiff's" or "Ms. Cope's") Opposition to Defendants' Motion to Dismiss the Complaint (Dkt. 8) ("Plaintiff's Opposition" or "Pl.'s Opp'n"), she tries to sidestep the requirements of an "Affiliate" under the 2017 HBC Plan and the expressly incorporated Internal Revenue Code provisions, and instead focuses on "single and joint employer liability concepts" applicable to multiemployer plans to argue that HBC "may be liable" for ERISA violations. Pl.'s Opp'n 10. Ms. Cope then cites the ways in which HBC and Lord & Taylor "remain[] inextricably intertwined and maintain[] common ownership in carrying on their business." *Id.* at 11. Her rebuttal is entirely beside the point, given the contrary Plan language, and, more to the point, it effectively concedes that she cannot muster the necessary allegations to satisfy the Plan terms.

Plaintiff cites Section 2.11 of the 2017 HBC Plan and argues that Lord & Taylor is listed as an "Employer" under the Plan. Pl.'s Opp'n 8. But Ms. Cope notably ignores the first clause in the "Employer" definition, which states that the enumerated entities are only an "Employer" under the plan "*during the period that each such entity is an Affiliate of the Company*." *Id.* (emphasis

2

added). This clause refers to Section 2.1 of the 2017 HBC Plan establishing, in turn, the specific requirements of an "Affiliate," which include satisfying the definition of a "controlled group of corporations" as set forth in specific enumerated provisions of the Internal Revenue Code. Defs.' Br. 8–9. Nowhere does Plaintiff explain how Lord & Taylor is an "Affiliate" under the Plan after the sale: she does not allege that Lord & Taylor is 80% owned by HBC or that there is a common parent owning 80% of both Lord & Taylor and HBC; that Lord & Taylor is a brother-sister corporation with HBC that is more than 50% owned by five or fewer individuals, estates, or trusts; or a combination of both. *See* Defs.' Br. 9. Ms. Cope points to allegations irrelevant to the test set forth in the Plan, such as a promissory note, property lease-backs, and the transition of HBC executives to Le Tote, to argue that HBC and Lord & Taylor "maintain[] common ownership." Pl.'s Opp'n 11. Having failed to make any allegations as measured by the terms of the Plan, there cannot be a finding of "Affiliate" status, the linchpin to all of Ms. Cope's claims.

Additionally, Ms. Cope's invocation of "single and joint employer liability concepts" is misguided for the simple reason that it is not the operative inquiry. She cites *Einhorn v. M.L. Ruberton Construction Co.*, 632 F.3d 89 (3d Cir. 2011), to support her theory that HBC remains an "Affiliate" of Lord & Taylor following the Le Tote acquisition. Pl.'s Opp'n 10. That is wrong. *Einhorn* does not define what an "Affiliate" is, or even mention the word "Affiliate." Nor does it discuss, or even mention, the standard for being within a "controlled group of corporations" under the Internal Revenue Code. Instead, the Third Circuit was considering a narrow and different issue applicable to "multiemployer plans."[1] Specifically, the Third Circuit was addressing "the circumstances in which a *purchaser* of assets bears liability for delinquent employee benefit fund

---

[1] A multiemployer plan is a plan "to which more than one employer is required to contribute" and "which is maintained pursuant to one or more collective bargaining agreements." 29 U.S.C. § 1002(37). Of course, there is no collective bargaining agreement at issue in this case.

3

*contributions* under [ERISA] *as a successor in interest to the seller* of those assets." 632 F.3d at 91 (emphasis added). These principles speak nothing of the task at hand. This case does not involve a claim for delinquent employer contributions, a specific cause of action under 29 U.S.C. § 1145. And Plaintiff is not trying to impose liability on a *purchaser* of assets (which here would be Le Tote) as a successor in interest for delinquent contributions owed by a predecessor (which here presumably is HBC). This is wholly irrelevant to Ms. Cope's claim for severance benefits measured only "under the terms of [the] plan"[2] and does not support Plaintiff's argument that Lord & Taylor is an HBC "Affiliate."

### B. Plaintiff Has No Fiduciary Breach Claim Related To Amending The 2017 HBC Plan Because The Amendments Did Not Impact Plaintiff's Potential Benefits

HBC's Opening Brief demonstrates that Ms. Cope may not assert a breach of fiduciary duty claim given that her employer, Lord & Taylor, is not an Affiliate of HBC and that she is not entitled to any benefits under the Plan. Defs.' Br. 10–12. Nevertheless, Ms. Cope posits that "where and when an employer is seriously considering an amendment to reduce benefits under a severance plan, such amendment is to be disclosed to eligible employees prior to becoming effective." Pl.'s Opp'n 17. Plaintiff's argument makes no sense.

First, at the time of the amendment, Plaintiff had not worked for a company that was an "Affiliate" of HBC for months. Thus, there was no obligation to disclose information *to Plaintiff* about potential changes to a benefit plan that did not apply to her. Otherwise, companies would have to tell their former employees in perpetuity about benefit plan changes for plans in which they no longer participate.

---

[2]   29 U.S.C. § 1132(a)(1)(B).

4

Second, and relatedly, asserting a breach of fiduciary duty claim based on a failure to disclose information to participants and beneficiaries requires "a substantial likelihood that [a plan administrator's] misrepresentation would mislead a reasonable employee in making an adequately informed decision" impacting their benefits, there, the timing of the participants' voluntary departure from the company. *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1538 (3d Cir. 1996). Here, there was no misrepresentation and Ms. Cope was involuntarily terminated – she did not have the choice of whether and when to leave her job, and, thus, *Fischer* has no application. No alleged misrepresentation could have impacted her entitlement to severance benefits under the Plan because, as explained in Defendants' Opening Brief, Plaintiff's eligibility ended under the pre-amended terms of the Plan when the transaction closed and Lord & Taylor ceased to be an "Affiliate" of HBC. The Plan amendment itself did not impact her eligibility at all, so there is no serious consideration duty to disclose.

For that reason, the cases to which Ms. Cope cites are inapposite. They stand only for the proposition that employers may have a fiduciary duty to inform employees when they give "serious consideration" to amending plan terms that could adversely impact benefits, i.e., armed with that information, participants might avail themselves of enhanced benefit by delaying their leaving employment. Pl.'s Opp'n 16–17. However, the 2020 amendments to the 2017 HBC Plan did not impact Plaintiff's entitlement to benefits; Lord & Taylor's "Affiliate" status ended with the Le Tote acquisition. Defs.' Br. 8–10. Thus, no plan amendment by HBC altered Ms. Cope's severance benefits because she was never entitled to them under the 2017 HBC Plan or under the 2020 amended plan.[3]

---

[3] Plaintiff's contention that Defendants "concede that Lord & Taylor continued to be an 'Employer' under the Plan until 3/26/20," is simply wrong. Pl.'s Opp'n 9. Although Plaintiff ignores this point, her employer was only an "Employer" as defined under the Plan only "*during the period that each such entity is an 'Affiliate'*" of the "Company." Compl. Ex. A § 2.11 (emphasis added). Lord & Taylor ceased to be an "Affiliate" upon the

In a last-ditch effort to assert a viable fiduciary breach claim, Plaintiff argues that HBC breached its duty of loyalty when "the Plan Administrator did not make the ineligibility decision considering the best interest of the Plan beneficiary (Ms. Cope and those similarly situated) as opposed to the best interest of the Defendants." Pl.'s Opp'n 19. This argument is wrong. The requirement in 29 U.S.C. § 1104 that ERISA fiduciaries act solely in the interest of plan participants and beneficiaries does not require that fiduciaries *always* resolve every issue in favor of every participant or beneficiary and, here, contrary to the explicit Plan language. The plan administrator must, of course, act in accordance with the plan documents and instruments governing the plan, and this responsibility delimits the duty to act for the sole benefit of participants.[4] *See McElroy v. SmithKline Beecham Health & Welfare Benefits Tr. Plan for U.S. Emps.*, 340 F.3d 139, 142 (3d Cir. 2003) (citing plaintiff's argument that the plan administrator's decision should not receive deference for a "fail[ure] to discharge his duties solely in the interest of plan participants and beneficiaries" and ruling, "[T]his contention overstates the plan administrator's responsibility. The plan administrator's duty to administer a plan for the sole benefit of its participants is qualified by his obligation to interpret a plan consistent with the documents and instruments governing the plan."); *New Life Homecare, Inc. v. Blue Cross of Ne. Pa.*, No. 3:06–2485, 2012 WL 1569602, at *7 (M.D. Pa. May 3, 2012). *See also Sweeney v. Standard Ins. Co.*, 276 F. Supp. 2d 388, 394–95 (E.D. Pa. 2003) (affirming defendant's denial of benefits and citing the rule that an ERISA fiduciary is not obligated "to resolve every issue of interpretation in favor of plan beneficiaries") (citing *O'Neil v. Ret. Plan for Salaried Emps. of RKO*

---

transaction closing because it no longer met the Internal Revenue Code definition of "Affiliate" incorporated into the Plan, and therefore ceased to be an "Employer" under the Plan terms.

[4]      ERISA's provisions on fiduciary duties support this argument. Specifically, 29 U.S.C. § 1104(a)(1)(D) states that an ERISA fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III."

*Gen., Inc.*, 37 F.3d 55, 61 (2d Cir. 1994)).  Defendants followed the terms of the 2017 HBC Plan, and ERISA's fiduciary obligations do not require Defendants to pay benefits where, as here, the Plan specifically provides otherwise.

Additionally, a conflict of interest arises only where the employer is subject to a material potential liability, when the sought-after benefits are measured against the company's revenue. *Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir. 2002).  The amount at issue here is insignificant, and, thus, is incapable of yielding a cognizable conflict.[5]

As such, Plaintiff's breach of fiduciary duty claim, whether based on the duty of care or loyalty, should be dismissed.

      **C.**    **Plaintiff's Claim Under The Pennsylvania Wage Payment And Collection Law ("WPCL") Is Preempted Regardless Of Michael Van Den Berg's Letter**

HBC makes clear in the Opening Brief that Plaintiff's WPCL claim is preempted by ERISA because it relates to the wages, benefits, and terms of an ERISA-governed plan.  Defs.' Br. 14–15. Plaintiff counters that her claim is based on a letter sent by Michael van den Berg, Senior Vice President & General Counsel of Lord & Taylor, on May 28, 2020 for the return of a severance payment that involves a Separation Agreement and Release from Lord & Taylor, thus escaping preemption.  Pl.'s Opp'n 22.  *See also* Compl. Ex. D.  Again, Plaintiff's argument is wrong.  First, that argument is not in the Complaint.  Count IV of the Complaint refers to the "severance pay and associated benefits" she claims she was due but were denied to her by HBC and/or HBC US Holdings LLC.  Compl. ¶¶ 85, 86.  But, Exhibit D to the Complaint is about monies that were actually paid to her in exchange for a release that Plaintiff never signed.  *Id.*  Second, Mr. van den

---

[5]     Relatedly, publicly available data reveals that, at the close of HBC's third quarter 2019, revenues totaled $1.8 billion, far surpassing any accumulated severance benefits at stake in this matter.  *See* Press Release, Hudson's Bay Company, HBC Reports Third Quarter 2019 Financial Results (Dec. 10, 2019), attached as Exhibit B.

Berg is not an employee of HBC nor was he at the time of Plaintiff's termination.  *See* Compl. Ex. D.  Additionally, Mr. van den Berg's letter requested the return of severance to *Le Tote*.  *See id.* (asking for a check "made payable to Le Tote, Inc.").  There are no allegations in the Complaint as to how or why these Defendants are responsible for that letter.  Third, even accepting Plaintiff's flawed logic, Exhibit D says that Plaintiff was only entitled to keep the severance pay offered to her if she signed a release, and that Plaintiff refused to sign the release.  Asking Plaintiff to sign the release or return the money is not a violation of the WPCL.  Thus, Plaintiff's WPCL claim fails as a matter of law.

## II. CONCLUSION

For each and all of the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss the Complaint with prejudice.

Respectfully submitted,

/s/  *Brian T. Ortelere*
Brian T. Ortelere (PA ID No. 46464)
Jeremy P. Blumenfeld (PA ID No. 85955)
**Morgan, Lewis & Bockius LLP**
1701 Market Street
Philadelphia, PA  19103
Tel.: 215.963.5000
Fax: 215.963.5001
Email: brian.ortelere@morganlewis.com
Email: jeremy.blumenfeld@morganlewis.com

*Counsel for Defendants*

Dated: June 7, 2021