IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROXANNE COPE, individually, | : | CIVIL ACTION |
| on behalf of herself and on behalf of all | : | |
| other similarly situated, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | NO. 20-6490 |
| HUDSON'S BAY COMPANY | : | |
| SEVERANCE PAY PLAN FOR | : | |
| US EMPLOYEES AMENDED and | : | |
| RESTATED AS HBC US HOLDINGS | : | |
| LLC SEVERANCE PAY PLAN FOR | : | |
| US EMPLOYEES, *et al.*, | : | |
| *Defendants*. | : | |

## MEMORANDUM

KENNEY, J.                                                      January 12, 2023

### I.    INTRODUCTION

Plaintiff Roxanne Cope ("Plaintiff") brings this class action suit against Defendants Hudson's Bay Company Severance Pay Plan for US Employees, amended and restated as HBC US Holdings LLC Severance Pay Plan for US Employees, Hudson's Bay Company ("HBC") and HBC US Holdings LLC ("HBC Holdings") and Jessica Arnold ("Plan Administrator") (collectively, "Defendants") under the Employee Retirement Income Security Act of 1947, as amended, 29 U.S.C. §§ 1001-1461 ("ERISA") and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.* Plaintiff alleges that she and her proposed class of former Lord & Taylor employees were wrongly denied benefits under Lord & Taylor's prior owner, Hudson's Bay Company's 2017 Company Severance Pay Plan for U.S. Employees in violation of ERISA and WPCL. Before the Court is Defendants' Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 7. For the reasons set

1

forth below, the Court will grant Defendants' Motion and dismiss this case with prejudice against these Defendants. An appropriate Order will follow.

## II.    BACKGROUND[1]

### a.    Hudson's Bay Company Severance Pay Plan for U.S. Employees

Effective May 25, 2017, Hudson's Bay Company ("HBC") enacted Hudson's Bay Company Severance Pay Plan for U.S. Employees ("2017 HBC Plan"). ECF No. 1 at Ex. A, Introduction. The 2017 HBC Plan "does not give any Employee any vested right to Plan benefits." *Id.* at Ex. A § 5.1. Rather, the 2017 HBC Plan is an ERISA-governed employee welfare benefit plan meant to provide "Eligible Employees of the Employer with severance benefits in the event of a Covered Termination under the conditions specified" in the 2017 HBC Plan. *Id.* at Ex. A, Introduction, § 1.3. Therefore, to be entitled to severance benefits under the 2017 HBC Plan an individual must be an "Eligible Employee" of the "Employer" who incurs a "Covered Termination" of employment, as those terms are defined in the Plan. *Id.* at Ex. A §§ 2.6, 2.9, 2.11, 3.1-3.2. The 2017 HBC Plan defines an "Employer" as:

> "Employer" shall mean each of the following *during the period that each such entity is an Affiliate of the Company*: (i) Hudson's Bay Company, (ii) Saks Incorporated, (iii) Saks & Company, LLC, (iv) Lord & Taylor Acquisition, Inc., (v) Lord & Taylor Holdings, LLC, (vi) Lord & Taylor LLC, (vii) GALERIA Kaufhof GmbH, (viii) Gilt Groupe Holdings, Inc., and (ix) their designated Affiliates.

---

[1]    The Court accepts all factual allegations as true and construes all allegations and reasonable inferences in the light most favorable to the nonmoving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citation omitted). In deciding a motion to dismiss, this Court considers the pleadings and attached exhibits, undisputedly authentic documents attached to the motion where the claims are based on those documents, and matters of public record. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013); *see also Corman v. Nationwide Life Ins. Co.*, 396 F. Supp. 3d 530, 535-537 (E.D. Pa. 2019) (taking judicial notice of plan documents in ERISA action).

*Id.* at Ex. A § 2.11 (emphasis added).  The "Company" is defined as Hudson's Bay Company. *Id.* at Ex. A § 2.5.  And an "Affiliate" of the Company is defined as:

> [A] corporation that is a member of a controlled group of corporations that includes the Company or any trade or business that is under common control with the Company, in each case within the meaning of Sections 414(b) and (c) of the Internal Revenue Code. Any such entity shall be treated as an Affiliate hereunder only with respect to its period of affiliated status.

*Id.* at Ex. A § 2.1.  The definition of "Affiliate" incorporates the conditions for being a "controlled group of corporations" and "under common control" from Section 414(b) and 414(c) of the Internal Revenue Code.  Section 414(b) provides:

> [A]ll employees of all corporations which are members of a controlled group of corporations (within the meaning of section 1563(a), determined without regard to section 1563(a)(4) and (e)(3)(C)) shall be treated as employed by a single employer. With respect to a plan adopted by more than one such corporation, the applicable limitations provided by section 404(a) shall be determined as if all such employers were a single employer, and allocated to each employer in accordance with regulations prescribed by the Secretary.

26 U.S.C. § 414(b).  Section 1563(a) of the Internal Revenue Code in turn states:

> **(a) Controlled group of corporations**.—For purposes of this part, the term "controlled group of  corporations means any group of—
>
> > **(1) Parent-subsidiary controlled group.**--One or more chains of corporations connected through stock ownership with a common parent corporation if—
> >
> > > (A) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of each of the corporations, except the common parent corporation, is owned (within the meaning of subsection (d)(1)) by one or more of the other corporations; and
> > >
> > > (B) the common parent corporation owns (within the meaning of subsection (d)(1)) stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote or at least 80 percent of the total value of shares of all classes of stock of at least one of the other corporations, excluding, in computing such

> voting power or value, stock owned directly by such other corporations.
>
> **(2) Brother-sister controlled group.**—Two or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.
>
> **(3) Combined group.**—Three or more corporations each of which is a member of a group of corporations described in paragraph (1) or (2), and one of which—
>
>> (A) is a common parent corporation included in a group of corporations described in paragraph (1), and also
>>
>> (B) is included in a group of corporations described in paragraph (2).

26 U.S.C. § 1563(a). Section 414(b) applies the same test to determine whether companies are "under common control." *See* 26 C.F.R. § 1.414(c)–2 (listing 80% test and five or fewer "individuals, estates or trusts" test to determine whether "two or more trades or businesses [are] under common control. . . .").

### b.  Sale of Lord & Taylor and Amendment of 2017 HBC Plan

In November 2019, HBC sold Lord & Taylor to Le Tote. ECF No. 1 ¶ 59. The 2017 HBC Plan was amended and restated effective March 26, 2020. *Id.* at Ex. B, Introduction. Notably, in amending the 2017 HBC Plan, HBC removed Lord & Taylor from the list of entities in the definition of "Employer." *Id.* at Ex. B § 2.11.

### c.  Plaintiff Roxanne Cope

Beginning in 2013, Plaintiff was employed in the Lord & Taylor Wilkes-Barre location as a sales staffing coordinator. *Id.* ¶ 8. On March 31, 2020, Plaintiff was laid off from Lord & Taylor. *Id.* ¶ 47. She was offered and she accepted severance from her employer at that time, Lord &

Taylor. *Id.* at Ex. D. On April 16, 2020, Plaintiff also submitted a severance claim under the terms of the 2017 HBC Plan. *Id.* ¶ 43. On June 4, 2020, Defendant Plan Administrator Jessica Arnold emailed Plaintiff's Counsel indicating Plaintiff's claim for severance benefits had been denied because by the terms of the 2017 HBC Plan: (i) the claim was untimely "since 'an initial claim for benefits must be made within 60 days of termination of employment' which the Plan maintains was November 1, 2019"; (ii) Plaintiff was offered a comparable position by the acquirer of Lord & Taylor, which caused her to be ineligible under the Plan; and (iii) Lord & Taylor was no longer an "Affiliate" of HBC. *Id.* ¶ 43. On August 1, 2020, Plaintiff appealed this denial of benefits asserting that her claim was timely, that she was not offered comparable employment with Le Tote, and that "the denial of [Plaintiff's] claim was erroneous, was a violation of the Plans' provisions, was a breach of fiduciary duties, and constituted an arbitrary and capricious determination." *Id.* ¶¶ 34, 44; Ex. C. On September 29, 2020, Defendant Plan Administrator Arnold denied Plaintiff's appeal. *Id.* ¶¶ 40, 44; Ex. C. In denying the appeal, Plan Administrator Arnold noted that: (i) as Plaintiff was terminated in conjunction of a sale of an Employer and was offered a comparable position with the acquirer of the new employer, Plaintiff was ineligible for severance under the Plan; (ii) Plaintiff's claim for benefits was untimely, because contrary to Plaintiff's argument that Lord & Taylor was not specifically removed from the definition of Employer till March 26, 2020 Amended Severance Plan, Lord & Taylor ceased being an Affiliate of the Company as of November 1, 2019 when the sale of Lord & Taylor to Le Tote closed. *Id.* at Ex. C. Additionally, Defendant Plan Administrator Arnold explained that to the extent Plaintiff was claiming entitlement to benefits in connection with her March 31, 2020 termination from Lord & Taylor/Le Tote, the claim was denied because Lord & Taylor was not an Affiliate of HBC and Plaintiff's argument that HBC and Le Tote are joint employers was frivolous. *Id.* at Ex. C.

On December 24, 2020, Plaintiff filed this Complaint alleging: (1) denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B) (Count I); (2) breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) (Count II); (3) interference with the attainment of plan benefits rights under 29 U.S.C. § 1140 (Count III); and (4) violations of the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.* (Count IV). ECF No. 1. At that time, the case was assigned to the Hon. Judge C. Darnell Jones, II.  On May 17, 2021, Defendants filed their Motion to Dismiss. ECF No. 7. Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss on May 31, 2021. ECF No. 8. On June 9, 2021, Defendants filed a Reply in Support of their Motion to Dismiss. ECF No. 11. On November 17, 2022, this case was reassigned to this Court for all further proceedings. ECF No. 13. Oral Argument was held before this Court on December 13, 2022. ECF No. 15.

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 8(a)(2) requires a complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 667–68 (2009). When evaluating a 12(b)(6) motion to dismiss, district courts "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff. However, [courts should also] 'disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) (internal citations omitted) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

The Third Circuit has found that, in order to be consistent with the pleading standard established by *Twombly* and *Iqbal,* this Court must take three steps in reviewing the sufficiency of a complaint. First, "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'"

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679) (internal citations omitted). Second, the Court should disregard all conclusory allegations. *Id.* ("'Because they are no more than conclusions, [they] are not entitled to the assumption of truth.'"). Finally, "'[w]hen there are well-pleaded factual allegations, [the] [C]ourt should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.*

Additionally, "[w]hen ruling on a defendant's motion to dismiss, the Court may consider a document explicitly relied upon in the complaint without converting the motion to dismiss to a summary judgment motion." *LeBoon v. Zurich Am. Ins. Co.*, 673 F. App'x 173, 176 (3d Cir. 2016). The Court may "consider an 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Id.* (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). In ERISA actions, courts routinely consider plan documents, and if the plan documents are unambiguous, courts may construe them as a matter of law. *Corman v. Nationwide Life Ins. Co.*, 396 F. Supp. 3d 530, 537 (E.D. Pa. 2019) (taking judicial notice of plan documents in ERISA action); *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 288–89 (3d Cir. 1995) (explaining "[i]f the plan document is unambiguous, it can be construed as a matter of law.").

## IV.    DISCUSSION

### A.  Plaintiff's Claim for Severance Pay Benefits in Count I

Count I of Plaintiff's Complaint alleges that Defendants "abused their discretion and unreasonably, arbitrarily, capriciously, improperly, and unlawfully denied Plaintiff her severance benefits under the Plans" constituting an ERISA Section 502(a)(1)(B) violation, codified as 29 U.S.C. § 1132(a)(1)(B). ECF No. 1 at ¶¶ 64-65. Defendants argue that "Count I fails because the

Complaint does not allege that Lord & Taylor was an 'Affiliate' of HBC, as that term is defined in the 2017 HBC Plan, when Plaintiff's employment was terminated." ECF No. 7-1 at 7.

Section 502(a)(1)(B) of ERISA provides that "[a] civil action may be brought-- (1) by a participant or beneficiary--. . . (B) to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). A claim arising under this Section "stands or falls by 'the terms of the plan,' . . . a straightforward rule of hewing to the directives of the plan documents that lets employers 'establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300–01 (2009) (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148, (2001)); *see also Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) ("[W]e have recognized the particular importance of enforcing plan terms as written in § 502(a)(1)(B) claims."). "Claims for ERISA plan benefits under ERISA § 502(a)(1)(B) are contractual in nature." *New Life Homecare, Inc. v. Blue Cross of Ne. Pennsylvania*, No. CIV.A. 3:06-2485, 2012 WL 1569602, at *6 (M.D. Pa. May 3, 2012) (quoting *Burnstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.2d 365, 381 (3d Cir. 2003)). Although the meaning of a contract is generally a matter of fact, 'a clear and unambiguous contractual provision raises no factual issue.'" *Id.* (quoting *Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991)). "And, when the language of a plan is not ambiguous, a court can 'interpret the plan as a matter of law.'" *Id.* (quoting *Taylor*, 933 F.2d at 1232).

In this case, Plaintiff's claim "falls by the terms of the plan." *Kennedy*, 555 U.S. at 300. The relevant terms of the 2017 HBC Plan are unambiguous. Under the 2017 HBC Plan, only an "Eligible Employee" of the "Employer" who incurs a "Covered Termination" of employment is eligible for severance benefits. ECF No. 1 at Ex. A. §§ 2.6, 2.9, 2.11, 3.1-3.2. The 2017 HBC Plan

8

states that "Employer . . . mean[s] each of the following *during the period that each such entity is*

*an Affiliate of the Company*: . . . (iv) Lord & Taylor." *Id.* at Ex. A § 2.11 (emphasis added). Thus,

to be an "Employer," Lord & Taylor must have been an "Affiliate" of HBC at the time Plaintiff

was terminated in March 2020. The 2017 HBC Plan defines "Affiliate" as a company that is "a

member of a controlled group of corporations" with HBC or "under common control" with HBC,

as those terms are defined in Section 414 of the Internal Revenue Code, 26 U.S.C. § 414. *Id.* at Ex.

A § 2.1. Section 414 of the Internal Revenue Code refers to Section 1563(a) of the Code to define

what it means to be a "member of a controlled group of corporations" or to be "under common

control." 26 U.S.C. 1563(a). Under Section 1563(a) to be "under common control" or a "member

of a controlled group of corporations," Lord & Taylor must either: (1) be 80% owned by HBC or

must have a common parent that owns 80% of both HBC and Lord & Taylor; (2) have five or

fewer "individuals, estates or trusts" that own 50% or more of the stock of Lord & Taylor and

HBC under the circumstances described in subsection (B) of the statute; or (3) some combination

of these, as described in subsection (C) of the statute.

The Complaint does not allege any facts to suggest that Lord & Taylor was an "Affiliate"

after HBC sold Lord & Taylor in 2019, at the time of Plaintiff's termination in March 2020.

Specifically, there are no facts showing that (1) HBC and Lord & Taylor were in a parent-

subsidiary controlled group of corporations with 80% ownership; (2) a brother-sister controlled

group of corporations that are both more than 50% owned by the same five or fewer individuals,

estates, or trusts; or (3) any combination of the two. Plaintiff points to the following features of

the Lord & Taylor/Le Tote acquisition to suggest that Lord & Taylor and HBC continued to have

intertwining ties and common ownership: (1) HBC's retaining ownership of certain Lord & Taylor

properties and leasing those properties back to Le Tote; (2) former HBC employees transitioning

to Le Tote's management team in 2019; (3) HBC's promissory note from Le Tote; and (4) HBC's 25% ownership stake in Le Tote and its ability to choose two board members of Le Tote. ECF No. 1 at ¶ 51(ii)-(iv); *see also* ECF No. 8 at 9-10. The first three of these facts have no bearing on the requirements of Section 414 and Section 1563(a) of the Internal Revenue Code. Additionally, HBC's 25% ownership stake in of Le Tote clearly does not satisfy the 80% ownership test of Section 1563(a). Accordingly, there are no facts to satisfy the unambiguous definition of "Affiliate" as defined in the 2017 HBC Plan.[2]

Plaintiff argues that "reliance on the concept of 'control group' liability as an escape by HBC from severance pay liability ignores the well-established principles of liability under single and joint employer liability concepts [and that] [u]nder those rapidly expanding concepts, a predecessor company like HBC may be liable for violations of ERISA." ECF No. 8 at 10. But the reliance on the "concept of 'control group'" is not being used as an escape. Rather, it is a clear application of the unambiguous terms of the 2017 HBC Plan.

In support of her argument, Plaintiff points to *Einhorn v. M.L. Ruberton Construction Co.*, 632 F.3d 89 (3d Cir. 2011). ECF No. 8 at 10; *see also* Dec. 13, 2022 Tr. 18:15-19:5 (arguing "Lord & Taylor, which was owned by Le Tote and HBC, [] were so enmeshed, so intertwined that they can be viewed under *Einhorn* and the developing law of single employer doctrine and weighed against those standards."). *Einhorn* held that "a purchaser of assets may be liable for a seller's delinquent [multiemployer plan] ERISA fund contributions to vindicate important federal statutory policy where the buyer had notice of the liability prior to the sale and there exists sufficient

---

[2]     The fact that the 2017 HBC Plan was amended dated March 26, 2020 is of no consequence. Under the terms of both plans, an entity listed in the definition of "Employer" is only an "Employer" "*during the period that each such entity is an 'Affiliate'*" of the "Company." ECF No. 1 at Exs. A, B § 2.11. Therefore, even if HBC did not remove Lord & Taylor's name from the definition of "Employer" until March 26, 2020, Lord & Taylor ceased being an "Employer" when it was no longer an "Affiliate," which occurred when HBC sold Lord & Taylor to Le Tote in November 2019.

evidence of continuity of operations between the buyer and seller." *Einhorn*, 632 F.3d at 99. In so holding, the Third Circuit remanded the case for the district court's determination of whether the purchaser substantially continued the seller's operations. *Id. Einhorn* explained that the inquiry should be on a case-by-case basis and "[u]nder the substantial continuity test courts look to, *inter alia*, the following factors: continuity of the workforce, management, equipment and location; completion of work orders begun by the predecessor; and constancy of customers." The Third Circuit further specified that "[t]his analysis differs from the traditional common law de facto merger and mere continuation exceptions because commonality of ownership is not required." *Id.* at 99-100.

*Einhorn* is distinguishable on multiple grounds. First, *Einhorn* involved a multiemployer plan asserting a claim for delinquent employee contributions under 29 U.S.C. § 1145. Here, however, there is no multiemployer plan at issue and there is no 29 U.S.C. § 1145 claim asserted for delinquent employer contributions. Second, *Einhorn* held a *successor* may be liable for delinquent contributions owed by a predecessor.  Here, in contrast, Plaintiff is bringing different ERISA claims against a predecessor (HBC), not a successor (Le Tote).  Moreover, the importance of vindicating the "federal statutory policy where the buyer had notice of the liability prior to the sale and there exists sufficient evidence of continuity of operations between the buyer and seller," does not apply in this case. This is not a case where the buyer is burring its head in the sand and ignoring liabilities. In fact, here, Plaintiff was offered and accepted severance by Lord & Taylor/ Le Tote. ECF No. 1 at Ex. D.

In conclusion, because Plaintiff has not alleged facts that Lord & Taylor was an "Affiliate" of HBC at the time Plaintiff was laid off, Plaintiff is not entitled to benefits under the 2017 HBC Plan. Therefore, Count I of Plaintiff's Complaint fails to state a claim and must be dismissed.

**B.  Plaintiff's Fiduciary Duty Claim in Count II**

Count II of Plaintiff's Complaint alleges that Defendants had a fiduciary duty, in connection with the Plans, to discharge their respective duties "(i) solely in the interest of the Plan participants and beneficiaries, (ii) for the exclusive purpose of providing benefits to such participants and beneficiaries, (iii) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (iv) in accordance with the documents and instruments governing the Plans insofar as such documents and instruments are consistent with ERISA, Title I, 29 U.S.C. § 1001 *et seq.* and 29 U.S.C. § 1104(a)." ECF No. 1 at ¶ 71.  Specifically, Plaintiff argues Defendants breached their ERISA fiduciary duties when allegedly: (1) the Plan Administrator did not make the ineligibility decision considering the best interest of the Plan beneficiary as opposed to the best interest of the Defendants; (2) the 2017 HBC Plan was amended just days before announcing Plaintiff's termination and they failed to disclose this amendment to eligible employees prior to it becoming effective; (2) Defendants made misstatements to Plaintiff stating that her ineligibility for severance benefits was a consequence of her declining a supposed offer of comparable employment while "disregarding the actuality of the transient, imprecise, impermanent and prefatory job terms and conditions"; (3) Defendants condoned and/or acquiesced in a threat and warning to Plaintiff by Lord & Taylor's Senior Vice President & General Counsel requesting she either return her severance benefits from Lord & Taylor or sign a separation agreement. ECF No. 1 at ¶¶ 73-78.

A breach of fiduciary duty claim under ERISA occurs when "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019) (quoting *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007)). "The

plan administrator's duty to administer a plan for the sole benefit of its participants is qualified by his obligations to interpret a plan consistent with the documents and instruments governing the plan." *McElroy v. SmithKline Beecham Health and Welfare Benefits Tr. Plan for U.S. Emps.*, 340 F.3d 139, 142 (3d Cir. 2003) (citing 29 U.S.C. § 1104(a)(1)(D)).

First, Plaintiff's argument that Defendants failed to act in the sole interest of the participants by not paying severance benefits fails for the same reasons explained in Section IV.A. Fiduciaries are obligated to apply the terms of the plan and under the plan, Lord & Taylor was not an "Affiliate" of HBC at the time of Plaintiff's termination. Thus, Plaintiff has no viable breach of fiduciary duty claim as she was not entitled to any benefits under the Plan. *See McElroy¸* 340 F.3d at 142. Additionally, Plaintiff's argument that the Plan Administrator made the decision not in the best interest of the Plan beneficiary but for the Defendants' interest fails because a plain administrator "is not obligated to 'resolve every issue of interpretation in favor the plan beneficiaries.'" *Sweeney v. Standard Ins. Co.*, 276 F. Supp. 2d 388, 394-95 (E.D. Pa. Aug. 13, 2003) (quoting *O'Neil v. Ret. Plan for Salaried Emps. Of RKO Gen., Inc.*, 37 F.3d 55, 61 (2d Cir. 1994). Furthermore, there is no cognizable conflict of interest alleged here as the potential liability is insignificant compared to the Defendants revenue. *See* ECF No. 11 at 7 (citing *Romero v. SmithKline Beecham*, 309 F.3d 113, 118 (3d Cir. 2002) for the proposition that a "conflict of interest arises only where the employer subject to a material potential liability, when the sought-after benefits are measured against the company's revenue").

Furthermore, Defendants did not breach any fiduciary duty by amending the 2017 HBC Plan to remove Lord & Taylor from the list of affiliated companies after the sale to Le Tote. The Supreme Court has explained that "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries . . . When employers undertake those actions, they do not act as

fiduciaries[.]" *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *see also Arrow Drilling Co., Inc. v. Carpenter*, No. 2:02-cv-09097, 2003 WL 23100808, at *4 (E.D. Pa. Sept. 23, 2003) ("[E]mployers do not act as fiduciaries when they simply 'adopt, modify, or *terminate* pension plans.'" (quoting *Lockheed*, 517 U.S. at 890)). Therefore, because amending the Plan is not a fiduciary activity, Plaintiff's breach of fiduciary duty claim based on such an amendment fails. Moreover, the amendment to the Plan was of no consequence. As detailed above, entities listed in the definition are only considered "Employers" under the Plans "*during the period that each such entity is an Affiliate of the Company*." ECF No. 1 at Exs. A, B § 2.11 (emphasis added). Thus, because Lord & Taylor ceased being an "Affiliate of the Company" when it was sold to Le Tote in November 2019, the amendment had no legal significance.

Moreover, Defendants did not breach any fiduciary duty by failing to tell Plaintiff of the March 2020 amendments to the 2017 HBC Plan. At the time of the amendment, Plaintiff had not worked for a company that was an "Affiliate" of HBC for months. Thus, there was no obligation for Defendants to disclose information to Plaintiff about potential changes to the Plan that did not apply to her. Otherwise, companies would have to tell their former employees in perpetuity about benefit plan changes for plans in which they no longer participate. Furthermore, a breach of fiduciary duty claim based on a failure to disclose information to participants and beneficiaries requires "a substantial likelihood that [a plan administrator's] misrepresentation would mislead a reasonable employee in making an adequately informed decision" impacting their benefits. *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1538 (3d Cir. 1996) (citation and internal quotations omitted).  Here, there was no misrepresentation and Plaintiff was involuntary terminated (*i.e.*, she did not have a choice to leave her job). And again, because Plaintiff's entitlement to severance

benefits under the 2017 HBC Plan ended when HBC sold Lord & Taylor causing it to cease being an "Affiliate," the Plan amendment did not impact Plaintiff's eligibility at all.

Additionally, to the extent Plaintiff argues that Defendants had an obligation to provide Plaintiff business documents regarding the sale of Lord & Taylor to Let Tote, Plaintiff is wrong. The ERISA statute details specific documents that must be disclosed. *See* 29 U.S.C. § 1024(b); 29 U.S.C. § 1132(c).  Notably, documents relating to mergers, sales or other business transactions are not among the documents fiduciaries are obligated to provide. *See Galman v. Sysco Food Servs. of Metro N.Y., LLC*, No. 13-7800, 2016 WL 1047573, at *5 (D.N.J. Mar. 16, 2016) (dismissing plaintiff's breach of fiduciary duty claim premised on defendant's alleged failure to supply information because "§ 1024(b)(4) is not sufficiently broad to require disclosure of any and all documents that would assist participants and beneficiaries in determining their rights under a plan and in determining whether a plan is being properly administered") (quoting *Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 145 (2d Cir. 1997) (internal quotations omitted)).

Finally, Defendants did not breach a fiduciary duty by "condon[ing] and/or acquiesc[ing] in a threat and warning to" Plaintiff by Lord & Taylor's Senior Vice President & General Counsel requesting she either return her severance benefits from Lord & Taylor or sign a separation agreement. ECF No. 1 at ¶ 75. Lord & Taylor was no longer an "Affiliate" of HBC at the time of this letter was sent, and thus, Lord & Taylor's actions did not impact benefits under 2017 HBC Plan at all.

Accordingly, Count II of Plaintiff's Complaint fails to state a claim and therefore must be dismissed.

### C.  Plaintiff's ERISA Attainment of Benefits Claim in Count III

Count III of Plaintiff's Complaint alleges that "Defendants engaged in a course of conduct designed to interfere with Plaintiff's attainment of the severance pay benefits to which she would have been entitled under the Plans" in violation of Section 510 of ERISA. ECF No. 1 ¶ 81. Specifically, Plaintiff alleges that Defendants' removal of "Lord & Taylor as an 'Affiliate' of HBC through the creation of the Amended and Restated Plan on March 26, 2020, just one business day before the termination of" Plaintiff "reasonably leads to the conclusion that Lord & Taylor continued to be an Affiliate of HBC and was the consequence of a conspicuous conscious, purposeful, bad faith, and pretextual artifice in order to separate numerous employees without having to pay them their benefits under the 2017 Plan." *Id.* ¶ 82.

 "[A] fundamental prerequisite to a Section 510 action is . . . an allegation that the employer-employee relationship . . . was changed in some discriminatory or wrongful way." *Shoenberger v. Agere Sys., Inc.*, No. 04-CV-03766, 2007 WL 2850570, at *6 (E.D. Pa. Sept. 28, 2007) (quoting *Stout v. Bethlehem Steel Corp.*, 957 F. Supp. 673, 694 (E.D. Pa. 1997)) (internal quotations omitted).  Plaintiff does not allege any prohibited employer conduct taken by any Defendant.  Here, Plaintiff was terminated not by the Defendants, but rather by the President of Lord & Taylor. ECF No. 1 at ¶ 38. Accordingly, Plaintiff has not satisfied the "prerequisite" of alleging "that the "employer-employee relationship" changed in "some discriminatory or wrongful way." *See Shoenberger*, 2007 WL 2850570, at *6.

Additionally, Plaintiff has not put forth facts of a prima facie case under ERISA § 510. "To establish a *prima facie* case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir.

1987) (citing 29 U.S.C. § 1140 (1982)). "[T]he essential element of proof under § 510 is specific intent to engage in proscribed activity." *Woerner v. FRAM Grp. Operations, LLC*, No. CIV.A. 12-6648 SRC, 2013 WL 1815518, at *5 (D.N.J. Apr. 29, 2013) (quoting *Gavalik*, 812 F.2d at 851 (3d Cir. 1987)). "[A]t the motion to dismiss stage, '[i]t is sufficient to plead facts that, when taken as true, constitute circumstantial evidence of the employer's specific intent to interfere with the ERISA plan." *Id.* (quoting *Stabile v. Allegheny Ludlum, LLC*, No. 12–168, 2012 WL 3877611 (W.D. Pa. Sept. 6, 2012)). Here, Plaintiff has not pled factual allegations that HBC specifically intended to interfere with her ERISA-protected benefits.  In this case, Plaintiff was not entitled to any benefits under the Plan because she was not employed by an "Employer" under the terms of 2017 HBC Plan at the time Lord & Taylor terminated her employment.

Finally, amending a plan does not violate Section 510.  *See Jenkins v. Union Labor Life Ins. Co., Inc.*, 900 F. Supp. 2d 534, 546 (E.D. Pa. 2012) (dismissing plaintiff's ERISA section 1140 claim because amending plan terms does not violate the statute) (citing *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1502-03 (3d. Cir. 1994)). Therefore, Plaintiff's argument that the amendment of the plan one day business day before her termination was a violation of Section 510 fails, as courts have held that the amendment of a plan is not actionable under this section. *See Jenkins*, 900 F. Supp. 2d 534. 546 (E.D. Pa. 2012).

As Plaintiff has not put forth facts to state a claim under Count III, Count III of Plaintiff's Complaint must be dismissed.

### D.  Plaintiff's Pennsylvania Wage Payment and Collection Law Claim in Count IV

Count IV of Plaintiff's Complaint alleges that "severance pay and associated benefits due to Plaintiff . . .  constitute 'wages' and 'fringe benefits or wage supplements' as defined in the WPCL" and that "HBC's and/or HBC Holdings' actions in denying Plaintiff and all similarly

situated employees their respective 'wages' and 'fringe benefits or wage supplements' . . . constitute deliberate violations of the [Pennsylvania Wage Payment and Collection Law ("WPCL")]." Compl. ¶¶ 85-86. Defendants argue in their Motion to Dismiss that Plaintiff's WPCL claim is preempted by ERISA.  ECF No. 7-2 at 14.

"Section 514(a), the express preemption provision of ERISA, provides that ERISA 'shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan covered by the statute." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 277 (3d Cir. 2001) (quoting 29 U.S.C. § 1144(a)). Congress's "basic objective of the express preemption provision was 'to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans.'" *Id.* (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995)). Accordingly, "[t]he Supreme Court has stated that this 'broadly worded provision is clearly expansive.'" *Frommer v. Celanese Corp.*, No. CIV. 07-4066GEBJJH, 2008 WL 1803535, at *2 (D.N.J. Apr. 21, 2008) (quoting *Egelhoff*, 532 U.S. at 146).  ERISA preemption applies when (1) the plan at issue is an employee benefit plan, and (2) the cause of action relates to this employee benefit plan. *Id.* (quoting *Alston v. Atlantic Elec. Co.*, 962 F. Supp. 616, 622 (D.N.J. 1997)).  "A law 'relates to' an employee benefit plan . . . if it has a connection with or reference to such a plan." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)).

Here, it is undisputed that the 2017 HBC Plan is governed by ERISA and is an employee benefit plan. ECF No. 1 ¶ 9; Ex. A § 1.3 ("The Plan is an employee welfare benefit plan as defined in Section 3(1) of ERISA."). Second, Plaintiff's WPCL claim seeks the severance payments and related benefits payable under the terms of the 2017 HBC Plan. To determine the amount of any

recovery under the WPCL, the Court would need to review the 2017 HBC Plan and the provisions of ERISA. Therefore, Plaintiff's WPCL claim "relates to" ERISA and is preempted.

In an attempt to argue preemption does not apply, Plaintiff asserts that the May 28, 2020 Letter from Lord & Taylor's Senior Vice President & General Counsel, Michael van den Berg ("van den Berg Letter") "threatening" Plaintiff should she either refuse to return the severance pay paid to her by Lord & Taylor or fail to sign a Separation Agreement and Release is retaliatory conduct, and the "Separation Agreement and Release does not implicate ERISA except for the demand that [Plaintiff] release any of her ERISA claims." ECF No. 8 at 22.  This argument fails for numerous reasons. First, this argument does not appear in the Complaint. The van den Berg Letter is referenced two times in the Complaint. Once in alleging the conduct for Count I, Plaintiff's denial of benefits claim and once in alleging the conduct for Count II, Plaintiff's breach of fiduciary duty claim. ECF No. 1 at ¶¶ 65(c), 75. Contrastingly, Plaintiff's Count IV, WPCL claim, refers only HBC and/or HBC Holdings and the severance pay and associated benefits due to Plaintiff. *Id.* ¶¶ 84-87. Second, putting aside the lack of allegations in the Complaint concerning the van den Berg Letter and its association to the WPCL claim, there is no indication as to how the Defendants are responsible for the van den Berg Letter.  Notably, Mr. van den Berg is an employee of Lord & Taylor, not HBC. *Id.* ¶¶ 65, 75, Ex. D. Additionally, the van den Berg Letter explains that should Plaintiff decide to return the severance, it should be paid to Le Tote. *Id.* at Ex. D. Finally, putting aside the lack of connection between Defendants and the van den Berg Letter, the letter asks Plaintiff to sign a release or return the severance paid to her.  Such a request is not a violation of the WPCL. *See e.g.*, *Killian v. McCulloch*, 873 F. Supp. 938, 943-44 n.2 (E.D. Pa. 1995).

Accordingly, Plaintiff's WPCL claim is preempted and Count IV of the Complaint is therefore dismissed.

### E.  Leave to File an Amended Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). But certain grounds justify denying leave to amend, such as: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Forman v. Davis*, 371 U.S. 178, 182 (1962). "Amendment would be futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citing *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010)). As detailed above, "[a] complaint fails to state a claim upon which relief can be granted where the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, the Court finds that any amendment would be futile. As explained above, Plaintiff is ineligible to any benefits under the terms of the Plan as Lord & Taylor ceased being an "Affiliate" of the company when HBC sold Lord & Taylor to Le Tote in November 2019. No allegations could be stated to overcome this deficiency and satisfy the definition of "Affiliate" from the Plan. *See supra* Section IV.A. Accordingly, this case will be dismissed with prejudice against these Defendants.

### V.    CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion to Dismiss (ECF No. 7) and this case will be **DISMISSED** with prejudice against these Defendants. An appropriate Order will follow.

                                        BY THE COURT:

                                        **/s/ Chad F. Kenney**
                                        _____
                                        **CHAD F. KENNEY, JUDGE**